1                 UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2
     * * * * * * * * * * * * * * *    )
3    UNITED STATES OF AMERICA,       )      Criminal Action
                                     )       No. 21-00569
4                    Plaintiff,      )
                                     )
5       vs.                          )
                                     )
6    JESSE R. BENTON,                )      Washington, D.C.
                                     )      November 14, 2022
7                    Defendant.      )      1:50 p.m.
                                     )      **AFFERNOON SESSION**
8    * * * * * * * * * * * * * * *    )

9

10                    JURY TRIAL – DAY 3
            BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE GOVERNMENT:      REBECCA G. ROSS, ESQ.
                              U.S. DEPARTMENT OF JUSTICE
15                            PUBLIC INTEGRITY SECTION
                              1301 New York Avenue
16                            Tenth Floor
                              Washington, D.C. 20530
17
                              MICHELLE PARIKH, ESQ.
18                            U.S. DEPARTMENT OF JUSTICE
                              1331 F Street, Northwest
19                            Washington, D.C. 20005

20                            MICHELLE WASSERMAN, ESQ.
                              UNITED STATES ATTORNEY'S OFFICE
21                              FOR THE DISTRICT OF COLUMBIA
                              555 Fourth Street, Northwest
22                            Eleventh Floor
                              Washington, D.C. 20530

23

24

25

1        APPEARANCES, CONT'D:

2        FOR THE DEFENDANT:          BRIAN W. STOLARZ, ESQ.
                                     STEPHANIE METHERALL, ESQ.
3                                    NORTON ROSE FULBRIGHT U.S., LLP
                                     799 Ninth Street, Northwest
4                                    Suite 1000
                                     Washington, D.C. 20001
5

6        REPORTED BY:               MARIA V. WEINBECK, RMR, FCRR
                                    Official Court Reporter
7                                   United States District Court for the
                                       District of Minnesota
8                                   300 South Fourth Street, Room 1005
                                    Minneapolis, MN  55415
9                                   (612) 664-5109

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**I N D E X**

**Defense Witnesses**:

**ERIN PHAN** ....................................... **PAGE**
Direct Examination - Mr. Stolarz................. 3
Cross Examination - Ms. Ross .................... 8

**DAVID WARRINGTON**................................
Direct Examination............................. 10
Cross-Examination.............................. 21
Redirect Examination........................... 34

Defense Rests..................................  36

Motion of Acquittal of Defendant................  38

Charge Conference...............................  39

**Exhibits Admitted**:

Defendant Exhibit 13............................ 14

\*      \*      \*      \*      \*      \*

Phan - Direct 07/25/23

4

```
 1                    (Whereupon, the following proceedings were had in
 2                        open court at 1:50 p.m.:)
 3                THE COURT:  All right.  Anything to discuss before
 4      we bring in the jury?
 5                All right.  Let's do it.
 6                THE CLERK:  Jury panel.
 7                (Whereupon, the jury entered the courtroom at
 8      1:53 p.m. and the following proceedings were had:)
 9                THE COURT:  Good afternoon.  Welcome back, ladies
10      and gentlemen of the jury.  Please have a seat.  We're now
11      prepared to hear the defense's case.
12                Mr. Stolarz.
13                MR. STOLARZ:  Thank you, Your Honor.  The defense
14      calls Agent Phan back to the stand, please.
15                THE COURT:  Agent Phan.  I don't think we need to
16      reswear you.  I'll remind you are still under oath.
17                     ERIN PHAN, DEFENSE WITNESS
18                          DIRECT EXAMINATION
19      BY MR. STOLARZ:
20      Q.  Agent, good afternoon.
21      A.  Good afternoon.
22      Q.  Just a few follow-ups based on your earlier testimony
23      from today.
24                You stated that you did not interview
25      Mr. Vasilenko as he was in --
```

 1              MS. ROSS:  Objection, Your Honor.  Leading.

 2              MR. STOLARZ:  I request permission to treat the

 3      witness as hostile and lead.

 4              THE COURT:  Denied.

 5              So I don't think you've gotten to the end of your

 6      question.  You can ask your question in a nonleading manner.

 7              MR. STOLARZ:  I actually wasn't leading.

 8              THE COURT:  That's what I thought, so far anyway.

 9      BY MR. STOLARZ:

10      Q.  You stated earlier that you did not interview

11      Mr. Vasilenko; is that correct?

12      A.  Yes.

13      Q.  Were you aware that Mr. Vasilenko came back to the

14      United States in 2018?

15      A.  Not -- not -- so the investigation began after that,

16      after 2018.

17      Q.  I'm going to show you what's been marked -- or

18      introduced into evidence as Exhibit 86, this -- this screen

19      here.

20              Agent Phan, did you ever speak with any member of

21      Senator Paul's office in this matter?

22      A.  No.

23      Q.  Did you ever speak with his chief of staff?

24      A.  I don't -- no.

25      Q.  Did you ever issue any subpoenas to Senator Rand Paul's

```
 1    office regarding the Capitol tour that has been discussed in
 2    this case?
 3    A.  No.
 4    Q.  Do you know the relation to -- Mr. Benton to the Paul
 5    family?
 6    A.  I do.
 7    Q.  Can you tell the jury, who is this guy, Robert Thompson?
 8    Do you know who that is?
 9    A.  I do not.
10    Q.  How about Thomas Sullivan?  Do you see that?
11    A.  Yes.
12    Q.  Who is he?
13    A.  An associate of Mr. Wead's.
14    Q.  Do either of them work for any U.S. Senator?
15    A.  I don't know.
16    Q.  Are there -- the e-mail addresses there in front of you,
17    are they .gov e-mail addresses?
18    A.  No.
19    Q.  On the top e-mail it says, "at this point I think we
20    will not have time for meetings with senators," do you see
21    that?
22    A.  Yes.
23    Q.  To your knowledge, did Mr. Vasilenko ever meet with any
24    United States senator while he was in Washington, D.C. in
25    December of 2016?
```

1    A.  I don't recall.

2    Q.  Showing you what's been admitted as Government 76 --

3    actually I'll just ask the questions about it.

4         You testified earlier about that Mr. Vasilenko was

5    asked to speak on Russian television; do you recall that

6    testimony?

7    A.  Yes.

8    Q.  Do you have evidence to provide that he actually did

9    speak on Russian television?

10   A.  I don't believe so.

11   Q.  And do you have any information whether or not

12   Mr. Vasilenko spoke on U.S. television regarding the

13   election?

14   A.  No.

15   Q.  Showing you what's been admitted as Government's 90, do

16   you recall the testimony regarding debate tickets, do you

17   recall that testimony?

18   A.  Yes.

19   Q.  Do you know whether or not Mr. Benton actually attended

20   the debate that's the subject of this e-mail?

21   A.  I don't.

22   Q.  Do you know whether -- do you know the name of -- do you

23   know whether or not Mr. Benton gave the tickets to a

24   gentleman named Dan Banes and his grandma wanted to go to

25   the debate, do you know anything about that?

```
 1    A.  No, sir.

 2    Q.  And showing you what's been introduced into evidence as

 3    Government's 91 regarding Mr. Benton's --

 4              MS. ROSS:  Objection, Your Honor.

 5              THE COURT:  On what basis?

 6              MS. ROSS:  Can we approach, Your Honor?

 7              THE COURT:  Is this already in evidence?

 8              MR. STOLARZ:  Yeah, it is.

 9              MS. ROSS:  Your Honor, at this point it's just

10    recross.  We would ask for that --

11              THE COURT:  Your objection is denied.  You may

12    proceed.

13    BY MR. STOLARZ:

14    Q.  Showing you what's been marked in evidence as

15    Government's 91, do you see the e-mail from March 9th

16    regarding Mr. Benton's proposal for compensation, do you

17    recall that, Agent?

18    A.  Yes.

19    Q.  Number 2, it says "$12,000 per month," do you see that

20    one right here?

21    A.  Yes, sir.

22    Q.  And you have done a thorough review of Mr. Benton's bank

23    statements in this case?

24    A.  I have reviewed his bank statements, yes.

25    Q.  Have you seen that he received $12,000 per month since
```

1    this date of March 9th, and if so, can you point that out to

2    us?

3    A.  I don't recall, sir.

4    Q.  Regarding the PAC that you talked about in the opening,

5    do you know whether or not Mr. Benton continued to volunteer

6    for the PAC after he resigned?

7    A.  He continued working for the PAC.

8              MR. STOLARZ:  I have nothing further for this

9    witness, Your Honor.

10             THE COURT:  Any recross, Ms. Ross?

11             MS. ROSS:  Briefly, Your Honor.

12                          **CROSS-EXAMINATION**

13   BY MS. ROSS:

14   Q.  Agent Phan, geographically, Mr. Stolarz just asked you

15   about the defendant's work for Great American PAC, isn't it

16   true that the defendant continued to get paid by the Great

17   American PAC after he resigned in 2016?

18   A.  He got paid for work that he did for Great American PAC.

19   Q.  And that's after May 2016, isn't that correct?

20   A.  Yes.

21             MS. ROSS:  No further questions.  Thank you.

22             THE COURT:  All right.  Any redirect, Mr. Stolarz?

23             MR. STOLARZ:  No.  Thank you, Your Honor.

24             THE COURT:  All right.  Thank you, Agent Phan.

25   You may step down.

Warrington - Direct - Stolarz

```
 1              Mr. Stolarz, please call your next witness.
 2              MR. STOLARZ:  We call David Warrington.  He is
 3    outside.
 4              (Whereupon, David Warrington entered the courtroom
 5    and the following proceedings were had:)
 6              THE WITNESS:  Good afternoon, Your Honor.
 7              THE COURT:  Good afternoon.  Stand right over
 8    there and you will be sworn in.
 9              THE COURTROOM DEPUTY:  Sir, if you could please
10    raise your right hand.
11         DAVID WARRINGTON, DEFENSE WITNESS, SWORN
12              THE COURT:  You may proceed.
13                        DIRECT EXAMINATION
14    BY MR. STOLARZ:
15    Q.  Sir, please introduce yourself to the jury.
16    A.  My name is David Warrington.
17    Q.  And where do you work, sir?
18    A.  I'm a partner at the Dhillon Law Firm.
19    Q.  Where is that your office located?
20    A.  My office is located in Alexandria, Virginia.
21    Q.  What kind of law do you specialize in, sir?
22    A.  I basically do about three types of law.  I do political
23    law, white collar and commercial litigation.
24    Q.  Can you explain each of those briefly, please.
25    A.  Sure.  Commercial litigation is people and companies who
```

```
1    are fighting over things and money.  White collar

2    essentially is criminal law practice, but I'd say it's not

3    what I call blood-and-guts.  It's like people making

4    mistakes without paperwork and stuff like that.

5              And political law, I've represented candidates,

6    campaigns, committees, consultants and helping them to try

7    to comply with federal campaign finance law and First

8    Amendment issues.

9    Q.  Have you represented individuals and entities before the

10   be FEC?

11   A.  Yes.

12   Q.  Does the FEC have a civil enforcement mechanism?

13   A.  Yes, it does.

14   Q.  Do you know whether they have the power to issue fines?

15   A.  They do.

16   Q.  And have you been involved in cases in which fines have

17   been issued?

18   A.  I have.

19   Q.  Sir, do you know Jesse Benton?

20   A.  I do.

21   Q.  How do you know him?

22   A.  I've worked with Mr. Benton on a number of occasions

23   over the last, probably, 10 to 12-plus years, and I consider

24   him a friend.

25   Q.  Have you also represented him in a -- him or an entity
```

```
 1    that he was affiliated with in any legal capacities?

 2    A.  Yes, I have.

 3    Q.  And explain that, please.

 4              Actually I'll withdraw that.

 5              Have you represented any committees, political

 6    committees, that he has been involved in?

 7    A.  Yes, I have.

 8    Q.  And are you aware of Mr. Benton's conviction in Iowa?

 9    A.  Yes, I am.

10    Q.  Do you know what happened to that conviction?

11    A.  He was pardoned.

12    Q.  I'm going to show you what's been entered into evidence

13    as Government's 30.  It's a stipulation.  You can stop at

14    the -- one more page.

15              Sir, I'm showing you page 8 of this document.

16    It's front of you on your screen.

17              What is this document, sir?

18    A.  It's the executive grant of clemency or otherwise the

19    actual pardon issued by the President.

20    Q.  And it's a full and unconditional pardon; do you see

21    that?

22    A.  Yes, I do.

23    Q.  If you go to -- do you know whether a press release was

24    issued contemporaneous with this pardon?

25    A.  Yes, I do.
```

1    Q.  Have you ever reviewed that press release?

2    A.  Yes, I have.  And I've also seen this before.

3    Q.  Go to the next one, please.

4         Several pages of redactions, but, sir, I ask you

5    when it gets to -- right there.  Sir, can you read this

6    statement from the press release, please?

7    A.  Yes.  "John Tate and Jesse Benton:  President Trump

8    granted John Tate and Jesse Benton full pardons.  This

9    action is supported by Senator Rand Paul and Lee Goodman,

10   former chairmen of the Federal Election Commission.  Both

11   Mr. Tate and Mr. Benton were convicted based on incorrect

12   campaign payments to a state senator.  According to

13   Mr. Goodman, the reporting law violated was unclear and not

14   well established at the time.  Each individual received six

15   months' home confinement and two years of probation."

16   Q.  Sir, who is Lee Goodman?

17   A.  Lee Goodman is the former chairman of the Federal

18   Election Commission.

19   Q.  And the statement on this press release, can you expand

20   on the "reporting law was unclear and not well established

21   at the time"?

22        MS. PARIKH:  I'm sorry.  He did not write this

23   press release, so asking him to interpret what is being

24   referred to does not seem fair.

25        THE COURT:  Sustained.

```
 1              You can try and rephrase it.

 2    BY MR. STOLARZ:

 3    Q.  Sir, you represented -- did you represent Mr. Tate in

 4    the underlying case that this is referencing?

 5    A.  Yes, I did.

 6    Q.  So you have personal knowledge of the reporting law that

 7    is referenced in this press release; do you not?

 8    A.  Yes, I do.

 9              MS. PARIKH:  Objection.  Same objection.

10              THE COURT:  Overruled.

11    BY MR. STOLARZ:

12    Q.  So the reporting law mentioned the file is unclear and

13    not well-established.

14              Can you expand on that, please?

15              THE COURT:  I'll ask the parties to approach.

16              (Whereupon, the following proceedings were had at

17    sidebar outside the presence of the jury:)

18              THE COURT:  I feel like you're having an attorney

19    kind of give a legal conclusion about the state of law maybe

20    one of which is at issue here.

21              MR. STOLARZ:  I'm not asking him to render legal

22    opinions on the validity of the statute.  I'm having him

23    explain that the statute in that case was determined to be

24    unclear by the Federal Election chairman.

25              THE COURT:  That's evident.  We don't need
```

```
 1      testimony on that point.

 2                 MR. STOLARZ:  Thank you.

 3                 (Whereupon, the following proceedings were had in

 4      open court:)

 5                 THE COURT:  So, Mr. Stolarz, I'll ask you to move

 6      on.

 7      BY MR. STOLARZ:

 8      Q.  After this matter and the pardon, do you recall

 9      receiving an e-mail from Mr. Benton about a question

10      concerning an event in September 2016?

11      A.  After the issuance of the pardon?

12      Q.  Yes.  I may have my timing wrong, so we can take the

13      pardon down and ask you:  Do you recall receiving an e-mail

14      about a question concerning an event in September of 2016

15      from Mr. Benton?

16      A.  Yes, I do.

17      Q.  I'm going to ask you to look at -- in your book as well

18      as on the screen --

19                 MR. STOLARZ:  Your Honor, I move Defense 13 into

20      evidence as I understand that the government is not

21      objecting.

22                 MS. PARIKH:  No objection, Your Honor.

23                 THE COURT:  Without objection, Defense 13 is in

24      and may be published to the jury.

25                 (Defendant Exhibit 13 received.)
```

1    BY MR. STOLARZ:

2    Q.  Showing you what's been admitted as Defendant's 13, from

3    September 14, 2016, Mr. Benton states, "May I ask you a

4    question?"  Do you see where I am?

5    A.  Yes, I do.

6    Q.  He states, "Are tickets to political events

7    transferable?  Specifically, can I buy a ticket to

8    fundraiser and have someone go in my place?"

9            Do you see that?

10   A.  Yes, I do.

11   Q.  "Or can I buy a ticket for someone through a super PAC?"

12           Do you see that?

13   A.  Yes, I do.

14   Q.  And you received this and responded to it; is that

15   right?

16   A.  That's correct.

17   Q.  And what was your response, sir?  Can you read your

18   e-mail dated September 15th at 10:35 a.m.?

19   A.  Yes.  I wrote in response, "The answer to your question

20   in general is yes, but if it is an elected official or

21   federal candidate you are having go in your place or buying

22   a ticket for, there are rules about gifts that they have to

23   be careful not to violate.  If this is just another

24   civilian, then you can give the ticket to or buy a ticket

25   for whomever you want.  Let me know if that answers your

1    question."

2    Q.  So in this statement, sir, you reference a qualifier

3    about an elected official; is that right?

4    A.  That's correct.

5    Q.  So what were you trying to inform Mr. Benton of by that

6    qualifier regarding an elected official?

7    A.  If you're having an elected official -- if you're giving

8    the ticket to an elected official as a gift or whatever,

9    there are rules in place dealing with gifts given to elected

10    officials or federal officials.

11    Q.  Thank you.

12            And then Mr. Benton asks you ten minutes later, "I

13    want to buy a ticket for a Russian citizen who is over here

14    in the States receiving a humanitarian award.  Does that

15    check out with you?  I can buy the tickets personally or

16    have a super PAC do it.  Is one better than the other?"

17            Do you see that?

18    A.  I do.

19    Q.  And do you respond to that with an answer?

20    A.  Yes, I do.

21    Q.  Can you read that, please?

22    A.  "There is no prohibition on a Russian citizen receiving

23    a ticket to an event.  Either way you want to do it is okay.

24    If you have the Super PAC do it, the expenditure is

25    reportable to the FEC."

1    Q.  As to your first answer there, is it your understanding

2    that a Russian citizen can attend an event?

3    A.  Yes.

4    Q.  Was there any followup between you and Mr. Benton

5    regarding this e-mail?

6    A.  Yes, there was.  There was a phone call.

7    Q.  How soon after this e-mail was the phone call between

8    you two?

9    A.  It was relatively short.  I believe it was the same day.

10   And I remember the phone call because the question was "even

11   a Russian?" and the answer is, Yes, you can give your ticket

12   that you purchased to a fundraiser to anybody that you want

13   to give it to.  But it sticks in my mind because it was that

14   question of "even a Russian?"

15   Q.  And how long was that conversation?

16   A.  A couple minutes.

17   Q.  And was that the end of the matter for you?

18   A.  Yes.

19   Q.  Just one moment.

20           Do you recall whether you discussed with

21   Mr. Benton about having someone cleared with Secret Service?

22   A.  Yes.  During that phone call the only thing is if the

23   Secret Service had a problem.

24   Q.  Thank you.  Sir -- take it down.

25           You were aware, as we had mentioned, of the prior

```
 1    conviction in Iowa?
 2    A.  I was.
 3    Q.  And did you want Mr. Benton ever to run afoul of the law
 4    again or be accused of anything?
 5    A.  No.
 6              MS. PARIKH:  Objection, relevance.
 7              THE COURT:  Overruled.
 8    BY MR. STOLARZ:
 9    Q.  What's the answer, sir?
10    A.  The answer is no.
11    Q.  In fact, as lawyer is that the last thing you want the
12    client to do?
13              MS. PARIKH:  Objection.  Leading.
14              THE COURT:  Sustained.
15    BY MR. STOLARZ:
16    Q.  What is the purpose of a lawyer in communicating with
17    his client about an issue that he raises?
18    A.  To keep the client out of trouble and to advise the
19    client how to comply with the law.
20    Q.  And the law in this case, the political law, in your
21    experience -- by the way, I don't think we ever said how
22    many years.
23              How many years have you have practiced political
24    law?
25    A.  15 or 16.
```

1    Q.  And from your perspective in this field is the law clear

2    or unclear?

3            MS. PARIKH:  Objection.  Calls for a legal

4    conclusion.

5            THE COURT:  Sustained.

6    BY MR. STOLARZ:

7    Q.  In your experience dealing with the FEC, have you had

8    challenges with them regarding the interpretation of

9    regulation and statutes?

10   A.  Yes.

11           MS. PARIKH:  Objection.

12           THE COURT:  Okay.  On what basis, ma'am?

13           MS. PARIKH:  Relevance.

14           THE COURT:  Overruled.

15   BY MR. STOLARZ:

16   Q.  What was your answer?

17   A.  My answer was yes, the rules are clear as mud.

18   Q.  And what was the next time you heard anything about this

19   matter that we're in court for today?

20   A.  When they raided Mr. Benton's home.

21   Q.  Sir, do you stand by the advice you gave to Mr. Benton

22   that's reflected in Defendant's Exhibit No. 13?

23   A.  Absolutely.

24           MR. STOLARZ:  Your Honor, no further questions of

25   this witness at this time.

```
 1                 THE COURT:  Thank you, Mr. Stolarz.

 2                 Ms. Parikh.

 3                 MS. PARIKH:  Your Honor, may we approach?

 4                 THE COURT:  You may.

 5                 (Whereupon, the following proceedings were had at

 6      sidebar outside the presence of the jury:)

 7                 MS. PARIKH:  Your Honor, based on an interview

 8      that we did with Mr. Warrington, I expect what he would say

 9      if I asked him, that he assisted with the pardon.  He was an

10      advocate for Mr. Benton.  I would like to ask him about that

11      because the client is always relevant.  I do not believe

12      that that opens the door to Mr. Stolarz asking him about the

13      feelings or the hard fact that he opened the door.  I think

14      that's relevant.  Not only has he served as Mr. Benton's

15      lawyer for a number of years in various capacities, but the

16      fact that he went above and beyond in using his connections

17      to get him pardoned does go to his relationship.  And it's

18      relevant for bias, which the jury should not be considering

19      about his testimony.

20                 THE COURT:  All right.  I'm certainly inclined to

21      agree with you on that point.  I don't know -- are you

22      planning to ask -- would you want to follow up, then, about

23      why he sought the pardon?

24                 MR. STOLARZ:  No.  Lawyers do this.  It's not

25      uncommon to seek pardons, and he would have no problem
```

1    describing his role in it, so I probably wouldn't object to

2    the question anyway.

3            THE COURT:  She's concerned that she might be

4    opening the door to discussion about him thinking that law

5    enforcement was unclear or something like that.

6            MR. STOLARZ:  You already made your ruling on what

7    he said about that.  The real question is I want to know

8    whether the Court was holding on the ruling whether she can

9    cross-examine on the telegram.  I don't think I opened the

10   door.

11           MS. PARIKH:  I agree that he did not open the

12   door.

13           (Whereupon, the following proceedings were had in

14   open court:)

15           THE COURT:  All right.  Ms. Parikh, you may

16   proceed.

17           MS. PARIKH:  Thank you, Your Honor.

18                        **CROSS-EXAMINATION**

19   BY MS. PARIKH:

20   Q.  Good afternoon, Mr. Warrington.

21   A.  Good afternoon.

22   Q.  You've practiced law for well over a decade; isn't that

23   right?

24   A.  Yes.

25   Q.  And you've been in private practice for the majority, if

```
 1    not all, of your career?
 2    A.  All of my career.
 3    Q.  You're a partner at a law firm?
 4    A.  I am.
 5    Q.  And per your firm bio, you are recognized as one of the
 6    leading Republican lawyers in the nation; isn't that right?
 7    A.  That's what the bio says.
 8    Q.  And per your bio, you have been involved in some of the
 9    highest profile political campaigns and issues in the
10    nation, right?
11    A.  That's what the bio says.
12    Q.  You served as counsel to the 2016 Trump campaign to the
13    Credentials, Platforms & Rules Committee at the RNC in
14    Cleveland, Ohio; right?
15    A.  I did.
16    Q.  And on behalf of the Trump campaign, you successfully
17    defended Trump delegates in a federal lawsuit related to the
18    delegate selection process; isn't that right?
19    A.  That's correct.
20    Q.  As a general matter, unless you're doing pro bono work,
21    you bill your clients for your services, right?
22    A.  Most of the time.
23    Q.  Working at a law firm, you're in a client services
24    industry; that's fair to say?
25    A.  That is correct.
```

1    Q.  It's important to attract clients?

2    A.  That is correct.

3    Q.  And once you attract clients, it's important to retain

4    those clients, right?

5    A.  That's fair to say.

6    Q.  And part of client retention is keeping your clients

7    informed, right?

8    A.  Correct.

9    Q.  And part of client retention is ensuring clients'

10   satisfaction with your services, right?

11   A.  Correct.

12   Q.  Jesse Benton is a long-time client of yours, isn't he?

13   A.  Yes.

14   Q.  You've known him for many years?

15   A.  Yes.

16   Q.  And as you said on direct, he's not just your client,

17   he's also your friend?

18   A.  I consider him a friend, yes.

19   Q.  He sought your advice for over a decade on election and

20   campaign finance-related issues for multiple political

21   organizations and campaigns; isn't that right?

22   A.  That's correct.

23   Q.  You've represented him on three matters, right?  At

24   least three matters?

25   A.  I don't know how many.

1   Q.  You represented him in connection with a matter before

2   the Federal Election Commission, right?

3           MR. STOLARZ:  Objection, Your Honor.

4           THE COURT:  Overruled.

5           THE WITNESS:  Yes.

6   BY MS. PARIKH:

7   Q.  And in 2021, in this criminal case that we're all here

8   on today, you represented him for a time in connection with

9   this case as well?

10  A.  Yes, until it became apparent that I was going to become

11  a witness.

12  Q.  In 2016, you occasionally advised Mr. Benton on legal

13  matters, right?

14  A.  Yes.

15  Q.  And sometimes you billed him for those services and

16  sometimes you didn't, right?

17  A.  That's correct.

18  Q.  And when you wouldn't, you considered it to be client

19  goodwill?

20  A.  Yes.

21  Q.  Jesse Benton was chairman to Ron Paul's 2012

22  presidential campaign, wasn't he?

23  A.  Yes.

24  Q.  And you know him from that campaign, right?

25  A.  I knew him before then.

1    Q.  In fact, you were a general counsel to Ron Paul's 2012

2    presidential campaign, right?

3    A.  I was.

4    Q.  And so through your work on the Paul presidential

5    campaign, you worked closely with Mr. Benton at times,

6    right?

7    A.  Not as closely with Mr. Benton as I did with the

8    campaign manager, Mr. Tate.

9    Q.  My question is whether you worked closely with

10   Mr. Benton at times.

11   A.  At times.

12   Q.  You've known Mr. Benton for a long time?

13   A.  Yes.

14   Q.  You all are friends?

15   A.  Yes.

16   Q.  You care about him?

17   A.  Yes.

18   Q.  You know his family?

19   A.  Yes.

20   Q.  And you're aware, as you testified on direct, that

21   Mr. Benton received a pardon from Donald Trump in 2020?

22   A.  Yes.

23   Q.  And you actually assisted him in obtaining that pardon,

24   didn't you?

25   A.  Yes, I did.

1    Q.  In fact, you advocated for that pardon?

2    A.  Yes, I did.

3    Q.  Now, Mr. Warrington, you know because you were involved

4    in the case he received a pardon for that there were three

5    criminal defendants in that case, right?

6    A.  Yes.

7    Q.  And two of the defendants were pardoned?

8    A.  Yes.

9    Q.  All of three of them were convicted of the same

10   offenses, right?

11   A.  No.

12   Q.  All three of them were convicted of campaign finance

13   violations; isn't that right?

14   A.  One of the defendants was convicted of that and some

15   other -- and another count.

16   Q.  All three of them were convicted of campaign finance

17   violations, right?

18            THE COURT:  Would the parties approach.

19            (Whereupon, the following proceedings were had at

20   sidebar outside the presence of the jury:)

21            THE COURT:  Where are you going with this?

22            MS. PARIKH:  Well, I believe on direct he created

23   the impression that -- Mr. Stolarz intended to create the

24   impression that the law was unclear and that's part of why

25   he was pardoned, part of the issue.  My point is that all

1    three defendants were convicted of campaign finance

2    violations, but two of them are -- two of them were and one

3    was not.

4             THE COURT:  I think you should move on.  The press

5    release says that somebody thinks that it was unclear.  You

6    successfully objected when he wanted to try to talk about

7    that.  Let's just move on.

8             MS. PARIKH:  Understood.

9             (Whereupon, the following proceedings were had in

10   open court:)

11            THE COURT:  All right.  I'm going to sustain the

12   objection.

13   BY MS. PARIKH:

14   Q.  Mr. Warrington, you were counsel for Mr. Benton for

15   about six months in this case, right?

16   A.  That sounds about right.

17   Q.  And then you withdrew?

18   A.  Yes.

19   Q.  And you withdrew because you knew that you would

20   potentially be a witness at trial?

21   A.  Yes.

22   Q.  And then Mr. Stolarz assumed representation of

23   Mr. Benton, right?

24   A.  Mr. Stolarz was involved before I actually withdrew.  So

25   I assisted in getting Mr. Stolarz because we determined that

1    I was probably going to be a witness in the case, so we

2    reached out to Mr. Stolarz.

3    Q.  So after you withdrew, Mr. Stolarz became counsel,

4    right?

5    A.  Yes.

6    Q.  You didn't realize until after Mr. Benton was indicted

7    that he had sought your advice on this matter?

8              MR. STOLARZ:  Objection -- withdrawn.

9              THE WITNESS:  I had a vague recollection, but it

10   wasn't until we got some additional information from the

11   government that it became clear that I was going to have to

12   be a witness in the case.

13   BY MS. PARIKH:

14   Q.  Mr. Benton was indicted on September 9, 2021; is that

15   right?

16   A.  That's correct.

17   Q.  And you filed your notice of appearance in this case on

18   September 23, 2021, right?

19   A.  That's correct.

20   Q.  You moved to withdraw on March 2, 2022; is that right?

21   A.  That sounds about right.

22   Q.  And that's when you realized that you couldn't serve as

23   Mr. Benton's lawyer?

24             MR. STOLARZ:  Your Honor, I'm going to object to

25   the final question.

```
1              THE COURT:  Overruled.  But I think let's get to

2      the point here.

3              You may answer the question, sir.

4              THE WITNESS:  Can you repeat the question?

5      BY MS. PARIKH:

6      Q.  On March 2nd, 2022, is when you realized that you

7      couldn't serve as Mr. Benton's lawyer?

8      A.  That sounds about right.

9      Q.  Mr. Warrington, you were asked some questions about how

10     clear campaign finance law is, do you remember that?

11     A.  Yes, I do.

12     Q.  Mr. Warrington, you would agree with me that the foreign

13     national prohibition was made law in 1974, right?

14     A.  That sounds about right, when FECA was adopted.

15     Q.  And it was actually by a FECA amendment; is that right?

16     A.  That sounds about right.

17     Q.  And conduit contributions were also prohibited in 1974,

18     right?

19     A.  Sounds about right.

20     Q.  And the law has not changed since that time on those

21     specific prohibitions; isn't that true?

22     A.  Well, there's a whole body of case law that's developed

23     around those statutes and there's a whole body of FEC

24     guidance and advisory opinions and matters under review

25     that -- there's all kinds of nuance to those particular
```

```
1     issues.
2               That's why I said earlier that federal campaign
3     finance law is as clear as mud, and that's why people need
4     to have lawyers -- that's how I get paid is trying to figure
5     out how to navigate what should be a fairly straightforward
6     set of laws but has been completely confused over the last
7     40, 50 years.
8               MS. PARIKH:  I move to strike that response as
9     nonresponsive.
10              THE COURT:  Overruled.
11    BY MS. PARIKH:
12    Q.  Mr. Warrington, isn't it true that since 1974, a foreign
13    national -- it's been illegal for a foreign national to
14    contribute to an American presidential campaign?
15    A.  Yes.
16    Q.  And it's been illegal since 1974, for someone to make a
17    campaign -- make a contribution to an American presidential
18    campaign using someone else's money; isn't that?
19    A.  Say that again.
20    Q.  Since 1974, it's been illegal for one person to take
21    someone else's money and make a political contribution to a
22    U.S. presidential campaign?
23    A.  Again, there are nuances to that that have developed
24    over time.  There is a prohibition on conduit contributions
25    in the statute, but, like I said, there's a bunch of FEC
```

 1    decisions that have put glosses on that.

 2    Q.  There's been a prohibition on conduit contributions

 3    since 1974; isn't that true?

 4    A.  Yes.

 5    Q.  Mr. Warrington, you were asked some questions about an

 6    e-mail exchange with Mr. Benton.  Do you recall that?

 7    A.  I do.

 8         MS. PARIKH:  I would like to pull up Defendant's

 9    Exhibit 13, please.  And I'd like to skip to the second

10    page.

11    BY MS. PARIKH:

12    Q.  Mr. Warrington, on September 14, 2016, Mr. Benton

13    e-mailed you and asked whether he could buy a ticket to a

14    fundraiser and have someone go in his place, right?

15    A.  Yes.

16    Q.  He also asked you whether he could by a ticket for

17    someone through a Super PAC, right?

18    A.  Yes.

19    Q.  And on September 15, 2016, so the next day, if we could

20    go to the first page, Mr. Benton e-mailed you and said, "I

21    want to buy a ticket for a Russian citizen who is over here

22    in the States receiving a humanitarian award.  Does this

23    check out with you?  I can buy the ticket personally or have

24    the Super PAC do it.  Is one better than the other?" right?

25    A.  That's what it says.

1    Q.  And you had a follow-up conversation with Mr. Benton

2    after the September 15, 2016, e-mail about Mr. Benton's

3    desire to buy a ticket to a fundraising event and give it to

4    a Russian citizen who wanted to attend the event, right?

5    A.  Yes.

6    Q.  During the call, you testified on direct that Mr. Benton

7    seemed surprised that there were no restrictions on giving a

8    ticket to a Russian national; isn't that right?

9    A.  Yes.

10   Q.  He asked you on that call "even to a Russian?" right?

11   That was your testimony?

12   A.  Yes.

13   Q.  And you have a specific memory of that?

14   A.  I do.

15   Q.  This is all of the information that you remember

16   Mr. Benton providing you on this topic; isn't that true?

17   A.  Yes.

18   Q.  You do not remember Mr. Benton telling you anything

19   about the source of the funds other than him saying that he,

20   Mr. Benton, could buy the tickets, right?

21   A.  Yeah.  It says, I can buy the ticket personally or have

22   the Super PAC," or he was going buy it or the Super PAC was

23   going to buy it.

24   Q.  You did not follow up with Mr. Benton after the e-mail

25   by either phone or e-mail to see whether he had actually

```
1    purchased the ticket, right?

2    A.  No, I didn't.

3    Q.  You have no idea what information about the Russian

4    national that he described in this e-mail exchange he

5    provided to the political committee, right?

6    A.  At that time?

7    Q.  At that time, in 2016.

8    A.  Not at that time.

9    Q.  You didn't communicate with Mr. Benton again regarding

10   the ticket to the fundraising event before you assumed

11   representation of him in this case?

12   A.  That's correct.

13   Q.  And you did not yourself attend the 2016 Philly

14   fundraiser?

15   A.  No, I didn't.

16   Q.  And apart from what you learned as Mr. Benton's lawyer

17   in this case, the sum total of what Mr. Benton told you

18   about buying a ticket to a fundraiser for a foreign national

19   was either in this e-mail that we're looking at, Defense

20   Exhibit No. 13, or over the phone in the phone conversation

21   that you described, right?

22   A.  That's correct.

23   Q.  And you testified about everything that he told you here

24   today?

25   A.  That's what I recall.
```

```
 1                    MS. PARIKH:  No further questions.

 2                    THE COURT:  Mr. Stolarz, any redirect?

 3                    MR. STOLARZ:  Briefly.  Thank you.

 4                        REDIRECT EXAMINATION

 5     BY MR. STOLARZ:

 6     Q.  Sir, regarding the inquiry from the government regarding

 7     your withdrawal, when did you become aware of the e-mail,

 8     Defendant's 13?

 9     A.  I believe I first saw that when we got a set of

10     documents from the government's tag team.  It was during the

11     Christmas holiday of that year or shortly thereafter.

12     Q.  And then promptly thereafter --

13     A.  I reached out to you.

14     Q.  -- what did you do?

15     A.  I reached out to you.

16     Q.  And is that because you knew you would be a witness in

17     this case?

18     A.  Yes.

19     Q.  And do you believe that you had relevant information in

20     this case and that's why you sought to withdraw?

21     A.  Yes.

22     Q.  And do you pride yourself in the advice you gave in that

23     e-mail?

24     A.  Yes, absolutely.

25     Q.  Stand by it?
```

1     A.  Stand by it a hundred percent.

2              MR. STOLARZ:  Thank you, Your Honor.  Nothing

3     further.

4              THE COURT:  Thank you, Mr. Warrington.  You are

5     free to go.

6              Mr. Stolarz, does the defense have any further

7     evidence?

8              MR. STOLARZ:  The defense rests, Your Honor.

9              THE COURT:  All right, ladies and gentlemen.

10    You've heard all of the evidence you will hear in this case.

11    We are moving on very well here.

12             I'm going ask you all to take a bit longer of a

13    break than normal because the attorneys and I have to do

14    some stuff to get ready for my final jury instructions to

15    you and then closing arguments, which you will hear later

16    this afternoon.

17             Why don't we plan for you to come back at 3:15,

18    okay?  And I know you have heard everything, all of the

19    evidence, but still hold off.  Don't talk with one another

20    about the case and don't do any research.  Thanks, folks.

21             (Whereupon, the jury exited the courtroom at

22    2:35 p.m. and the following proceedings were had:)

23             THE COURT:  All right.  Mr. Benton, could you

24    approach the podium, sir?

25             THE DEFENDANT:  Yes.  Where do you want me?

1          THE COURT:  Right there, sir.

2          Sir, do you understand that you have an

3   unconditional right to testify or not to testify at trial?

4          THE DEFENDANT:  Yes, I understand, sir.

5          THE COURT:  And do you understand that you alone

6   control this decision whether to testify?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Have you had adequate time to discuss

9   this decision with your attorney?

10          THE DEFENDANT:  Yes, I have.

11          THE COURT:  Have you voluntarily decided not to

12   testify?

13          THE DEFENDANT:  Yes, I have, sir.

14          THE COURT:  All right.  Thank you, sir.  You may

15   have a seat.

16          Ms. Chaclan will give you a form to sign in just a

17   moment.

18          All right.  Let's talk about the jury

19   instructions.

20          Have you all had an opportunity to tweak the

21   instructions Ms. Rhodes sent you?

22          MS. PARIKH:  We have, Your Honor, and we have, for

23   the most part, discussed them with defense counsel.

24          THE COURT:  Okay.  Actually, can you e-mail

25   them -- have you e-mailed them to anybody?  Or do you not --

1          MS. PARIKH:  I'm not sure.  We probably do have

2     e-mail access.  I don't know if they're in a form that we --

3     we might be able to get them in a form that we can send them

4     quickly.

5          THE COURT:  Why don't we do that?  So if you can

6     send them to Ms. Chaclan and she can print out for all of

7     us.  I think that's the easiest way to go through it to make

8     sure we're all on the same page.

9          MR. STOLARZ:  Just to note for the record, the

10    government sent me last night a proposed edit to my theory

11    of the case instruction which I do object to.  I would like

12    to be heard at the appropriate time.

13         THE COURT:  We'll deal with that.

14         MS. PARIKH:  Would you like us to send a red-line

15    version, or do you want us to send a clean version?

16         THE COURT:  How about both?  Can you do that?

17         While we're doing printing, is one of you in a

18    position to make your arguments on the good faith

19    instruction?

20         MR. STOLARZ:  Actually, Your Honor, I suppose I

21    should -- I would like to renew my motion for judgment of

22    acquittal pursuant to Rule 29 for the reasons I stated

23    before.

24         THE COURT:  Okay.  And for the reasons I

25    previously stated, I'll deny that motion.

```
 1                MR. STOLARZ:  Thank you.

 2                MS. PARIKH:  Your Honor, with regard to the good

 3      faith instruction, this instruction is unnecessary because

 4      it's covered -- everything that is covered in this

 5      instruction is separately covered by the other instruction.

 6      So if they find Mr. Benton not guilty, it's either because

 7      they find that he did not have the requisite mental state,

 8      which is covered by the willfulness and knowledge

 9      instructions, or because he acted -- as the instruction

10      says, he had an honest misunderstanding about the lawfulness

11      of his conduct, which, if it's not because he lacked the

12      requisite mental intent, it's because he relied on the

13      advice of counsel.  So there's a separate advice of counsel

14      instruction.

15                So it's the government's view the good faith is

16      superfluous.  It's not necessary because it is all covered

17      in the rest of the instruction and the defendant is not

18      entitled to it.

19                THE COURT:  You're not arguing it's incorrect.

20      You just believe it's redundant; is that correct?

21                MS. PARIKH:  That's correct, yes.

22                THE COURT:  Okay.  Thank you.

23                And, Mr. Stolarz, what in here is not contained in

24      another argument -- or another instruction, or is your

25      position that it doesn't matter; you just want to have it
```

1      all together?

2             MR. STOLARZ:  That is primarily my argument, that

3      I like to have this in and of itself by itself, not buried

4      within the elements, because I believe it gets lost

5      otherwise.  This explains specifically what good faith is

6      and how it is to be applied, and I believe it needs to be

7      standalone so I can argue it as that.

8             This is not just advice of counsel defense; it's

9      an overall good faith defense and how he dealt with

10     Mr. Wead, dealt with Mr. Vasilenko and how we dealt with the

11     RNC.  Therefore, I believe he's entitled to this as a

12     separate instruction in addition to the advice of counsel.

13     It separates it.  It allows me to explain to the jury in a

14     way that's not buried within the elements that I do not

15     think is covered completely in the definition, or else, if

16     it's word for word, there wouldn't be a separate

17     instruction.

18            While the circuit is not this redundant -- some

19     judges give it; some don't, but it is not the law that it is

20     redundant as a matter of law.  And we ask that it stay in so

21     I can argue it on its own, stand alone, explain to them what

22     willfully is and what it isn't regarding this instruction.

23            I do want to make one final point before you

24     decide.  I'm sorry.

25            Part of my defense is this is a mistake.  You've

 1    heard the word "mistake" multiple times.  If Mr. Benton has

 2    made an honest mistake or an honest misunderstanding that he

 3    did not act willfully, that's within the good faith defense.

 4    Stand alone enables me to argue that exact point to the jury

 5    on mistake, that he's mistaken.

 6            That pivots into my advice of counsel defense, and

 7    I would like them both so that I can explain his conduct in

 8    a continuum, dealing with Mr. Wead before he contacted

 9    Mr. Warrington and then after.  Thank you.

10            MS. PARIKH:  And, Your Honor, if I just may add

11    that the DC Circuit has addressed this issue and found that

12    a good faith instruction is redundant where the state of

13    mind instructions have already addressed the issue.  And

14    that was in *United States versus Akhigbe*, A-k-h-i-m-h --

15    i-g-b-e, 642 F.3d, District Court, 2011.

16            And earlier this year Judge Moss rejected in a

17    campaign finance case the exact same instruction, where

18    there was a very similar defense that it was a good faith

19    honest mistake, because it was redundant of the other

20    instructions.

21            THE COURT:  Okay.  I'll take that under

22    advisement.

23            I'm looking at excusing alternate jurors, which

24    has reminded me about Juror No. 12, I think it is, who had

25    the flight, I believe, Friday afternoon.  We're moving along

 1   faster than I expected.  I would be surprised if we're not

 2   done by Friday afternoon, but I also would hate to start

 3   over with -- if we would have to sub in one of the

 4   substitutes.

 5         I guess my inclination would be to have Juror No.

 6   14, who is the first alternate, sub in for her and make her

 7   the second alternate.  But I'm happy to hear from the

 8   parties on that.

 9         Mr. Stolarz, what's your position?

10         MR. STOLARZ:  No objection.  I have been in cases

11   where jury notes take time and the deliberations can longer

12   than the evidence, so I do think that's a prudent move.

13         THE COURT:  Does the government have any objection

14   to subbing out 14 and 12?

15         MS. PARIKH:  Your Honor, the government doesn't

16   think it's necessary because it seems like it's likely to be

17   over with by Friday, but in the end we'd defer to the Court.

18         THE COURT:  Okay.  So I think I will do that.

19   It's probably overly cautious, but what do we have jurors

20   for if not to avoid -- especially this next week being

21   Thanksgiving, I really do not want to run into that.

22         So on page 55 I'm going to be saying I can now

23   excuse those jurors in seats number -- I guess it's going to

24   be 12 and 13.

25         Do you remember what page your theory of the case

1    is, Mr. Stolarz?

2         MR. STOLARZ:  On the one they sent me yesterday

3    was page 46, in the 40s.

4         THE COURT:  Okay.  Have you all sent it to Ms.

5    Chaclan?

6         MS. PARIKH:  We just finished marking it up and

7    we're just trying to get connected, so it should be sent

8    over momentarily.

9         THE COURT:  Mr. Stolarz, do you have a copy of --

10   I actually -- I'm not sure that I have the most recent copy

11   of this.

12        What are you seeking for your theory of the case?

13        MR. STOLARZ:  Well, we received the e-mail from

14   your clerk on Thursday that the instructions was approved

15   and the government --

16        THE COURT:  You should not take anything for sure.

17        MR. STOLARZ:  Very good.  The government added a

18   sentence to it that turned a defense theory of the case to a

19   government's theory of the case.  I don't know if you have

20   that in front of you, but that is what I principally object

21   to.

22        But I can -- regarding the instruction itself, as

23   I mentioned in the Rule 29 motion, the statute clearly --

24   52 U.S.C. 30101 clearly says, "A contribution is any gift,

25   subscription, loan, advance, or deposit of money or anything

1    in value made by any person for the purpose of influencing

2    any election for federal office" --

3            THE COURT:  Sorry.  Are you reading from your

4    instruction?

5            MR. STOLARZ:  I just read from the statute.

6            THE COURT:  Okay.

7            MR. STOLARZ:  And so I took that language, put it

8    into the theory of the case, because our theory of the case

9    is exactly that, that our theory is if it's for a picture

10   for his own personal business reasons, then it is not a

11   contribution under the law for the purpose of influencing

12   any election for federal office.

13           There is no legislative history on that term.  The

14   case law is spotty, at best.  The government has put in its

15   trial brief cases regarding the FEC's interpretation of it,

16   and nowhere does that challenge my ability to say to the

17   jury, A contribution is this under the law; therefore, if

18   it's not this under the law, you have to acquit.

19           So I believe that my theory of the case

20   instruction is right within the law.  There is no case that

21   they can provide that says that this is not what the law

22   says, that "for the purpose of" has to mean something, and

23   they have not provided any case law to say it doesn't mean

24   for the purpose of influencing any election for federal

25   office.

1         We believe this theory of the case instruction is

2    critical for me to tell the jury what the law means and tell

3    the jury what the law is and then for me to argue that if

4    you find this was for personal business reasons, it's not a

5    contribution under federal law.

6         THE COURT:  All right.  So I haven't seen the

7    proposed addition, but I'm inclined to strike the first

8    paragraph and just start with the defendant's theory of the

9    case.  I think the first paragraph is -- gives partial

10   reiteration of the -- what I would have already said earlier

11   about the various standards.  And I just -- rather than try

12   to reiterate those, I prefer to go to the heart of what your

13   theory is and start with your theory of the case and then

14   finish up with the third paragraph in the draft that was

15   given to you all.

16        Do you have any objection to that?

17        MR. STOLARZ:  I'm not so sure we're on the same

18   sheet of paper, and I think your clerk has nodded to you as

19   well.  I think you already did that in what was sent to you

20   by the clerk.

21        THE COURT:  Okay.  Oh, yes.

22        So you're comfortable what Ms. Rhodes sent you?

23        MR. STOLARZ:  I'm fine with that.  I'm not fine

24   with the proposal the government made to my instruction, but

25   the one that was sent by your clerk, yes, I have no

1    objection as it's been modified.

2              THE COURT:  So, Ms. Parikh, are you arguing for

3    the government on that?

4              MS. PARIKH:  Yes, Your Honor.  And I know that the

5    current whole version is being printed, but I do have the

6    single page for this theory of the case instruction, if you

7    would like me to hand it up.

8              THE COURT:  I'm looking at it right now.  Well,

9    actually -- I don't, yeah.  Thanks.

10             MS. PARIKH:  Your Honor, the government is

11   proposing revisions to this instruction because the

12   government is concerned that the way this theory of the case

13   instruction reads, if the jury were to find that a purpose

14   of this contribution was to receive the photograph with

15   Donald Trump, that that is enough to find that the defendant

16   is not guilty.

17             Of course, people often have multiple motives or

18   purposes when they act, and so we think it's really

19   important to clarify that you can have multiple motives and

20   purposes and people often do, and so we don't need to prove

21   that the only purpose was to influence the election.  As

22   long as that was a purpose of this contribution, that's

23   sufficient.

24             THE COURT:  All right.  Mr. Stolarz, do you object

25   to the solely, "but solely"?

```
1              MR. STOLARZ:  To that one word?

2              THE COURT:  Yes.

3              MR. STOLARZ:  I object to all of their entries,

4    but if you are going to have only one, "solely" would be

5    okay.  But they've turned the defense theory of the case to

6    the government theory of the case.  The statute says the

7    purpose, not a purpose.

8              THE COURT:  But I'm trying to understand.  I mean,

9    there is some -- I think as you have it written it is a bit

10   of a false dichotomy, that he's doing it for -- that he was

11   doing it to receive a photograph.  I think the government is

12   right that one can do it for multiple reasons.  I think

13   adding "solely" addresses that point.  Tell me if you

14   disagree with that.

15             MR. STOLARZ:  Adding "solely" I would be okay

16   with.  It is my instruction that I proposed.  But the next

17   paragraph about "people can have more than one purpose for

18   their actions," the statute does not say --

19             THE COURT:  I think I got it.  I got it.

20             MR. STOLARZ:  That part I object to, but not

21   "solely."

22             THE COURT:  I'm going to take out the government's

23   addition of that sentence.  I don't think there's anything

24   wrong with it, but I agree with Mr. Stolarz that he gets to

25   say what his theory is.  I will add in the "solely" though.
```

 1          MS. PARIKH:  Your Honor, would you consider giving

 2     some version of that middle paragraph as a stand-alone

 3     instruction?  We want to make sure that we're able to argue

 4     that.  I think it is -- as in this case, it's accurate, and

 5     we're concerned if we don't have support in the instructions

 6     that the jury may be confused that they do have to make a

 7     decision between whether the purpose was for a photograph or

 8     whether the purpose was for an election, when it could be

 9     both, and if it's both, then he's guilty.

10          THE COURT:  Yeah.  So I mean, I'm inclined to go

11     off the jury instructions you all have given me, including

12     the elements.  And I don't think adding to the defense

13     theory of the case is fair to Mr. Stolarz.

14          So my inclination, I think you're perfectly free

15     to argue that.  If there is a question down the road from

16     the jury, I would agree with you that something along the

17     lines of what you've said is accurate.  But it's a little

18     late in the day to start playing with the elements, and I

19     think Mr. Stolarz gets to say what's in his theory of the

20     case.

21          MS. PARIKH:  Thank you.

22          THE COURT:  Okay.  So I'm going to start

23     through -- I guess this is what the government just

24     provided.

25          Mr. Stolarz, do you have a copy of what the

```
 1    government -- oh, good.  You do now.
 2              MR. STOLARZ:  Thank you.
 3              THE COURT:  So let's just quickly go through what
 4    we've got here.  I'm just going to read them for the record,
 5    and you all say something if you disagree or think there's
 6    something we need to address.
 7              So I'm going to give Instruction 1.202, 2.100,
 8    2.101, 2.102, 2.103, 2.104, 2.105, 2.106 -- this reminds me.
 9              Mr. Stolarz, do you have any objection to the
10    indictment going back with the jury?  I think this came
11    up -- this is something we were talking about in relation to
12    some of the other instructions.
13              MR. STOLARZ:  I found that to be a core practice.
14    Whatever the Court normally does, I'm fine and defer to
15    that.
16              THE COURT:  I guess I would be inclined here,
17    given it's a little complicated and it streamlines things
18    down the road, but I want to give a chance to object.
19              MR. STOLARZ:  I have no objection to you sending
20    it back.
21              THE COURT:  So we will plan to send back the
22    indictment.
23              2.106, 2.107, 2.108, 2.109, 2.10, 2.111, 2.112,
24    2.200, 2.207, 2.208.
25              I'm taking out 2.209.
```

1          I think 2.210 is out.

2          Ms. Parikh, do you agree?

3          MS. PARIKH:  Your Honor, the government's evidence

4    showed that Mr. Benton made inconsistent statements at

5    various points to the RNC and the other representatives, as

6    well as to the RNC, versus to his lawyer, so we would like

7    to keep it in.  It doesn't seem to be limited to a defendant

8    who testifies.

9          THE COURT:  So give me -- give me an example of

10   the false or inconsistent statements that you have in mind.

11         MS. PARIKH:  For example, he represented to the --

12   to the Trump Victory consultant, Caitlin Franklin, for an

13   extended period of time that the money was from Vasilenko

14   and then said it was from him.  At the same time he was

15   representing to his lawyer that he was going to buy the

16   ticket.  So that's inconsistency.

17         THE COURT:  Okay.  Do you disagree, Mr. Stolarz?

18         MR. STOLARZ:  I will confess I've only seen this

19   one other time in the context of a testifying defendant, but

20   I think that's the manner in which it's represented in the

21   instructions.

22         I don't believe the proffer that was just given

23   demonstrates that what Mr. Benton said was false or

24   inconsistent.  You had nobody testify that Mr. Benton said

25   Mr. Vasilenko was doing it.  That was their interpretation

1     either of e-mails or documents.  So I don't think that is a

2     false or inconsistent statement.  In fact, if it's

3     confusing, it's confusing from their interpretation, not

4     from anything Mr. Benton said.

5              So I'm not sure that there actually is a false or

6     inconsistent statement.  I worry about calling it that and

7     buttressing that and basically calling him a liar on these

8     e-mails when they're all subject to interpretation or we

9     wouldn't be here.

10             So I don't think they've reached this burden of

11    calling something he did false or inconsistent.

12             THE COURT:  Okay.  So I agree with the government.

13    I think at the very least just the evidence as to when and

14    Mr. Benton providing -- sending payment.  He said the check

15    is in the mail.  In fact, he said it was already in the

16    mail.  I think there's very strong evidence that that is not

17    true.  The government had -- the RNC and Ms. Franklin made

18    various efforts to get the money from him, and it seems like

19    there was a different explanation almost every time.  So I

20    think it may not go to the heart of the case, but I think it

21    is appropriate for me to give Instruction 2.210.

22             Instruction 2.216, I intend to take out unless I

23    hear any objections.

24             Similarly, 2.217, I'm taking out.

25             2.220, taking out.

1              2.311 taking out.  Everybody agree there's no

2     translated documents that we have in here?

3              MS. PARIKH:  Your Honor, we did technically admit

4     a document -- it was a bank record and there was testimony

5     that it had been translated.  However, this instruction

6     appears to be designed to reflect a situation where you have

7     the original document in a foreign language plus an English

8     translation, and we don't have that here, so it didn't seem

9     appropriate.

10             THE COURT:  Mr. Stolarz, do you agree we don't

11    need it?

12             MR. STOLARZ:  We don't need it, Your Honor.  Thank

13    you.

14             THE COURT:  It's out.

15             2.321, this is the one I kind of butchered earlier

16    today.

17             Mr. Stolarz, are you comfortable with this

18    version?

19             MR. STOLARZ:  Yes -- well, the government took the

20    laboring oar over the lunch break, and I've read it and it

21    looks consistent with the Rule 404(b) ruling that you have

22    made in this case.

23             MS. PARIKH:  Your Honor, if I could briefly make a

24    record of what we did here.  So there's two sort of

25    alternate versions of 2.321.  One is for modus operandi

1    evidence and one is for willfulness, lack of mistake or

2    accident.  And we combined those because our understanding

3    of Your Honor's ruling is that this evidence comes in both

4    to go to Mr. Benton's willfulness, knowledge, lack of

5    mistake or accident, and also to show some modus operandi.

6        So we combined both of the instructions into one.

7    The only thing that we neglected to do was to change the

8    title of this instruction, which because it's capturing two

9    different permissible purposes to consider the prior bad

10   act, we ask that it just be called "other crimes evidence."

11       THE COURT:  Okay.  I'm fine with that.  I'll just

12   do "evidence of other crimes," and we'll give it as the

13   government has suggested.

14       All right.  2.500.

15       The next few pages begins with explanation of

16   federal election laws that applies to Counts 1, 2 and 3.

17       Then we have conspiracy.

18       It goes on to Count 2, Count 3, Counts 4, 5 and 6.

19       All right.  Co-conspirator liability.

20       Mr. Stolarz, do you wish to be heard on the

21   government's red line to this 7.103(A)?

22       MR. STOLARZ:  I don't believe so.  I'm just seeing

23   it for the first time, but it looks -- you sent it to me

24   last night.  11:00 Sunday night?  Sure.

25       I received it Sunday night at 11:00, and I was up,

1    but I didn't read it.  It looks fine.

2                 THE COURT:  All right.

3                 3.102, 3.101, I -- well, I am going to give the

4    good faith defense.  I understand the government's argument,

5    but I think here is -- nobody is saying this i an inaccurate

6    description, and I think this does seem to kind of

7    crystallize the issue here, and I think it's clarifying to

8    the jury to have this all in one place.

9                 So I'm going to give it, although I'm going to add

10   at the very bottom here, "You must find Mr. Benton not

11   guilty on Counts 1, 2 and 3," because I believe that's what

12   this refers to.

13                Do you agree, Mr. Stolarz?

14                MR. STOLARZ:  I'm explaining to the defendant it

15   goes to the willfulness.  Your Honor, that's what I was

16   explaining to him.  Right, yes, that goes to willfulness, 1,

17   2 and 3, yes.

18                THE COURT:  All right.  So with that tweak, we'll

19   make sure we make that to the copy that goes back to the

20   jury.

21                The advice of counsel defense, defendant's theory

22   of the case -- and, again, this is going to be without that

23   added sentence from the government, but with the "solely"

24   there that the government suggested without objection from

25   the defendant.

```
 1                    Instruction 3.103, 2.405, 2.402, 2.407, 2.501.

 2                    I'm going to take out this final paragraph that

 3      talks about guns and whatnot, so it will just be the first

 4      two paragraphs of 2.501.

 5                    2.502, 2.505, 2.508, 2.509, and 2.511.

 6                    I'm all right.  I'm going to hold back -- I'm

 7      going to hold back 2.501, 2.502, 2.505, 2.511.  I'm going to

 8      give those after you all give your closing and right before

 9      they go out, but, otherwise, we'll give them as stated.

10                    Any final objections for the record, Ms. Parikh?

11                    MS. PARIKH:  No, Your Honor.

12                    THE COURT:  And, Mr. Stolarz?

13                    MR. STOLARZ:  No, thank you.

14                    THE COURT:  All right.  You all ready in seven

15      minutes, or do you need a bit longer?  Closing?  You will,

16      of course, have a lot longer because I will be reading for

17      quite some time.

18                    MS. WASSERMAN:  Just a quick question, Your Honor,

19      about timing.  So I timed the closing yesterday.  It was a

20      little over -- around 30 minutes, and this morning it was

21      around 40 minutes.  It happens.  I will speak slowly and so

22      it may be longer, but we were wondering -- we thought it

23      would be better to have the closing and rebuttal all in one

24      go for the jury so they have a chance to hear our closing,

25      defense closing and rebuttal.
```

1          We don't think -- if we were to do that, we

2     wondered if the Court would be amenable to the Court reading

3     the jury instructions today, which should be pretty lengthy

4     given the length of the jury instructions, breaking, and

5     then we should be done by -- before lunch tomorrow, given

6     the length of our closing, and I believe Mr. Stolarz

7     indicated that his closing was about 40 minutes?

8          MR. STOLARZ:  30 fast, 40 slow.  So, yes, I join

9     in the desire to do them at the same time.  But I defer to

10    the Court.  We are going quicker than expected, but I defer.

11         THE COURT:  All right.  I agree.  You all have

12    been very conscientious with time for everybody, so we can

13    do that.

14         We'll come back in five minutes.  I'll read the

15    instructions, and then we'll break for the day.  Thank you,

16    folks.

17         (Whereupon, proceedings recessed 3:08 p.m. until

18    3:17 p.m.)

19         (Whereupon, the following proceedings were had in

20    open court:)

21         THE COURT:  After the jury leaves for the day,

22    I'll ask you all meet with Ms. Chaclan and Ms. Rhodes and

23    make sure the exhibits are ready to go after closing

24    tomorrow.

25

1          (Whereupon, the jury entered the courtroom

2     3:20 p.m. and the following proceedings were had:)

3          THE COURT:  Welcome back, ladies and gentlemen.

4     Please feel free to have a seat.

5          Let me tell you what we're going to do.  I'm going

6     to read you the final jury instructions now and then the

7     attorneys suggested that we should break for the day and

8     come back tomorrow to hear their closing arguments.  So I

9     just wanted to kind of properly set expectations on that.

10         Also, you'll have a few copies of these jury

11    instructions with you back in the -- back in your

12    deliberations, so don't feel like you need to remember these

13    or write them down verbatim.

14         All right.  You may not communicate with anyone

15    not on the jury about this case.  As I explained early

16    earlier, this includes any communications -- any electronic

17    communications such as e-mailing or texting or blogging

18    about the case.  In addition, you may not conduct any

19    independent investigation before or during your

20    deliberations.  This means you may not conduct any research

21    in person or electronically via the Internet or in any other

22    way.

23         As I just said, I'll provide you with a few copies

24    of my instructions.  During your deliberations, you may, if

25    you wish, refer to these instructions.  While you may refer

1    to any particular portion of the instructions, you are to

2    consider the instructions as a whole and you may not follow

3    some and ignore others.  If you have any questions about the

4    instructions, you should feel free to send me a note.

5         Please return your instructions to me when your

6    verdict is rendered.

7         And I'll also be providing you with copies of the

8    indictment in the back.

9         My function is to conduct this trial in an

10    orderly, fair and efficient manner, to rule on questions of

11    law and to instruct you on the law that applies in this

12    case.

13         It is your duty to accept the law as I instruct

14    you.  You should consider all the instructions as a whole.

15    You may not ignore or refuse to follow any of them.

16         Your function as the jury is to determine what the

17    facts are in this case.  You are the sole judges of the

18    facts.  While it is my responsibility to decide what is

19    admitted as evidence during the trial, you alone decide what

20    weight, if any, to give to that evidence.  You alone decide

21    the credibility or believability of the witnesses.

22         You should determine the facts without prejudice,

23    fear, sympathy or favoritism.  You should not be improperly

24    influenced by anyone's race, ethnic origin or gender.

25    Decide the case solely from a fair consideration of the

1    evidence.

2            You may not take anything I may have said or done

3    as indicating how I think you should decide this case.  If

4    you believe that I have expressed or indicated any such

5    opinion, you should ignore it.  The verdict in this case is

6    your sole and exclusive responsibility.

7            If any reference by me or the attorneys to the

8    evidence is different from your own memory of the evidence,

9    it is your memory that should control during your

10   deliberations.

11           During your deliberation, you may consider only

12   the evidence properly admitted in this trial.  The evidence

13   in this case consists of the sworn testimony of the

14   witnesses, the exhibits that were admitted into evidence,

15   and the facts and testimony stipulated to by the parties.

16           During the trial, you were told that the parties

17   had stipulated, that is, agreed, to certain facts.  You

18   should consider any stipulation of facts to be undisputed

19   evidence.

20           When you consider the evidence, you are permitted

21   to draw from the facts that you found have been proven such

22   reasonable inferences as you feel are justified in the light

23   of your experience.  You should give any evidence such

24   weight as in your judgment it is fairly entitled to receive.

25           The statements and arguments of the lawyers are

not evidence.  They are only in intended to assist you in
understanding the evidence.  Similarly, the questions of the
lawyers are not evidence.

The indictment is merely the formal way of
accusing a person of a crime.  You must not consider the
indictment as evidence of any kind.  You may not consider it
as any evidence of guilt or draw any inference of guilt from
it.

Every defendant in a case is presumed to be
innocent.  This presumption of innocence remains with the
defendant throughout the trial -- unless and until the
government has proven he is guilty beyond a reasonable
doubt.  This burden never shifts throughout the trial.  The
law does not require Mr. Benton to prove his innocence or to
produce any evidence at all.

If you find that the government has proven beyond
a reasonable doubt every element of an offense with question
Mr. Benton is charged, it is your duty to find him guilty of
that offense.  On the other hand, if you find the government
has failed to prove any element of an offense beyond a
reasonable doubt, it is your duty to find Mr. Benton not
guilty of that offense.

The government has the burden of proving a
defendant guilty beyond a reasonable doubt.  In civil cases,
it is only necessary to prove that a fact is more likely

1    true than not, or, in some cases, that its truth is highly

2    probably.

3              In criminal cases such as this one, the

4    government's proof must be more powerful than that.  It must

5    be beyond a reasonable doubt.  Reasonable doubt, as the name

6    implies, is a doubt based on reason, a doubt for which you

7    have a reason based on evidence or lack of evidence in the

8    case.

9              If, after careful, honest and impartial

10   consideration of all the evidence, you cannot say that you

11   are firmly convinced of Mr. Benton's guilt, then you have a

12   reasonable doubt.

13             Reasonable doubt is the kind of doubt that would

14   cause a reasonable person, after careful and thoughtful

15   reflection, to hesitate to act in grave or more important

16   matters in life.  However, it is not an imaginary doubt nor

17   a doubt based on speculation or guesswork; it is a doubt

18   based on reason.  The government is not required to prove

19   guilt beyond all doubt or to a mathematical or scientific

20   certainty.  It's burden is to prove guilt beyond a

21   reasonable doubt.

22             There are two types of evidence from which you may

23   determine what the facts are in this case -- direct evidence

24   and circumstantial evidence.  When a witness, such as an

25   eyewitness, asserts actual knowledge of a fact, that

1    witness's testimony is direct evidence.

2            On the other hand, evidence of facts and

3    circumstances from which reasonable inferences may be drawn

4    is circumstantial evidence.

5            Let me give you an example.  Assume a person

6    looked out a window and saw that snow was following.  If a

7    he later testified in court about what he had seen, his

8    testimony would be direct evidence that snow was falling at

9    the time he saw it happen.  Assume, however, that he looked

10   out a window and saw no snow on the ground and then went to

11   sleep and saw snow on the ground after he woke.  His

12   testimony about what he had seen would be circumstantial

13   evidence that it had snowed while he was asleep.

14           The law says that both direct and circumstantial

15   evidence are acceptable as a means of proving a fact.  The

16   law does not favor one form of evidence over another.  It is

17   for you to decide how much weight to give to any particular

18   evidence, whether it is direct or circumstantial.  You are

19   permitted to give equal weight to both.  Circumstantial

20   evidence does not require a greater degree of certainty than

21   direct evidence.  In reaching a verdict in this case, you

22   should consider all of the evidence presented, both direct

23   and circumstantial.

24           One of the questions you were asked when we were

25   selecting this jury was whether the nature of the charge

1    itself would affect your ability to reach a fair and

2    impartial verdict.  We asked you that question because you

3    must not allow the nature of a charge to affect your

4    verdict.  You must consider only the evidence that has been

5    presented in this case in reaching a fair and impartial

6    verdict.

7           The weight of the evidence is not necessarily

8    determined by the number of witnesses testifying for each

9    side.  Rather, you should consider all the facts and

10   circumstances in evidence to determine which of the

11   witnesses you believe.  You might find that the testimony of

12   a smaller number of witnesses on one side is more believable

13   than the testimony of a greater number of witnesses on the

14   other side, or you might find the opposite.

15          The lawyers in this case sometimes objected when

16   the other side asked a question, made an argument or offered

17   evidence that the objecting lawyer believed was not proper.

18   You must not hold such objections against the lawyer who

19   made them or the party she or he represents.  It is the

20   lawyer's responsibility to object to evidence that they

21   believe is not admissible.

22          If, during the course of the trial, I sustained an

23   objection to a lawyer's question, you should ignore the

24   question, and you must not speculate as to what the answer

25   would have been.  If, after a witness answered a question, I

1    ruled that the answer should be stricken, you should ignore

2    both the question and the answer, and they should play no

3    part in your deliberations.

4         In determining whether the government has proved

5    the charges against the defendant beyond a reasonable doubt,

6    you must consider and weigh the testimony of all the

7    witnesses who have testified before you.  You are the sole

8    judge of the credibility of the witnesses.  You alone

9    determine whether to believe any witness and the extent to

10   which a witness should be believed.

11        Judging a witness's credibility means evaluating

12   whether the witness has testified truthfully and also

13   whether the witness accurately observed, recalled, and

14   described the matters about which the witness testified.

15        You may consider anything that in your judgment

16   affects the credibility of any witness.  For example, you

17   may consider the demeanor and the behavior of the witness on

18   the witness stand, the witness's manner of testifying,

19   whether the witness impresses you as a truthful person,

20   whether the witness impresses you as having an inaccurate

21   memory and recollection, whether the witness has any motive

22   for not telling the truth, whether the witness had a full

23   opportunity to observe the matters about which he or she has

24   testified, whether the witness has any interest in the

25   outcome of this case or friendship or hostility toward other

1     people concerned with this case.

2          In evaluating the accuracy of a witness's memory,

3     you may consider the circumstances surrounding the event,

4     including any circumstances that would impair or improve the

5     witness's ability to remember the event, the time that

6     elapsed between the event and any later recollections of the

7     event, and the circumstances under which the witness was

8     asked to recall details of the event.

9          Inconsistencies or discrepancies in the testimony

10    of a witness or between the testimony of different witnesses

11    may or may not cause you to discredit such testimony.  Two

12    or more persons witnessing an incident or transaction may

13    see or hear it differently.  An innocent misrecollection,

14    like failure of recollection, is not an uncommon experience.

15    In weighing the effect of the inconsistency or discrepancy,

16    always consider whether it pertains to a matter of

17    importance or an unimportant detail and whether the

18    inconsistency or discrepancy results from innocent error or

19    intentional falsehood.

20         You may consider the reasonableness or

21    unreasonableness, the probability or improbability of the

22    testimony of a witness in determining whether to accept it

23    as true and accurate.  You may consider whether the witness

24    has been contradicted or supported by other credible

25    evidence.

1          If you believe that any witness has shown him or

2    herself to be biased or prejudiced for or against either

3    side in this trial, you may consider and determine whether

4    such bias or prejudice has colored the testimony of the

5    witness so as to affect the desire and capability of that

6    witness to tell the truth.

7          You should give the testimony of each witness such

8    weight as in your judgment it is fairly entitled to receive.

9          A law enforcement officer's testimony should be

10   evaluated by you just as any other evidence in the case.  In

11   evaluating the officer's credibility, you should use the

12   same guidelines that you apply to the testimony of any

13   witness.  In no event should you give either greater or

14   lesser weight to the testimony of any witness merely because

15   she is a law enforcement officer.

16         Every defendant in a criminal case has an absolute

17   right not to testify.  Mr. Benton has chosen to exercise his

18   right.  You must not hold this decision against him and it

19   would be improper for you to speculate as to the reason or

20   reasons for his decision.  You must not assume the defendant

21   is guilty because he chose not to testify.

22         You have heard evidence that Mr. Benton made

23   statements and explanations of his actions that may have

24   been false or inconsistent.  It is up to you to determine

25   whether he made the statements and whether they were, in

1    fact, false or inconsistent.

2         If you find he did make such statements and that

3    they were false or inconsistent, you may consider such

4    evidence as tending to show his feelings of guilt, which you

5    may, in turn, consider as tending to show actual guilt.  On

6    the other hand, you may also consider that he may have given

7    such statements for reasons unrelated to his case or

8    consistent with his innocence.

9         If you find that Mr. Benton made a false or

10   inconsistent statement in explanation of his actions, you

11   should give the testimony as much weight as in your judgment

12   it deserves.

13        You have heard evidence that Mr. Benton was

14   previously convicted of conspiracy to commit against the

15   United States, causing false records, causing false campaign

16   expenditure reports and false statements seen as detailed in

17   the Government's Exhibit 30.  It is up to you to decide

18   whether to accept that evidence.

19        If you find that Mr. Benton committed the offenses

20   as detailed in Government's Exhibit 30, you may use this

21   evidence only for the limited purposes of deciding whether,

22   one, the circumstances of the other crimes or charged

23   offenses are so similar that it is likely that the person

24   who committed the offenses as detailed in Government's

25   Exhibit 30 also committed the offenses as charged in the

1    indictment, or the government has proved beyond a reasonable

2    doubt that Mr. Benton acted knowingly and on purpose and

3    willfully and not by mistake or accident or in good faith.

4         If you conclude that the offenses described in

5    Government's Exhibit 30 are so similar to the charged

6    offense or offenses that it is likely that the same person

7    committed both of them, you may use this evidence in

8    determining whether the government has proved beyond a

9    reasonable doubt that Mr. Benton is the same person who

10   committed the crimes as charged in the indictment.

11        If you find that Mr. Benton committed the offenses

12   as detailed in Government's Exhibit 30, you may also use

13   this evidence for the limited purpose of deciding and

14   determining whether the government has proved beyond a

15   reasonable doubt that Mr. Benton acted knowingly and on

16   purpose and willfully and not by mistake or accident or in

17   good faith.

18        You may not use this evidence for any other

19   purpose.  Mr. Benton is only on trial for the crimes

20   charged.

21        Mr. Benton is not charged in this case with any

22   offenses relating to the offenses detailed in Government's

23   Exhibit 30, and you may not use this evidence to conclude

24   that he has a bad character or that Mr. Benton has a

25   criminal personality.  The law does not allow you to convict

1      Mr. Benton simply because you believe he may have done bad

2      things not specifically charged as crimes in this case.

3             And I told you something slightly different

4      earlier today.  I want you to follow what I just told you

5      now and to the extent it conflicts what you heard me say

6      earlier.

7             During the course of this trial, a number of

8      exhibits were admitted in evidence.  Sometimes only portion

9      of an exhibit were admitted, such as portions of a longer

10     video, a document with some words or pictures blacked out or

11     otherwise removed, or a video played without audio.  There

12     are a variety of reasons why only a portion of an exhibit is

13     admitted, including that other portions are inadmissible or

14     implicated an individual's privacy.

15            As you examine the exhibits and you see or hear

16     portions where there appear to be omissions, you should

17     consider only the portions that were admitted.  You should

18     not guess as to what has been taken out or why, and you

19     should not hold it against either party.  You are to decide

20     the facts only from the evidence that is before you.

21            The Federal Election Campaign Act, which I'll

22     simply refer to as the Election Act, imposes reporting

23     requirements on the election campaigns and affiliated

24     political committees for the candidates for federal office,

25     including the office of the President of the United States

```
 1    and offices of members of the United States House of
 2    Representatives and United States Senate.  The Election Act
 3    is administered by the Federal Election Commission, also
 4    referred to as the FEC, which is a department or agency
 5    within the Executive Branch of the United States government.
 6            Under the Election Act, political committees are
 7    required to file periodic reports of receipts and
 8    disbursements with the FEC identifying, among other things,
 9    the name of each person who made a contribution to the
10    committee during the reporting period whose contribution or
11    contributions had an aggregate amount or value of more than
12    $200, together with the date and the amount of the
13    contribution.
14            The Election Act restricts the sources of money
15    that may be contributed to a federal candidate or a
16    political committee as follows:
17            First, the Election Act prohibits a foreign
18    national from making a contribution, either directly or
19    indirectly, and prohibits any person from soliciting a
20    contribution from a foreign national.
21            Two, the Election Act prohibits a person from
22    permitting his or her name to be used to effect a
23    contribution using someone else's funds.
24            The term "contribution" is defined under the
25    Election Act as any gift, loan or deposit of money or
```

JURY INSTRUCTIONS

 1    anything of value made by any person for the purpose of
 2    influencing any election for federal office.
 3         The defendant is charged in Count 1 with a
 4    conspiracy that had three unlawful objects.  The objects of
 5    a conspiracy are the illegal goal or goals the
 6    co-conspirators agree upon or hope to achieve.
 7         The first alleged unlawful object was to solicit a
 8    foreign national contribution and/or cause a foreign
 9    national, directly or indirectly, to make foreign national
10    contributions in a United States election.
11         The second alleged unlawful object was to effect
12    political contributions in the name of a person other than
13    the true contributor.
14         The third alleged unlawful object was to cause
15    false entries in a record that impeded, obstructed, or
16    influenced the proper operations of the FEC.
17         The government is not required to prove that any
18    object was achieved, nor must the government prove that --
19    all the objects or purposes of the alleged conspiracy.
20    Proof beyond a reasonable doubt on one object or purpose is
21    enough, but in order to return a guilty verdict, all of you
22    must agree that the same one has been proved.
23         I will explain each of the criminal offense
24    acts -- I will explain each of the criminal offenses
25    associated with the objects after I instruct you on the

1    crime of conspiracy.

2         As I already stated, Count 1 charges the defendant

3    with conspiracy.  The elements of conspiracy, each of which

4    the government must prove beyond a reasonable doubt, are

5    that:

6         1, from in or about September 2016, to at least

7    July 2017, an agreement existed between two or more people

8    to commit the crime of soliciting a foreign national

9    contribution and/or causing a foreign national, directly or

10   indirectly, to make a foreign national contribution in a

11   United States election, and/or to effect political

12   contributions in the name of a person other than the true

13   contributor, and/or causing a false entry in a record that

14   impeded, obstructed or influenced the proper operations of

15   the FEC.

16        This does not have to be a formal agreement or

17   plan in which everyone involved sat down together and worked

18   out the details.  On the other hand, merely because people

19   get together and talk about common interests or doing

20   similar things does not necessarily show that an agreement

21   exists to commit a crime.

22        It is enough that the government proves beyond a

23   reasonable doubt that there was a common understanding among

24   those who were involved to commit the criminal object or

25   objects.

 1          So, the first thing that must be shown is the

 2     existence of an agreement; second, the defendant

 3     intentionally joined that agreement.  It is not necessary to

 4     find he agreed to all the details of the crime or that he

 5     knew the identity of all the other people the government has

 6     claimed were participating in the agreement.  A person may

 7     become a member of a conspiracy even if that person agrees

 8     to play only a minor part, as long as that person

 9     understands the unlawful nature of the plan and voluntarily

10     and intentionally joins in it with the intent to advance or

11     further the unlawful object of the conspiracy.

12          But mere presence at the scene of the agreement or

13     of the crime or merely being with the other participants

14     does not show that the defendant knowingly joined in the

15     agreement.  Also, unknowingly acting in a way that helps the

16     participants, or merely knowing about the agreement itself,

17     without more does not make the defendant part of the

18     conspiracy.  So the second part that must be shown is that

19     the defendant was part of the conspiracy.

20          Third, one of the people involved in the

21     conspiracy did something for the purpose of carrying out the

22     conspiracy.  This something is referred to as an overt act.

23     The charged overt acts are described in the indictment in

24     paragraphs 27 to 48.5.  The government need not prove that

25     all of these overt acts were taken, but in order to find the

defendant guilty, you must all agree on at least one overt

act that was done.

A conspiracy can be proved indirectly by facts and

circumstances that lead to a conclusion that a conspiracy

existed.  The government must prove such facts and

circumstances existed and that they lead to the conclusion

that a conspiracy existed.

In determining whether a conspiracy between two or

more persons existed and whether the defendant was one of

its members, you may consider the acts and statements of any

other members of the conspiracy as evidence against the

defendant, whether done in or out of his presence while the

conspiracy existed.

When persons enter into an agreement to commit a

crime, they become agents for each other so that everything

which is said or done by one of them in furtherance of that

purpose is deemed to be the statement of all who have joined

in that conspiracy and is evidence against all of the

co-conspirators.

However, statements of any conspirator which are

made before its existence or after its termination may be

considered as evidence only against the person making such

statements.  In summary, a conspiracy is a kind of

partnership in crime.

For the defendant to be convicted of the crime of

1    conspiracy, the government must prove three things beyond a

2    reasonable doubt.

3        First, that during the charged period there was an

4    agreement to solicit a foreign national contribution and/or

5    cause a foreign national, directly or indirectly, to make a

6    foreign national contribution in a United States election,

7    and/or there was an agreement to effect political

8    contributions in the name of a person other than the true

9    contributor, and/or there was an agreement causing the

10   falsification of records;

11       Second, that the defendant intentionally joined in

12   that agreement;

13       And, third, that one of the people involved in the

14   conspiracy did one of the overt acts charged.

15       As mentioned above, the defendant is charged in

16   Count 1 with conspiring to commit three unlawful objects.

17   The first object is soliciting and causing a foreign

18   national contribution.  In Count 2, the defendant is also

19   charged with this offense substantively.  It is a crime for

20   a foreign national to make contributions to a federal,

21   state, or local election.

22       The elements of the crime of soliciting or causing

23   a foreign national contribution are that:

24       1, a person solicited a contribution of money or

25   other thing of value from a foreign national or caused a

1    foreign national, directly or indirectly, to make a

2    contribution;

3    2, the contribution was in connection with a

4    federal election or to a committee of a political party;

5    3, the defendant acted knowingly and willfully;

6    And, 4, the aggregate amount of the foreign

7    contribution equalled $25,000 or more during the calendar

8    year of 2016.

9    A foreign national is an individual who is not a

10    citizen of the United States, foreign national of the United

11    States and who is not lawfully admitted for permanent

12    residence in the United States.

13    An act is done knowingly if the defendant is aware

14    of the act and does not act through ignorance, mistake or

15    accident.  You may consider evidence of the defendant's

16    words, acts or omissions, along with all the other evidence,

17    in deciding whether the defendant acted knowingly.

18    The word "knowingly" means that the act was

19    committed voluntary and purposefully with the intent to do

20    something that the law forbids, that is, with a bad purpose

21    to disobey or disregard the law.

22    While a person must have acted with the intent to

23    do something the law forbids before you find that the person

24    acted willfully, the person need not be aware of the

25    specific law or rule that his conduct may be violating.

JURY INSTRUCTIONS

1    The term "contribution" includes any deposit of
2    money, gift, loan or advance made by any person for the
3    purpose of influencing any election for federal office.
4    Federal office means the office of President, Vice
5    President, or a member of the United States House of
6    Representatives or the United States Senate.
7        "To solicit" or the term "solicitation" means to
8    ask, request, or recommend, explicitly or implicitly, that
9    another person make a contribution, donation, transfer of
10   funds, or otherwise provide anything of value.  A
11   solicitation is an oral or written communication that,
12   construed as reasonably understood in the context in which
13   it is made, contains a clear message asking, requesting, or
14   recommending that another person make a contribution,
15   donation, transfer of funds or otherwise provide anything of
16   value.
17       A solicitation must be made directly or
18   indirectly.  The mere solicitation or requesting of a
19   contribution is just as much a violation of the statute as
20   the actual making or receipt of a contribution.  It is not
21   necessary for the solicitation to actually succeed or that a
22   contribution was actually made.
23       While the amount of the contributions together
24   must be equal to or exceed $25,000 in the calendar year you
25   are considering, which is 2016, you need not determine the

1    precise amount of the contributions involved.

2            The defendant may also be guilty of the crime

3    charged in the indictment if he caused a foreign national,

4    directly or indirectly, to make a contribution.  You may

5    find the Defendant guilty of the crime charged in the

6    indictment without finding that he personally committed each

7    of the acts constituting the offense or was personally

8    present at the commission of the offense.

9            A defendant is responsible for an act which he

10   lawfully causes to be done if the act would be criminal if

11   performed by him directly or by another.

12           To cause an act to be done means to bring it

13   about.

14           You may convict the defendant of the offense

15   charged if you find that the government has proved beyond a

16   reasonable doubt each element of the offense and that the

17   defendant willfully caused such an act to be done with the

18   intent to commit the crime.

19           As I mentioned before, the defendant is charged in

20   Count 1 with conspiring to commit three unlawful objects.

21   The second object charges the defendant with the crime of

22   effecting political contributions in the name of a person

23   other than the true contributor, also called a conduit

24   contribution.  In Count 3, the defendant is also charged

25   with this crime substantively.

JURY INSTRUCTIONS

1    It is a crime for someone to permit the use of his

2    or her name to effect a federal campaign contribution of

3    another.  The elements of the crime of effecting a conduit

4    contribution are that:  1, the defendant allowed his name to

5    be used to effect a contribution;

6    2, the defendant was not the true source of the

7    contribution;

8    3, the contribution was made to a candidate or

9    campaign for federal office or a federal political

10   committee;

11   4, the defendant acted knowingly and willfully;

12   5, the aggregate amount of the contributions

13   equaled $25,000 or more in the calendar year 2016.

14   An act is done knowingly if the defendant is aware

15   of the act and does not act through ignorance, mistake or

16   accident.  You may consider evidence of the defendant's

17   words, acts or omissions, along with all the other evidence,

18   in deciding whether the defendant acted knowingly.

19   And the word "knowingly" means that the act was

20   committed voluntarily and purposefully with the intent to do

21   something the law forbids, that is, with the bad purpose to

22   disobey or disregard the law.

23   MS. PARIKH:  I think you just said -- I think you

24   said "knowingly," I believe, instead of "willfully" for that

25   previous paragraph.

1          THE COURT:  If I did say "knowingly," I meant

2    willfully.

3          The word "willfully" means the act was committed

4    voluntarily and purposefully with the intent to do something

5    the law forbids, that is, with the bad purpose to disobey or

6    disregard the law.

7          While a person must have acted with the intent to

8    do something the law forbids before you can find that the

9    person acted willfully, the person need not be aware of the

10   specific law or rule that his conduct may be violating.

11         The term "effect" means to bring about or to make

12   happen.

13         Additionally, as I have already told you, the term

14   "contribution" means any deposit of money, gift, loan or

15   advance made by any person for the purpose of influencing

16   any election for federal office.

17         Federal office means the office of President, Vice

18   President or of a member of the United States House of

19   Representatives or the United States Senate.

20         While the amount of the contributions together

21   must be equal to or exceed $25,000 in the calendar year you

22   are considering, again 2016, you need not determine the

23   precise amount of contributions involved.

24         It does not matter whether the true source of the

25   funds provided an advancement or a reimbursement of funds

1       for the contribution.

2               As I mentioned before, the defendant is charged in

3       Count 1 with conspiring to commit three unlawful objects.

4       The third object charges the defendant with the crime of

5       causing the falsification of an entry in a record.  In

6       Counts 4, 5, and 6, the defendant is also charged with this

7       crime substantively.

8               The elements of falsification of federal record,

9       each of which the government must prove beyond a reasonable

10      doubt, are:

11              1, the defendant knowingly concealed, covered up,

12      falsified, or made a false entry in a record or document or

13      caused another to do so;

14              2, the defendant acted with the intent to impede,

15      obstruct, or influence the investigation or proper

16      administration of a matter that he either knew or

17      contemplated;

18              And, 3, the matter was within the jurisdiction of

19      the Federal Election Commission, which is an agency or

20      department of the United States.

21              There is no requirement that the matter or

22      investigation have been pending or imminent at the time of

23      the instruction, but only that the acts were taken in

24      relation to or in contemplation of any such matter or

25      investigation.

 1          The government does not have to prove that the

 2     falsifying of the record or document would naturally or

 3     probably result in obstruction.

 4          The government is not required to prove that the

 5     defendant specifically knew the investigation or proper

 6     administration of the matter was within the jurisdiction of

 7     a department or agency of the United States.  In other

 8     words, you need not find the Defendant knew he was

 9     obstructing, impeding or influencing an investigation or the

10     proper administration of a matter that was federal in

11     nature, or that the statements were made directly to, or

12     even received by, the United States government.

13          An act is done knowingly if the defendant is aware

14     of the act and does not act through ignorance, mistake or

15     accident.  You may consider evidence of the defendant's

16     words, acts, or omissions, along with all the other

17     evidence, in deciding whether the defendant acted knowingly.

18          A defendant does not have to personally conceal an

19     entry, cover up an entry, falsify an entry or make false

20     entry in a record or document.  You may find the Defendant

21     guilty of the crime charged in the indictment without

22     finding that he personally committed each of the acts

23     constituting the offense or was personally present at the

24     commission of the crime.

25          A defendant is not responsible for an act which he

1    willfully causes to be done if the act would be criminal if

2    performed by him directly or by another.  To cause an act to

3    be done means to bring it about.  You may convict the

4    defendant of the charged offense if you find that the

5    government has proved beyond a reasonable doubt each element

6    of the offense and that the defendant willfully caused such

7    an act to be done with the intent to commit the crime.

8            A conspiracy is a kind of partnership in crime and

9    its members may be responsible for each other's actions.  A

10   defendant is responsible for an offense committed by another

11   member of the conspiracy if the defendant was a member of

12   the conspiracy when the offense was committed and if the

13   offense was committed in furtherance of or as a natural

14   consequence of the conspiracy.

15           In order to find Mr. Benton guilty of soliciting

16   or causing a foreign national contribution, effecting a

17   conduit contribution, and/or causing false statements in

18   records, under this theory you must find beyond a reasonable

19   doubt that:

20           1, there was a conspiracy to solicit or cause a

21   foreign national contribution of $25,000 or more, effect a

22   conduit contribution of $25,000 or more, and/or cause false

23   entries in records;

24           2, the offense of soliciting or causing a foreign

25   national contribution of $25,000 or more, effecting a

1    conduit contribution of $25,000 or more, and/or causing

2    false entries in records, was committed by a co-conspirator

3    of Jesse R. Benton;

4         3, Mr. Benton was a member of the conspiracy to

5    solicit or cause a foreign national contribution for $25,000

6    or more, effect a conduit contribution of $25,000 or more,

7    and/or cause false entries in records;

8         And, 4, the offense was committed during the

9    existence of the conspiracy;

10        5, the offense was committed in furtherance of the

11   conspiracy;

12        And, 6, the offense was a reasonably foreseeable

13   consequence of the conspiracy.

14        It is not necessary to find that the crime was

15   intended as part of the original plan, only that it was a

16   foreseeable consequence of the original plan.

17        You may find Mr. Benton guilty of the crime

18   charged in the indictment without finding that he personally

19   committed each of the actions constituting the offense or

20   was personally present at the commission of the offense.  A

21   defendant is responsible for an act which he willfully

22   causes to be done if the act would be criminal if performed

23   by him directly or by another.

24        To cause an act to be done means to bring it

25   about.

1          You may convict Mr. Benton of the offense charged

2     if you find that the government has proven beyond a

3     reasonable doubt each element of the offense and that

4     Mr. Benton willfully caused such an act to be done with the

5     intent to commit the crime.

6          Someone's knowledge and intent ordinarily cannot

7     be proved directly because there is no way of knowing what a

8     person is actually thinking, but you may infer someone's

9     knowledge and intent from the surrounding circumstances.

10    You may consider any statements made or acts done by

11    Mr. Benton and all the other facts and circumstances

12    received in evidence which indicate his intent or knowledge.

13         You may infer, but are not required to infer, that

14    a person intends the natural and probable consequences of

15    the acts he intentionally did or did not do.

16         It is entirely up to you, however, to decide what

17    facts to find from the evidence received during this trial.

18    You should consider all the circumstances in evidence that

19    you think are relevant in determining whether the government

20    has proved beyond a reasonable doubt that Mr. Benton acted

21    with the necessary state of mind.

22         Certain offenses charged in the indictment require

23    proof that Mr. Benton acted willfully as just described.

24    For those counts if you find that Mr. Benton acted in good

25    faith, that would be a complete defense to those charges

1    because good faith would be inconsistent with acting

2    willfully.

3            A person acts in good faith when he or she has an

4    honestly held belief, opinion, or understanding that his or

5    her acts were not unlawful, even though that belief,

6    opinion, or understanding turns out to be inaccurate or

7    incorrect.

8            Thus, in this case, if Mr. Benton made an honest

9    mistake or had an honest misunderstanding about the

10   lawfulness of his conduct, then he did not act willfully.

11           It is the government's burden to prove beyond a

12   reasonable doubt that Mr. Benton did not act in good faith.

13   In deciding whether the government proved the defendant

14   acted willfully or, instead, whether he acted in good faith,

15   you should consider all the evidence presented in the case

16   that may bear on the defendant's state of mind and knowledge

17   of federal campaign finance law or lack thereof.

18           If you find from the evidence that Mr. Benton

19   acted in good faith as I have defined it, or if you find for

20   any other reason that the government has not proved beyond a

21   reasonable doubt that he acted willfully, you must find

22   Mr. Benton guilty of Counts 1, 2 and 3.

23           You have heard evidence that a defendant received

24   advice from a lawyer, David Warrington, Esquire, and you may

25   consider that evidence in deciding whether the defendant

1    acted willfully and with knowledge.  The mere fact the

2    defendant may have received legal advice does not in itself

3    necessarily constitute a complete defense.  Instead, you

4    must ask yourself whether the defendant, honestly and in

5    good faith, sought the advice of a competent lawyer as to

6    what he may have lawfully -- as to what he may lawfully do,

7    whether he fully and honestly laid all the facts before his

8    lawyer and whether in good faith he honestly followed such

9    advice, relying on it and believing it to be correct.

10        In short, you should consider whether in seeking

11   and obtaining advice from a lawyer the defendant acted -- or

12   intended that his acts should be lawful.  If he did so, it

13   is the law that the defendant cannot be convicted of a crime

14   that involves willful and unlawful intent, even if such

15   advice were an inaccurate construction of the law.

16        On the other hand, no man can willfully and

17   knowingly violate the law and excuse himself from the

18   consequences of his conduct by pleading that he followed the

19   advice of his lawyer.

20        Whether the defendant acted in good faith for the

21   purpose of seeking guidance as to the specific acts in this

22   case, and whether he made a full and complete report to his

23   lawyer, and whether he acted substantially in compliance or

24   in accordance with the advice he received, are questions for

25   you to determine.

1           In this case, the defendant's theory of the case

2    is that the alleged contribution in this case was made not

3    for the purpose of influencing any election for federal

4    office, but solely for Mr. Vasilenko to receive a photograph

5    with then-candidate-for-president Donald Trump for

6    Mr. Vasilenko's own personal business reasons.

7           If you find that the alleged contribution in this

8    case was not made for the purpose of influencing any

9    election for federal office, then you must find the

10   Defendant not guilty as to Counts 1, 2 and 3.

11          The indictment charges that the offense -- various

12   offenses were committed on or about certain dates.  The

13   proof need not establish with certainty the exact date of

14   the alleged offense.  It is sufficient if the evidence in

15   this case establishes beyond a reasonable doubt that the

16   offense was committed on the date reasonably near the date

17   alleged.

18          A verdict must represent the considered judgment

19   of each juror, and in order to return a verdict, each juror

20   must agree on the verdict.  In other words, your verdict

21   must be unanimous.

22          Each count of the indictment charges a separate

23   offense.  You should consider each offense and the evidence,

24   which applies to it separately, and you should return

25   separate verdicts as to each count.  The fact that you may

1    find the Defendant guilty or not guilty of any one count of

2    the indictment should not influence your verdict with

3    respect to any other count of the indictment.

4          You will be provided with a verdict form for use

5    when you have concluded your deliberations.  The form is not

6    evidence in this case and nothing in it should be taken to

7    suggest or convey any opinion by me as to what the verdict

8    should be.  Nothing in the form replaces the instructions of

9    law I have already given you, and nothing in it replaces or

10   modifies the instructions about the elements which the

11   government must prove beyond a reasonable doubt.  The form

12   is meant only to assist you in recording your verdict.

13         The question of possible punishment of the

14   Defendant in the event of a conviction is not any concern of

15   yours and should not enter into or influence your

16   deliberations in any way.  The duty of imposing a sentence

17   in the event of a conviction rests exclusively with me.

18   Your verdict should be based solely on the evidence in this

19   case, and you should not consider the matter of punishment

20   at all.

21         I would like to remind you that in some cases,

22   although not necessarily this one, there may be reports in

23   the newspaper or on the radio, Internet, or television

24   concerning this case.  If there should be such media

25   coverage in this case, you may be tempted to read, listen to

1    or watch it.  You must not read, listen to or watch such

2    reports because you must decide this case solely on the

3    evidence presented in this courtroom.

4         If any publicity about this trial inadvertently

5    comes to your attention, do not discuss it with other jurors

6    or anyone else.  Just let me or my clerk know as soon after

7    it happens as you can, and I will then briefly discuss it

8    with you.

9         As you retire to the jury room to deliberate, I

10   also wish to remind you of an instruction I gave you at the

11   beginning of the trial.  During deliberations you may not

12   communicate with anyone not on the jury about this case.

13   This includes any electronic communication such as e-mail or

14   text or any blogging about the case.

15        In addition, you may not conduct any independent

16   investigation during deliberations.  This means you may not

17   conduct any research in person or electronically via the

18   Internet or any other way.

19        All right, ladies and gentlemen.  That is the bulk

20   of the instructions you'll hear from me.  It's now past

21   4:00, so rather than doing the closings, what I'll ask you

22   to do is come back tomorrow at 9:30, and we'll start off

23   hearing from the attorneys and then, finally, you all will

24   begin your deliberations.

25        So, for the last time, I'll remind you, don't

1    discuss this case with anyone.  Remember the instructions I

2    just gave you about research and communications with folks.

3    Have a good evening.  I'll see you back at 9:30.  We all

4    need to be back at 9:30 for us to start on time.  Thank you.

5            (Whereupon, the jury exited the courtroom at

6    4:07 p.m. and the following proceedings were had:)

7            THE COURT:  All right.  I don't believe we have a

8    verdict form yet, so let me ask if, since you all have

9    unexpected time before you leave, I want the four of you to

10    sit down and try to hammer out the verdict form.  If you

11    disagree, you can e-mail me your various versions or

12    whatever and let me know tonight so that we can meet at

13    9 o'clock.  Otherwise, if you all agree on it, I'll see you

14    at 9:30 tomorrow.

15            Also, I noticed, page 48, the "on or about," we

16    didn't get a date there.  Maybe you can just let me know

17    what dates you think should be in there for the version that

18    goes back.

19            All right.  Yes, sir, Mr. Stolarz.

20            MR. STOLARZ:  And I didn't want to interrupt as

21    you were going.  On the good faith defense, in the final

22    paragraph you said, You must find Mr. Benton guilty, instead

23    of not guilty, but -- I mean, they have it in writing,

24    obviously.  A lot of them will rely on this.  I'll probably

25    say it myself in the closing.  I don't know if the

1    government had the same -- yes, they did.

2              So, yeah, we wanted to make sure to read it again,

3    or whatever Your Honor thinks.  Just want to make sure that

4    was put on the record.

5              THE COURT:  Thanks.  I don't think I'll read it

6    again, but you can.  Hopefully the "not" was obvious there.

7    Feel free to reiterate that, and it certainly will be

8    correct on the version that goes back.  Thanks.

9              MR. STOLARZ:  Thank you.

10             THE COURT:  All right.  Ms. Parikh, anything else

11   for us to discuss today?

12             MS. PARIKH:  No, Your Honor.  Thank you.

13             THE COURT:  All right.  See you all tomorrow.

14                  (Proceedings concluded 4:09 p.m.)

15

16                   *     *     *     *     *

17                        **CERTIFICATE**

18

19        I, MARIA V. WEINBECK, RMR, FCRR, certify that the

20   foregoing is a true and accurate transcript of my

21   stenographic notes, and is a full, true, and complete

22   transcript from the afternoon session proceedings produced

23   to the best of my ability.

24

25             Certified by:  _s/ Maria V. Weinbeck_
                              Maria V. Weinbeck, RMR-FCRR

**$**

**$12,000** [2] - 7:18, 7:24
**$200** [1] - 69:10
**$25,000** [10] - 75:5, 76:22, 78:11, 79:19, 82:19, 82:20, 82:23, 82:24, 83:3, 83:4

**1**

**1** [15] - 52:15, 53:10, 53:15, 70:1, 70:25, 71:4, 74:14, 74:22, 77:18, 78:2, 80:1, 80:9, 82:18, 85:20, 87:8
**1.202** [1] - 48:6
**10** [1] - 10:22
**1000** [1] - 2:4
**1005** [1] - 2:8
**10:35** [1] - 15:17
**11:00** [2] - 52:23, 52:24
**12** [3] - 40:23, 41:13, 41:23
**12-plus** [1] - 10:22
**13** [9] - 14:18, 14:22, 14:24, 15:1, 19:21, 31:8, 33:19, 34:7, 41:23
**1301** [1] - 1:15
**1331** [1] - 1:18
**14** [5] - 1:6, 15:2, 31:11, 41:5, 41:13
**15** [3] - 18:24, 31:18, 32:1
**15th** [1] - 15:17
**16** [1] - 18:24
**1974** [6] - 29:12, 29:16, 30:11, 30:15, 30:19, 31:2
**1:34** [1] - 1:7
**1:50** [1] - 3:2
**1:53** [1] - 3:8

**2**

**2** [13] - 7:18, 28:19, 52:15, 52:17, 53:10, 53:16, 74:16, 75:1, 78:4, 80:12, 82:22, 85:20, 87:8
**2.10** [1] - 48:22
**2.100** [1] - 48:6
**2.101** [1] - 48:7
**2.102** [1] - 48:7
**2.103** [1] - 48:7
**2.104** [1] - 48:7
**2.105** [1] - 48:7
**2.106** [2] - 48:7, 48:22
**2.107** [1] - 48:22
**2.108** [1] - 48:22
**2.109** [1] - 48:22
**2.111** [1] - 48:22
**2.112** [1] - 48:22
**2.200** [1] - 48:23
**2.207** [1] - 48:23
**2.208** [1] - 48:23
**2.209** [1] - 48:24
**2.210** [2] - 48:25, 50:20
**2.216** [1] - 50:21
**2.217** [1] - 50:23
**2.220** [1] - 50:24
**2.311** [1] - 50:25
**2.321** [2] - 51:14, 51:24
**2.402** [1] - 53:25
**2.405** [1] - 53:25
**2.407** [1] - 53:25
**2.500** [1] - 52:13
**2.501** [3] - 53:25, 54:3, 54:6
**2.502** [2] - 54:4, 54:6
**2.505** [2] - 54:4, 54:6
**2.508** [1] - 54:4
**2.509** [1] - 54:4
**2.511** [2] - 54:4, 54:6
**20001** [1] - 2:4
**20005** [1] - 1:19
**2011** [1] - 40:14
**2012** [2] - 24:20, 24:25
**2016** [18] - 5:24, 8:16, 8:18, 14:9, 14:13, 15:2, 22:11, 24:11, 31:11, 31:18, 32:1, 33:6, 33:12, 71:4, 75:6, 76:23, 78:11, 79:20
**2017** [1] - 71:5
**2018** [2] - 4:13, 4:15
**2020** [1] - 25:20
**2021** [3] - 24:6, 28:13, 28:17
**2022** [3] - 1:6, 28:19, 29:5
**20530** [2] - 1:16, 1:22
**21-00569** [1] - 1:3
**23** [1] - 28:17
**27** [1] - 72:22
**29** [2] - 37:21, 42:22
**2:35** [1] - 35:21
**2nd** [1] - 29:5

**3**

**3** [12] - 1:10, 52:15,
52:17, 53:10, 53:16, 75:3, 77:22, 78:6, 80:16, 83:2, 85:20, 87:8
**3.101** [1] - 53:2
**3.102** [1] - 53:2
**3.103** [1] - 53:25
**30** [9] - 11:12, 54:19, 55:7, 66:15, 66:18, 66:23, 67:3, 67:10, 67:21
**300** [1] - 2:8
**30101** [1] - 42:23
**3:08** [1] - 55:16
**3:15** [1] - 35:16
**3:17** [1] - 55:17
**3:20** [1] - 55:25

**4**

**4** [5] - 52:17, 75:4, 78:9, 80:4, 83:6
**40** [4] - 30:6, 54:20, 55:6, 55:7
**404(b** [1] - 51:20
**40s** [1] - 42:2
**46** [1] - 42:2
**48** [1] - 90:13
**48.5** [1] - 72:22
**4:00** [1] - 89:19
**4:07** [1] - 90:4
**4:09** [1] - 91:12

**5**

**5** [4] - 52:17, 78:10, 80:4, 83:8
**50** [1] - 30:6
**52** [1] - 42:23
**55** [1] - 41:21
**55415** [1] - 2:8
**555** [1] - 1:21

**6**

**6** [3] - 52:17, 80:4, 83:10
**612** [1] - 2:9
**642** [1] - 40:14
**664-5109** [1] - 2:9

**7**

**7.103(A** [1] - 52:20
**76** [1] - 6:1
**799** [1] - 2:3

**8**

**8** [1] - 11:14

**86** [1] - 4:17

**9**

**9** [2] - 28:13, 90:11
**90** [1] - 6:14
**91** [2] - 7:2, 7:14
**9:30** [4] - 89:20, 90:1, 90:2, 90:12
**9th** [2] - 7:14, 7:25

**A**

**a.m** [1] - 15:17
**ability** [4] - 43:15, 61:24, 64:3, 91:23
**able** [2] - 37:2, 47:2
**absolute** [1] - 65:14
**absolutely** [2] - 19:22, 34:23
**accept** [2] - 57:11, 64:20, 66:16
**acceptable** [1] - 61:13
**access** [1] - 37:1
**accident** [7] - 52:1, 52:4, 67:1, 67:14, 75:13, 78:14, 81:13
**accordance** [1] - 86:22
**according** [1] - 12:11
**accuracy** [1] - 63:25
**accurate** [4] - 47:3, 47:16, 64:21, 91:20
**accurately** [1] - 63:11
**accused** [1] - 18:3
**accusing** [1] - 59:3
**achieve** [1] - 70:4
**achieved** [1] - 70:16
**acquit** [1] - 43:17
**acquittal** [1] - 37:21
**act** [32] - 40:2, 45:17, 52:9, 60:13, 72:20, 72:25, 75:11, 75:12, 75:16, 77:7, 77:8, 77:10, 77:15, 78:12, 78:13, 78:17, 79:1, 81:11, 81:12, 81:23, 81:24, 81:25, 82:5, 83:19, 83:20, 83:22, 84:2, 85:8, 85:10
**Act** [8] - 68:19, 68:20, 68:25, 69:4, 69:12, 69:15, 69:19, 69:23
**acted** [24] - 38:8, 66:25, 67:13, 75:3, 75:15, 75:20, 75:22, 78:9, 78:16, 79:5, 79:7, 80:12, 81:15, 84:18, 84:21, 84:22, 85:12, 85:17, 85:19,
85:24, 86:9, 86:18, 86:21
**acting** [2] - 72:13, 84:24
**Action** [1] - 1:3
**action** [1] - 12:8
**actions** [5] - 46:17, 65:21, 66:8, 82:7, 83:17
**acts** [17] - 70:22, 72:21, 72:23, 73:8, 74:12, 75:14, 77:5, 78:15, 80:21, 81:14, 81:20, 84:8, 84:13, 85:1, 85:3, 86:10, 86:19
**actual** [4] - 11:18, 60:23, 66:3, 76:18
**add** [3] - 40:9, 46:24, 53:8
**added** [2] - 42:16, 53:22
**adding** [3] - 46:12, 46:14, 47:11
**addition** [5] - 39:11, 44:6, 46:22, 56:16, 89:13
**additional** [1] - 28:9
**additionally** [1] - 79:11
**address** [1] - 48:5
**addressed** [2] - 40:10, 40:12
**addresses** [3] - 5:15, 5:16, 46:12
**adequate** [1] - 36:7
**administered** [1] - 69:1
**administration** [3] - 80:14, 81:4, 81:8
**admissible** [1] - 62:19
**admit** [1] - 51:2
**admitted** [11] - 6:1, 6:14, 15:1, 57:17, 58:10, 58:12, 68:6, 68:7, 68:11, 68:15, 75:9
**adopted** [1] - 29:13
**advance** [4] - 42:24, 72:8, 75:25, 79:13
**advancement** [1] - 79:23
**advice** [18] - 19:20, 23:18, 28:6, 34:21, 38:12, 39:7, 39:11, 40:5, 53:20, 85:22, 85:25, 86:3, 86:7, 86:9, 86:13, 86:17, 86:22
**advise** [1] - 18:17

**advised** [1] - 24:11
**advisement** [1] - 40:21
**advisory** [1] - 29:23
**advocate** [1] - 20:9
**advocated** [1] - 25:25
**affect** [3] - 61:24, 62:1, 65:3
**affects** [1] - 63:14
**affiliated** [2] - 10:25, 68:21
**afoul** [1] - 18:2
**afternoon** [11] - 3:9, 3:19, 3:20, 9:5, 9:6, 21:19, 21:20, 35:15, 40:24, 41:1, 91:22
**AFTERNOON** [1] - 1:7
**agency** [3] - 69:2, 80:17, 81:5
**Agent** [6] - 3:14, 3:15, 4:19, 7:16, 8:13, 8:23
**agent** [1] - 3:19
**agents** [1] - 73:13
**aggregate** [3] - 69:9, 75:4, 78:10
**agree** [16] - 20:20, 21:10, 29:11, 46:23, 47:15, 49:1, 50:11, 50:25, 51:9, 53:12, 55:10, 70:4, 70:20, 72:24, 87:18, 90:11
**agreed** [2] - 58:15, 72:2
**agreement** [14] - 71:5, 71:14, 71:18, 71:25, 72:1, 72:4, 72:10, 72:13, 72:14, 73:12, 74:2, 74:5, 74:7, 74:10
**agrees** [1] - 72:5
**Akhigbe** [1] - 40:13
**AKHIMH** [1] - 40:13
**Alexandria** [1] - 9:19
**alleged** [8] - 70:5, 70:9, 70:12, 70:17, 86:25, 87:5, 87:12, 87:15
**allow** [2] - 62:1, 67:23
**allowed** [1] - 78:2
**allows** [1] - 39:12
**almost** [1] - 50:18
**alone** [7] - 36:4, 39:20, 40:3, 47:1, 57:17, 57:18, 63:6
**alternate** [4] - 40:22, 41:5, 41:6, 51:24
**amenable** [1] - 55:1
**amendment** [1] - 29:14

**Amendment** [1] - 10:7
**AMERICA** [1] - 1:3
**American** [5] - 8:14, 8:16, 8:17, 30:13, 30:16
**amount** [8] - 69:9, 69:10, 75:4, 76:21, 76:24, 78:10, 79:18, 79:21
**answer** [12] - 15:18, 16:18, 16:25, 17:10, 18:8, 18:9, 19:15, 19:16, 29:2, 62:22, 62:24, 62:25
**answered** [1] - 62:23
**answers** [1] - 15:24
**anyway** [2] - 4:7, 21:1
**apart** [1] - 33:15
**apparent** [1] - 24:9
**appear** [1] - 68:14
**appearance** [1] - 28:16
**APPEARANCES** [1] - 2:1
**aPPEARANCES** [1] - 1:13
**applied** [1] - 39:5
**applies** [2] - 52:15, 57:9, 87:22
**apply** [1] - 65:10
**approach** [5] - 7:5, 13:14, 20:2, 26:17, 35:23
**appropriate** [3] - 37:11, 50:20, 51:8
**approved** [1] - 42:13
**argue** [6] - 39:6, 39:20, 40:3, 44:2, 47:2, 47:14
**arguing** [2] - 38:18, 45:1
**argument** [4] - 38:23, 39:1, 53:3, 62:14
**arguments** [4] - 35:14, 37:17, 56:6, 58:23
**asleep** [1] - 61:11
**asserts** [1] - 60:23
**assist** [2] - 58:24, 88:10
**assisted** [3] - 20:8, 25:22, 27:24
**associate** [1] - 5:12
**associated** [1] - 70:23
**assume** [3] - 61:3, 61:7, 65:18
**assumed** [2] - 27:21, 33:9
**attend** [3] - 17:1, 32:3, 33:12
**attended** [1] - 6:18

**attention** [1] - 89:3
**attorney** [2] - 13:17, 36:8
**ATTORNEY'S** [1] - 1:20
**attorneys** [4] - 35:12, 56:5, 58:5, 89:21
**attract** [2] - 22:25, 23:2
**audio** [1] - 68:9
**Avenue** [1] - 1:15
**avoid** [1] - 41:19
**award** [2] - 16:13, 31:21
**aware** [10] - 4:12, 11:7, 17:24, 25:19, 34:6, 75:11, 75:22, 78:12, 79:7, 81:11

## B

**bad** [6] - 52:8, 67:22, 67:24, 75:18, 78:19, 79:3
**Banes** [1] - 6:23
**bank** [3] - 7:21, 7:23, 51:3
**based** [8] - 3:21, 12:10, 20:6, 60:4, 60:5, 60:15, 60:16, 88:16
**basis** [2] - 7:4, 19:11
**bear** [1] - 85:14
**became** [3] - 24:9, 28:2, 28:10
**become** [4] - 24:9, 34:6, 72:5, 73:13
**BEFORE** [1] - 1:10
**began** [1] - 4:14
**begin** [1] - 89:22
**beginning** [1] - 89:9
**begins** [1] - 52:14
**behalf** [1] - 22:15
**behavior** [1] - 63:15
**belief** [2] - 85:2, 85:3
**believability** [1] - 57:19
**believable** [1] - 62:10
**Benton** [82] - 5:3, 6:18, 6:22, 8:4, 10:18, 10:21, 12:6, 12:7, 12:10, 14:8, 14:14, 15:2, 16:4, 16:11, 17:3, 17:20, 18:2, 19:20, 20:9, 23:11, 24:11, 24:20, 25:4, 25:6, 25:9, 25:11, 25:20, 27:13, 27:22, 28:5, 28:13, 31:5, 31:11, 31:19,

31:25, 32:5, 32:15, 32:17, 32:19, 32:23, 33:8, 33:16, 35:22, 38:5, 39:25, 49:3, 49:22, 49:23, 50:3, 50:13, 53:9, 59:12, 59:16, 59:19, 65:15, 65:20, 66:7, 66:11, 66:17, 66:25, 67:7, 67:9, 67:13, 67:17, 67:19, 67:22, 67:24, 82:13, 83:1, 83:2, 83:15, 83:24, 84:2, 84:9, 84:18, 84:21, 84:22, 85:6, 85:10, 85:16, 85:20, 90:20
**BENTON** [1] - 1:6
**Benton's** [12] - 7:2, 7:15, 7:21, 11:7, 19:19, 20:13, 28:22, 29:6, 32:1, 33:15, 52:3, 60:9
**best** [2] - 43:13, 91:23
**better** [3] - 16:15, 31:23, 54:22
**between** [7] - 17:3, 17:6, 47:6, 64:4, 64:8, 71:5, 73:6
**beyond** [20] - 20:15, 59:10, 59:14, 59:18, 59:22, 60:3, 60:17, 60:18, 63:3, 66:24, 67:6, 67:12, 70:18, 71:2, 71:20, 73:24, 77:13, 80:7, 82:3, 82:16, 83:25, 84:18, 85:9, 85:18, 87:13, 88:9
**bias** [2] - 20:17, 65:2
**biased** [1] - 64:25
**bill** [1] - 22:20
**billed** [1] - 24:14
**bio** [4] - 22:4, 22:6, 22:7, 22:10
**bit** [3] - 35:11, 46:8, 54:14
**blacked** [1] - 68:8
**blogging** [2] - 56:15, 89:12
**blood** [1] - 10:2
**blood-and-guts** [1] - 10:2
**body** [2] - 29:21, 29:22
**bono** [1] - 22:19
**book** [1] - 14:16
**bottom** [1] - 53:9
**Branch** [1] - 69:3
**break** [4] - 35:12, 51:19, 55:14, 56:5
**breaking** [1] - 55:3

**BRIAN** [1] - 2:2
**brief** [1] - 43:14
**briefly** [5] - 8:10, 9:23, 34:2, 51:22, 89:5
**bring** [5] - 3:4, 77:10, 79:9, 82:1, 83:22
**bulk** [1] - 89:17
**bunch** [1] - 30:24
**burden** [5] - 50:9, 59:11, 59:21, 60:18, 85:9
**buried** [2] - 39:2, 39:13
**business** [3] - 43:9, 44:3, 87:4
**butchered** [1] - 51:14
**buttressing** [1] - 50:6
**buy** [14] - 15:6, 15:10, 15:23, 16:12, 16:14, 31:12, 31:20, 31:22, 32:2, 32:19, 32:20, 32:21, 32:22, 49:14
**buying** [2] - 15:20, 33:17
**BY** [22] - 2:6, 3:18, 4:8, 7:12, 8:12, 9:13, 13:1, 13:10, 14:6, 14:25, 18:7, 18:14, 19:5, 19:14, 21:18, 24:5, 27:12, 28:12, 29:4, 30:10, 31:10, 34:4

## C

**Caitlin** [1] - 49:11
**calendar** [4] - 75:5, 76:22, 78:11, 79:19
**campaign** [24] - 10:6, 12:11, 22:11, 22:15, 23:19, 24:21, 24:23, 25:1, 25:4, 25:7, 26:11, 26:15, 26:25, 29:9, 30:1, 30:13, 30:16, 30:17, 30:21, 40:16, 66:13, 77:25, 78:7, 85:15
**Campaign** [1] - 68:19
**campaigns** [4] - 10:5, 22:8, 23:20, 68:21
**candidate** [4] - 15:20, 69:13, 78:6, 87:3
**candidates** [2] - 10:4, 68:22
**cannot** [3] - 60:8, 84:4, 86:11
**capability** [1] - 65:3
**capacities** [2] - 10:25, 20:14
**Capitol** [1] - 4:25

**capturing** [1] - 52:7
**care** [1] - 25:15
**career** [2] - 21:25, 22:1
**careful** [3] - 15:22, 60:7, 60:12
**carrying** [1] - 72:19
**case** [83] - 3:11, 5:1, 7:22, 13:3, 13:22, 18:19, 24:6, 24:8, 26:3, 26:4, 27:14, 27:25, 28:11, 28:16, 29:21, 33:10, 33:16, 34:16, 34:19, 35:9, 35:19, 37:10, 40:16, 41:24, 42:11, 42:17, 42:18, 43:7, 43:13, 43:18, 43:19, 43:22, 43:25, 44:8, 44:12, 45:5, 45:11, 46:4, 46:5, 47:3, 47:12, 47:19, 50:19, 51:21, 53:21, 56:13, 56:16, 57:10, 57:15, 57:23, 58:1, 58:3, 58:11, 59:7, 60:6, 60:21, 61:19, 62:3, 62:13, 63:23, 63:24, 65:8, 65:14, 66:5, 67:19, 67:25, 85:6, 85:13, 86:20, 86:24, 86:25, 87:6, 87:13, 88:4, 88:17, 88:22, 88:23, 88:25, 89:10, 89:12, 89:24
**cases** [7] - 10:15, 41:9, 43:14, 59:22, 59:24, 60:1, 88:19
**caused** [6] - 74:23, 77:1, 77:15, 80:11, 82:4, 84:2
**causes** [3] - 77:8, 81:24, 83:20
**causing** [12] - 66:13, 71:7, 71:11, 74:7, 74:15, 74:20, 80:3, 82:14, 82:15, 82:22, 82:24
**cautious** [1] - 41:18
**certain** [3] - 58:15, 84:20, 87:10
**certainly** [2] - 20:19, 91:5
**certainty** [3] - 60:18, 61:18, 87:11
**CERTIFICATE** [1] - 91:17
**Certified** [1] - 91:25
**certify** [1] - 91:19
**Chaclan** [3] - 36:15,

42:4, 55:21
**chaclan** [1] - 37:5
**chairman** [3] - 12:16, 13:23, 24:20
**chairmen** [1] - 12:9
**challenge** [1] - 43:15
**challenges** [1] - 19:7
**chance** [2] - 48:17, 54:23
**change** [1] - 52:6
**changed** [1] - 29:19
**character** [1] - 67:22
**charge** [2] - 61:23, 62:1
**charged** [26] - 59:16, 66:20, 66:23, 67:3, 67:8, 67:18, 67:19, 67:25, 70:1, 72:21, 74:1, 74:12, 74:13, 74:17, 77:1, 77:3, 77:13, 77:17, 77:22, 79:25, 80:4, 81:19, 82:2, 83:16, 83:24, 84:20
**charges** [7] - 63:3, 70:25, 77:19, 80:2, 84:23, 87:9, 87:20
**check** [3] - 16:14, 31:22, 50:13
**chief** [1] - 4:22
**chose** [1] - 65:19
**chosen** [1] - 65:15
**Christmas** [1] - 34:10
**circuit** [1] - 39:17
**Circuit** [1] - 40:10
**circumstances** [11] - 61:1, 62:8, 64:1, 64:2, 64:5, 66:20, 73:2, 73:4, 84:7, 84:9, 84:16
**circumstantial** [7] - 60:22, 61:2, 61:10, 61:12, 61:16, 61:17, 61:21
**citizen** [6] - 16:12, 16:21, 17:1, 31:20, 32:3, 75:8
**civil** [2] - 10:11, 59:22
**civilian** [1] - 15:23
**claimed** [1] - 72:4
**clarify** [1] - 45:18
**clarifying** [1] - 53:6
**clean** [1] - 37:14
**clear** [6] - 18:25, 19:16, 28:10, 29:9, 30:2, 76:11
**cleared** [1] - 17:20
**clearly** [2] - 42:22, 42:23
**clemency** [1] - 11:17

**CLERK** [1] - 3:6
**clerk** [5] - 42:13, 44:17, 44:19, 44:24, 89:4
**Cleveland** [1] - 22:13
**client** [11] - 18:11, 18:16, 18:17, 18:18, 20:10, 22:22, 23:5, 23:8, 23:11, 23:15, 24:17
**clients** [5] - 22:20, 22:25, 23:2, 23:3, 23:5
**clients'** [1] - 23:8
**closely** [3] - 25:4, 25:6, 25:8
**closing** [12] - 35:14, 54:7, 54:14, 54:18, 54:22, 54:23, 54:24, 55:5, 55:6, 55:22, 56:6, 90:23
**closings** [1] - 89:19
**co** [4] - 52:18, 70:4, 73:17, 82:25
**co-conspirator** [2] - 52:18, 82:25
**co-conspirators** [2] - 70:4, 73:17
**collar** [2] - 9:22, 9:25
**colored** [1] - 65:2
**COLUMBIA** [2] - 1:1, 1:21
**combined** [2] - 52:1, 52:5
**comfortable** [2] - 44:21, 51:16
**commercial** [2] - 9:22, 9:24
**Commission** [5] - 12:9, 12:17, 24:1, 69:1, 80:17
**commission** [3] - 77:6, 81:22, 83:18
**commit** [11] - 66:12, 71:6, 71:19, 71:22, 73:12, 74:14, 77:16, 77:18, 80:1, 82:5, 84:3
**committed** [20] - 66:17, 66:22, 66:23, 67:5, 67:8, 67:9, 75:17, 77:4, 78:18, 79:1, 81:20, 82:8, 82:10, 82:11, 82:25, 83:6, 83:8, 83:17, 87:10, 87:14
**Committee** [1] - 22:12
**committee** [5] - 33:4, 69:8, 69:14, 75:2, 78:8

**committees** [5] - 10:5, 11:4, 11:5, 68:22, 69:4
**common** [2] - 71:17, 71:21
**communicate** [3] - 33:8, 56:12, 89:10
**communicating** [1] - 18:15
**communication** [2] - 76:9, 89:11
**communications** [3] - 56:14, 56:15, 89:25
**companies** [1] - 9:24
**compensation** [1] - 7:15
**competent** [1] - 86:3
**complete** [4] - 84:23, 86:1, 86:20, 91:21
**completely** [2] - 30:5, 39:14
**compliance** [1] - 86:21
**complicated** [1] - 48:16
**comply** [2] - 10:6, 18:18
**conceal** [1] - 81:16
**concealed** [1] - 80:9
**concern** [1] - 88:12
**concerned** [4] - 21:2, 45:11, 47:4, 63:24
**concerning** [3] - 14:9, 14:13, 88:22
**conclude** [2] - 67:2, 67:21
**concluded** [2] - 88:3, 91:12
**conclusion** [4] - 13:18, 19:3, 73:2, 73:4
**conduct** [11] - 38:10, 40:6, 56:16, 56:18, 57:7, 75:23, 79:8, 85:8, 86:16, 89:13, 89:15
**conduit** [9] - 29:16, 30:23, 31:1, 77:21, 78:1, 82:15, 82:20, 82:24, 83:4
**confess** [1] - 49:17
**confinement** [1] - 12:14
**conflicts** [1] - 68:3
**confused** [2] - 30:5, 47:5
**confusing** [2] - 50:2
**connected** [1] - 42:6
**connection** [3] - 23:25, 24:7, 75:1

**connections** [1] - 20:15
**conscientious** [1] - 55:11
**consequence** [3] - 82:12, 83:11, 83:14
**consequences** [2] - 84:12, 86:16
**consider** [37] - 10:22, 23:17, 46:25, 52:8, 56:25, 57:12, 58:9, 58:16, 58:18, 59:3, 59:4, 61:20, 62:2, 62:7, 63:4, 63:13, 63:15, 64:1, 64:14, 64:18, 64:21, 65:1, 66:1, 66:3, 66:4, 68:15, 73:8, 75:13, 78:14, 81:13, 84:8, 84:16, 85:13, 85:23, 86:8, 87:21, 88:17
**consideration** [2] - 57:23, 60:8
**considered** [3] - 24:17, 73:20, 87:16
**considering** [3] - 20:17, 76:23, 79:20
**consistent** [2] - 51:20, 66:6
**consists** [1] - 58:11
**conspiracy** [33] - 52:16, 66:12, 70:2, 70:3, 70:17, 70:24, 71:1, 72:5, 72:9, 72:16, 72:17, 72:19, 72:20, 73:1, 73:2, 73:5, 73:6, 73:9, 73:11, 73:16, 73:21, 73:24, 74:12, 82:6, 82:9, 82:10, 82:12, 82:18, 83:2, 83:7, 83:9, 83:11
**conspirator** [3] - 52:18, 73:18, 82:25
**conspirators** [2] - 70:4, 73:17
**conspiring** [3] - 74:14, 77:18, 80:1
**constitute** [1] - 86:1
**constituting** [3] - 77:5, 81:21, 83:17
**construction** [1] - 86:13
**construed** [1] - 76:10
**consultant** [1] - 49:11
**consultants** [1] - 10:5
**CONT'D** [1] - 2:1
**contacted** [1] - 40:7
**contained** [1] - 38:22
**contains** [1] - 76:11

**contemplated** [1] - 80:15

**contemplation** [1] - 80:22

**contemporaneous** [1] - 11:23

**context** [2] - 49:18, 76:10

**continued** [3] - 8:4, 8:6, 8:15

**continuum** [1] - 40:7

**contradicted** [1] - 64:22

**contribute** [1] - 30:13

**contributed** [1] - 69:13

**contribution** [51] - 30:16, 30:20, 42:23, 43:10, 43:16, 44:4, 45:13, 45:21, 69:7, 69:8, 69:11, 69:16, 69:18, 69:21, 69:22, 70:6, 71:7, 71:8, 74:2, 74:4, 74:16, 74:21, 74:22, 74:25, 75:1, 75:5, 75:24, 76:7, 76:12, 76:17, 76:18, 76:20, 77:2, 77:22, 77:25, 78:2, 78:3, 78:5, 78:6, 79:12, 79:24, 82:14, 82:15, 82:19, 82:20, 82:23, 82:24, 83:3, 83:4, 86:25, 87:5

**contributions** [15] - 29:16, 30:23, 31:1, 69:9, 70:8, 70:10, 71:10, 74:6, 74:18, 76:21, 76:24, 77:20, 78:10, 79:18, 79:21

**contributor** [4] - 70:11, 71:11, 74:7, 77:21

**control** [2] - 36:5, 58:7

**conversation** [3] - 17:14, 31:25, 33:19

**convey** [1] - 88:5

**convict** [4] - 67:23, 77:12, 82:1, 83:24

**convicted** [9] - 12:10, 26:8, 26:11, 26:13, 26:15, 26:25, 66:12, 73:23, 86:11

**conviction** [5] - 11:7, 11:9, 17:25, 88:12, 88:15

**convinced** [1] - 60:9

**copies** [3] - 56:8, 56:21, 57:5

**copy** [4] - 42:8, 42:9,

---

47:24, 53:18

**core** [1] - 48:12

**correct** [19] - 4:10, 8:18, 15:15, 16:3, 22:18, 22:24, 23:1, 23:7, 23:10, 23:21, 24:16, 28:15, 28:18, 33:11, 33:21, 38:19, 38:20, 86:7, 91:6

**counsel** [11] - 22:11, 24:25, 27:13, 28:2, 36:22, 38:12, 39:7, 39:11, 40:5, 53:20

**Count** [9] - 52:17, 70:1, 70:25, 74:14, 74:16, 77:18, 77:22, 80:1

**count** [5] - 26:14, 87:20, 87:23, 87:24, 88:1

**counts** [1] - 84:22

**Counts** [6] - 52:15, 52:17, 53:10, 80:4, 85:20, 87:8

**couple** [1] - 17:15

**course** [4] - 45:16, 54:15, 62:20, 68:5

**Court** [9] - 2:6, 2:7, 21:7, 40:14, 41:16, 48:13, 55:1, 55:9

**COURT** [94] - 1:1, 3:3, 3:9, 3:15, 4:3, 4:7, 7:4, 7:6, 7:10, 8:9, 8:21, 8:23, 9:6, 9:11, 12:24, 13:9, 13:14, 13:17, 13:24, 14:4, 14:22, 18:6, 18:13, 19:4, 19:11, 19:13, 19:25, 20:3, 20:19, 21:2, 21:14, 24:3, 26:17, 26:20, 27:3, 27:10, 28:25, 30:9, 34:1, 35:3, 35:8, 35:22, 35:25, 36:4, 36:7, 36:10, 36:13, 36:23, 37:4, 37:12, 37:15, 37:23, 38:18, 38:21, 40:20, 41:12, 41:17, 42:3, 42:8, 42:15, 43:2, 43:5, 44:5, 44:20, 45:1, 45:7, 45:23, 46:1, 46:7, 46:18, 46:21, 47:9, 47:21, 48:2, 48:15, 48:20, 49:8, 49:16, 50:11, 51:9, 51:13, 52:10, 53:1, 53:17, 54:11, 54:13, 55:10, 55:20, 56:1, 78:24, 90:5, 91:3,

---

91:8, 91:11

**court** [7] - 3:2, 14:3, 19:18, 21:13, 27:9, 55:19, 61:5

**COURTROOM** [1] - 9:8

**courtroom** [6] - 3:7, 9:3, 35:20, 55:24, 89:1, 90:3

**cover** [1] - 81:17

**coverage** [1] - 88:23

**covered** [7] - 38:3, 38:4, 38:7, 38:15, 39:14, 80:9

**create** [1] - 26:22

**created** [1] - 26:21

**Credentials** [1] - 22:12

**credibility** [5] - 57:19, 63:6, 63:9, 63:14, 65:9

**credible** [1] - 64:22

**crime** [28] - 59:3, 70:24, 71:6, 71:19, 72:2, 72:11, 73:13, 73:22, 73:23, 74:17, 74:20, 76:25, 77:3, 77:16, 77:19, 77:23, 77:24, 78:1, 80:2, 80:5, 81:19, 81:22, 82:5, 82:6, 83:12, 83:15, 84:3, 86:11

**crimes** [6] - 52:9, 52:11, 66:20, 67:8, 67:17, 67:25

**criminal** [12] - 10:1, 24:6, 26:4, 60:1, 65:14, 67:23, 70:21, 70:22, 71:22, 77:8, 81:24, 83:20

**Criminal** [1] - 1:3

**critical** [1] - 44:1

**cross** [1] - 21:8

**CROSS** [1] - 21:17

**cross-examine** [1] - 21:8

**crystallize** [1] - 53:6

**current** [1] - 45:4

---

# D

**D.C** [6] - 1:6, 1:16, 1:19, 1:22, 2:4, 5:23

**Dan** [1] - 6:23

**date** [6] - 7:25, 69:10, 87:11, 87:14, 90:14

**dated** [1] - 15:17

**dates** [2] - 87:10, 90:15

**David** [4] - 9:1, 9:3,

---

9:15, 85:22

**DAVID** [1] - 9:10

**DAY** [1] - 1:10

**DC** [1] - 40:10

**deal** [1] - 37:12

**dealing** [3] - 16:8, 19:6, 40:7

**dealt** [3] - 39:8, 39:9

**debate** [3] - 6:15, 6:19, 6:24

**decade** [2] - 21:21, 23:18

**December** [1] - 5:24

**decide** [11] - 39:23, 57:16, 57:17, 57:18, 57:23, 58:1, 61:15, 66:15, 68:17, 84:14, 88:25

**decided** [1] - 36:10

**deciding** [7] - 66:19, 67:11, 75:15, 78:16, 81:15, 85:11, 85:23

**decision** [5] - 36:5, 36:8, 47:6, 65:16, 65:18

**decisions** [1] - 30:25

**deemed** [1] - 73:15

**defendant** [64] - 8:15, 38:16, 45:14, 49:6, 49:18, 53:13, 53:24, 59:7, 59:9, 59:22, 63:3, 65:14, 65:18, 70:1, 70:25, 71:25, 72:12, 72:15, 72:17, 72:24, 73:7, 73:10, 73:23, 74:9, 74:13, 74:16, 75:3, 75:11, 75:15, 76:25, 77:7, 77:12, 77:15, 77:17, 77:19, 77:22, 78:2, 78:4, 78:9, 78:12, 78:16, 79:25, 80:2, 80:4, 80:9, 80:12, 81:3, 81:11, 81:15, 81:16, 81:23, 82:2, 82:4, 82:8, 82:9, 83:19, 85:11, 85:21, 85:23, 85:25, 86:2, 86:9, 86:11, 86:18

**Defendant** [8] - 1:7, 14:24, 77:3, 81:6, 81:18, 87:8, 87:24, 88:12

**DEFENDANT** [6] - 2:2, 35:24, 36:3, 36:6, 36:9, 36:12

**defendant's** [8] - 8:14, 44:7, 53:20, 75:13, 78:14, 81:13, 85:14, 86:24

---

**Defendant's** [4] - 15:1, 19:21, 31:7, 34:7

**defendants** [4] - 26:4, 26:6, 26:13, 26:25

**defended** [1] - 22:16

**Defense** [3] - 14:18, 14:22, 33:18

**DEFENSE** [1] - 9:10

**defense** [19] - 3:13, 35:5, 35:7, 36:22, 39:7, 39:8, 39:24, 40:2, 40:5, 40:17, 42:17, 46:4, 47:11, 53:3, 53:20, 54:24, 84:23, 86:1, 90:19

**defense's** [1] - 3:11

**defer** [4] - 41:16, 48:13, 55:8, 55:9

**defined** [2] - 69:22, 85:17

**definition** [1] - 39:14

**degree** [1] - 61:18

**delegate** [1] - 22:17

**delegates** [1] - 22:16

**deliberate** [1] - 89:7

**deliberation** [1] - 58:9

**deliberations** [11] - 41:10, 56:10, 56:18, 56:22, 58:8, 63:1, 88:3, 88:14, 89:9, 89:14, 89:22

**demeanor** [1] - 63:15

**demonstrates** [1] - 49:22

**denied** [2] - 4:3, 7:10

**deny** [1] - 37:24

**DEPARTMENT** [2] - 1:14, 1:18

**department** [3] - 69:2, 80:18, 81:5

**deposit** [4] - 42:24, 69:23, 75:24, 79:12

**DEPUTY** [1] - 9:8

**described** [4] - 33:3, 33:20, 63:12, 67:2, 72:21, 84:21

**describing** [1] - 20:25

**description** [1] - 53:5

**deserves** [1] - 66:10

**designed** [1] - 51:5

**desire** [3] - 32:2, 55:8, 65:3

**detail** [1] - 64:15

**detailed** [5] - 66:14, 66:18, 66:22, 67:10, 67:20

**details** [3] - 64:6, 71:16, 72:2

**determine** [10] - 57:14, 57:20, 60:21,

62:8, 63:7, 65:1,
65:22, 76:23, 79:20,
86:23
**determined** [3] -
13:22, 27:24, 62:6
**determining** [6] -
63:2, 64:20, 67:6,
67:12, 73:6, 84:17
**developed** [2] - 29:21,
30:22
**Dhillon** [1] - 9:17
**dichotomy** [1] - 46:9
**different** [5] - 50:18,
52:8, 58:6, 64:8,
68:1
**differently** [1] - 64:11
**direct** [11] - 23:15,
25:19, 26:21, 32:5,
60:21, 60:24, 61:6,
61:12, 61:16, 61:19,
61:20
**DIRECT** [2] - 3:17,
9:12
**directly** [12] - 69:16,
70:7, 71:7, 74:3,
74:24, 76:15, 77:2,
77:9, 81:9, 81:25,
83:21, 84:5
**disagree** [4] - 46:13,
48:4, 49:16, 90:9
**disbursements** [1] -
69:6
**discredit** [1] - 64:9
**discrepancies** [1] -
64:7
**discrepancy** [2] -
64:13, 64:16
**discuss** [6] - 3:3, 36:7,
89:3, 89:5, 89:24,
91:9
**discussed** [3] - 4:25,
17:19, 36:22
**discussion** [1] - 21:3
**disobey** [3] - 75:19,
78:20, 79:3
**disregard** [3] - 75:19,
78:20, 79:4
**District** [3] - 2:7, 2:7,
40:14
**DISTRICT** [4] - 1:1,
1:1, 1:11, 1:21
**document** [8] - 11:14,
11:16, 51:3, 51:6,
68:8, 80:10, 80:25,
81:18
**documents** [3] - 34:9,
49:25, 51:1
**Donald** [3] - 25:20,
45:14, 87:3
**donation** [2] - 76:7,

76:13
**done** [21] - 7:21, 41:1,
55:4, 57:25, 67:24,
72:25, 73:10, 73:14,
75:11, 77:8, 77:10,
77:15, 78:12, 81:11,
81:24, 82:1, 82:5,
83:20, 83:22, 84:2,
84:8
**door** [5] - 20:11,
20:12, 21:3, 21:9,
21:11
**doubt** [34] - 59:11,
59:15, 59:19, 59:22,
60:3, 60:4, 60:10,
60:11, 60:14, 60:15,
60:17, 60:19, 63:3,
66:25, 67:7, 67:13,
70:18, 71:2, 71:21,
73:25, 77:14, 80:8,
82:3, 82:17, 84:1,
84:18, 85:10, 85:19,
87:13, 88:9
**down** [8] - 8:24, 14:12,
17:23, 47:14, 48:17,
56:11, 71:15, 90:8
**draft** [1] - 44:13
**draw** [2] - 58:19, 59:5
**drawn** [1] - 61:1
**during** [18] - 17:21,
32:5, 34:9, 56:17,
56:22, 57:17, 58:7,
58:9, 58:14, 62:20,
68:5, 69:8, 74:1,
75:5, 83:6, 84:15,
89:9, 89:14
**duty** [4] - 57:11, 59:16,
59:19, 88:14

## E

**e-mail** [23] - 5:15,
5:16, 5:18, 6:19,
7:14, 14:8, 14:12,
15:17, 17:4, 17:6,
31:5, 32:1, 32:23,
32:24, 33:3, 33:18,
34:6, 34:22, 36:23,
37:1, 42:12, 89:11,
90:9
**e-mailed** [3] - 31:12,
31:19, 36:24
**e-mailing** [1] - 56:15
**e-mails** [2] - 49:25,
50:7
**early** [1] - 56:13
**easiest** [1] - 37:6
**edit** [1] - 37:9
**effect** [10] - 64:13,
69:20, 70:9, 71:9,

74:5, 77:25, 78:3,
79:9, 82:19, 83:4
**effecting** [4] - 77:20,
78:1, 82:14, 82:23
**efficient** [1] - 57:8
**efforts** [1] - 50:17
**either** [11] - 5:13,
16:22, 32:24, 33:18,
38:5, 49:25, 64:25,
65:11, 68:17, 69:16,
80:14
**elapsed** [1] - 64:4
**elected** [6] - 15:19,
16:2, 16:5, 16:6,
16:7, 16:8
**Election** [14] - 12:9,
12:17, 13:23, 24:1,
68:19, 68:20, 68:25,
69:1, 69:4, 69:12,
69:15, 69:19, 69:23,
80:17
**election** [19] - 6:12,
23:18, 43:1, 43:11,
43:23, 45:20, 47:7,
52:15, 68:21, 69:25,
70:8, 71:9, 74:4,
74:19, 75:2, 76:1,
79:14, 87:1, 87:7
**electronic** [2] - 56:14,
89:11
**electronically** [2] -
56:19, 89:15
**element** [5] - 59:15,
59:18, 77:14, 82:3,
84:1
**elements** [9] - 39:3,
39:13, 47:11, 47:17,
71:1, 74:20, 78:1,
80:6, 88:8
**Eleventh** [1] - 1:22
**enables** [1] - 40:3
**end** [3] - 4:4, 17:16,
41:16
**enforcement** [4] -
10:11, 21:4, 65:7,
65:13
**English** [1] - 51:6
**ensuring** [1] - 23:8
**enter** [2] - 73:12,
88:13
**entered** [4] - 3:7, 9:3,
11:11, 55:24
**entirely** [1] - 84:14
**entities** [1] - 10:8
**entitled** [4] - 38:17,
39:10, 58:22, 65:6
**entity** [1] - 10:24
**entries** [5] - 46:2,
70:13, 82:21, 82:25,
83:5

**entry** [7] - 71:11, 80:3,
80:10, 81:17, 81:18
**equal** [3] - 61:17,
76:22, 79:19
**equalled** [2] - 75:5,
78:11
**error** [1] - 64:16
**especially** [1] - 41:19
**ESQ** [5] - 1:14, 1:17,
1:20, 2:2, 2:2
**Esquire** [1] - 85:22
**essentially** [1] - 10:1
**establish** [1] - 87:11
**established** [3] -
12:13, 12:19, 13:12
**establishes** [1] -
87:13
**ethnic** [1] - 57:22
**evaluated** [1] - 65:8
**evaluating** [3] - 63:9,
63:25, 65:9
**evening** [1] - 90:1
**event** [15] - 14:9,
14:13, 16:22, 17:1,
32:2, 32:3, 33:9,
64:1, 64:3, 64:4,
64:5, 64:6, 65:11,
88:12, 88:15
**events** [1] - 15:5
**evidence** [91] - 4:17,
6:7, 7:1, 7:6, 7:13,
11:11, 14:19, 35:6,
35:9, 35:18, 41:11,
49:2, 50:12, 50:15,
51:25, 52:2, 52:9,
52:11, 57:17, 57:18,
57:24, 58:6, 58:10,
58:12, 58:17, 58:18,
58:21, 58:24, 58:25,
59:1, 59:4, 59:5,
59:13, 60:5, 60:8,
60:20, 60:21, 60:22,
60:24, 60:25, 61:2,
61:6, 61:11, 61:13,
61:14, 61:16, 61:18,
61:19, 61:20, 62:2,
62:5, 62:8, 62:15,
62:18, 64:23, 65:8,
65:20, 66:2, 66:11,
66:16, 66:19, 67:5,
67:11, 67:16, 67:21,
68:6, 68:18, 73:9,
73:16, 73:20, 75:13,
75:14, 78:14, 78:15,
81:13, 81:15, 84:10,
84:15, 84:16, 85:13,
85:16, 85:21, 85:23,
87:12, 87:21, 88:4,
88:16, 89:1
**evident** [1] - 13:24

**exact** [3] - 40:3, 40:16,
87:11
**exactly** [1] - 43:8
**EXAMINATION** [5] -
3:17, 8:11, 9:12,
21:17, 34:3
**examine** [2] - 21:8,
68:13
**example** [4] - 49:8,
49:10, 61:3, 63:14
**exceed** [2] - 76:22,
79:19
**exchange** [2] - 31:5,
33:3
**exclusive** [1] - 58:4
**exclusively** [1] - 88:15
**excuse** [2] - 41:22,
86:15
**excusing** [1] - 40:22
**Executive** [1] - 69:3
**executive** [1] - 11:17
**exercise** [1] - 65:15
**Exhibit** [11] - 4:17,
14:24, 19:21, 31:8,
33:19, 66:15, 66:18,
66:23, 67:3, 67:10,
67:21
**exhibit** [2] - 68:7,
68:10
**exhibits** [4] - 55:22,
58:12, 68:6, 68:13
**existed** [6] - 71:5,
73:3, 73:4, 73:5,
73:7, 73:11
**existence** [3] - 71:25,
73:19, 83:7
**exists** [1] - 71:19
**exited** [2] - 35:20, 90:3
**expand** [2] - 12:18,
13:13
**expect** [1] - 20:7
**expectations** [1] -
56:7
**expected** [2] - 40:25,
55:9
**expenditure** [2] -
16:23, 66:14
**experience** [4] -
18:20, 19:6, 58:21,
64:12
**explain** [8] - 9:23,
11:2, 13:22, 39:12,
39:20, 40:6, 70:21,
70:22
**explained** [1] - 56:13
**explaining** [2] - 53:13,
53:15
**explains** [1] - 39:4
**explanation** [3] -
50:18, 52:14, 66:8

explanations [1] - 65:21
explicitly [1] - 76:6
expressed [1] - 58:2
extended [1] - 49:12
extent [2] - 63:7, 68:3
eyewitness [1] - 60:23

# F

F.3d [1] - 40:14
fact [13] - 18:10, 20:12, 20:15, 24:25, 25:25, 50:1, 50:14, 59:23, 60:23, 61:13, 65:24, 85:24, 87:23
facts [16] - 57:15, 57:16, 57:20, 58:13, 58:15, 58:16, 58:19, 60:21, 60:25, 62:7, 68:18, 73:1, 73:3, 84:9, 84:15, 86:5
failed [1] - 59:18
failure [1] - 64:12
fair [8] - 12:23, 22:23, 23:4, 47:12, 57:8, 57:23, 61:24, 62:3
fairly [3] - 30:4, 58:22, 65:6
faith [21] - 37:17, 38:2, 38:14, 39:4, 39:8, 40:2, 40:11, 40:17, 53:3, 67:1, 67:15, 84:23, 84:24, 85:1, 85:10, 85:12, 85:17, 86:3, 86:6, 86:18, 90:19
falling [1] - 61:6
false [21] - 46:9, 49:9, 49:22, 50:1, 50:4, 50:10, 65:22, 65:24, 66:1, 66:7, 66:13, 66:14, 70:13, 71:11, 80:10, 81:17, 82:15, 82:20, 82:25, 83:5
falsehood [1] - 64:17
falsification [3] - 74:8, 80:3, 80:6
falsified [1] - 80:10
falsify [1] - 81:17
falsifying [1] - 80:25
family [2] - 5:4, 25:17
far [1] - 4:7
fast [1] - 55:7
faster [1] - 40:25
favor [1] - 61:14
favoritism [1] - 57:21
FCRR [3] - 2:6, 91:19, 91:25
fear [1] - 57:21

FEC [10] - 10:9, 10:11, 16:24, 19:6, 29:22, 30:24, 69:2, 69:6, 70:14, 71:13
FEC's [1] - 43:14
FECA [2] - 29:13, 29:14
Federal [7] - 12:9, 12:16, 13:23, 24:1, 68:19, 69:1, 80:17
federal [27] - 10:6, 15:20, 16:9, 22:16, 30:1, 43:1, 43:11, 43:23, 44:4, 52:15, 68:22, 69:13, 69:25, 74:18, 75:2, 76:1, 76:2, 77:25, 78:7, 79:14, 79:15, 80:6, 81:8, 85:15, 87:1, 87:7
feelings [2] - 20:12, 66:2
few [4] - 3:21, 52:14, 56:8, 56:21
field [1] - 18:25
fighting [1] - 9:25
figure [1] - 30:3
file [2] - 13:11, 69:5
filed [1] - 28:16
final [7] - 28:24, 35:13, 39:22, 54:1, 54:9, 56:4, 90:19
finally [1] - 89:21
finance [9] - 10:6, 23:19, 26:11, 26:15, 26:25, 29:9, 30:2, 40:16, 85:15
finance-related [1] - 23:19
fine [5] - 44:22, 48:13, 52:10, 52:25
fines [2] - 10:13, 10:15
finish [1] - 44:13
finished [1] - 42:5
firm [3] - 22:2, 22:4, 22:22
Firm [1] - 9:17
firmly [1] - 60:9
First [1] - 10:6
first [13] - 16:25, 31:19, 34:8, 41:5, 44:6, 44:8, 52:22, 54:2, 69:15, 70:5, 71:24, 74:1, 74:15
five [1] - 55:13
flight [1] - 40:24
Floor [2] - 1:16, 1:22
folks [3] - 35:19, 55:15, 89:25
follow [7] - 3:21,

20:21, 31:25, 32:23, 56:25, 57:13, 68:2
follow-up [1] - 31:25
follow-ups [1] - 3:21
followed [2] - 86:6, 86:16
following [14] - 3:1, 3:8, 9:4, 13:15, 14:2, 20:4, 21:12, 26:18, 27:8, 35:21, 55:18, 55:25, 61:4, 90:4
follows [1] - 69:14
followup [1] - 17:3
FOR [4] - 1:1, 1:14, 1:21, 2:2
forbids [5] - 75:18, 75:21, 78:19, 79:3, 79:6
foregoing [1] - 91:20
foreign [29] - 29:11, 30:11, 30:12, 33:17, 51:6, 69:15, 69:18, 70:6, 70:7, 71:6, 71:7, 71:8, 74:2, 74:3, 74:4, 74:15, 74:18, 74:21, 74:23, 74:24, 75:4, 75:7, 75:8, 77:1, 82:14, 82:19, 82:22, 83:3
foreseeable [2] - 83:10, 83:14
form [10] - 36:15, 37:1, 37:2, 61:14, 88:2, 88:3, 88:6, 88:9, 90:6, 90:8
formal [2] - 59:2, 71:14
former [2] - 12:9, 12:16
four [1] - 90:7
Fourth [2] - 1:21, 2:8
Franklin [1] - 49:11, 50:16
free [5] - 35:4, 47:13, 56:2, 57:2, 91:5
Friday [3] - 40:24, 41:1, 41:16
friend [3] - 10:23, 23:16, 23:17
friends [1] - 25:13
friendship [1] - 63:23
front [3] - 5:15, 11:15, 42:19
FULBRIGHT [1] - 2:3
full [5] - 11:19, 12:7, 63:20, 86:20, 91:21
fully [1] - 86:5
function [2] - 57:7, 57:14
fundraiser [2] - 15:7,

17:11, 31:13, 33:13, 33:17
fundraising [2] - 32:2, 33:9
funds [6] - 32:18, 69:21, 76:8, 76:13, 79:23
furtherance [3] - 73:14, 82:11, 83:8

# G

gender [1] - 57:22
general [3] - 15:19, 22:19, 24:25
gentleman [1] - 6:23
gentlemen [4] - 3:10, 35:8, 56:1, 89:17
geographically [1] - 8:13
gift [5] - 16:7, 42:23, 69:23, 75:25, 79:12
gifts [2] - 15:21, 16:8
given [9] - 16:8, 44:14, 47:10, 48:16, 49:21, 55:3, 55:4, 66:4, 88:7
glosses [1] - 30:25
goal [1] - 70:3
goals [1] - 70:3
Goodman [3] - 12:8, 12:15, 12:16
goodman [1] - 12:12
goodwill [1] - 24:18
gov [1] - 5:16
government [53] - 14:19, 28:10, 34:5, 37:9, 41:12, 41:14, 42:14, 42:16, 43:13, 44:23, 45:2, 45:9, 45:11, 46:5, 46:10, 47:22, 47:25, 50:11, 50:16, 51:18, 52:12, 53:22, 53:23, 59:10, 59:14, 59:17, 59:21, 60:16, 63:2, 66:24, 67:6, 67:12, 69:3, 70:15, 70:16, 71:2, 71:20, 72:3, 72:22, 73:3, 73:24, 77:13, 80:7, 80:24, 81:2, 81:10, 82:3, 83:25, 84:17, 85:11, 85:18, 88:9, 90:24
Government [1] - 6:1
GOVERNMENT [1] - 1:14
government's [9] - 34:9, 38:14, 42:18, 46:21, 49:2, 52:20,

53:3, 60:2, 85:9
Government's [10] - 6:14, 7:2, 7:14, 11:12, 66:15, 66:18, 66:22, 67:3, 67:10, 67:20
grandma [1] - 6:23
grant [1] - 11:17
granted [1] - 12:7
grave [1] - 60:13
Great [3] - 8:14, 8:15, 8:17
greater [2] - 61:18, 62:11, 65:11
ground [2] - 61:8, 61:9
guess [5] - 41:4, 41:22, 47:22, 48:15, 68:16
guesswork [1] - 60:15
guidance [2] - 29:23, 86:19
guidelines [1] - 65:10
guilt [7] - 59:5, 60:9, 60:17, 60:18, 66:2, 66:3
guilty [22] - 38:5, 45:15, 47:8, 53:10, 59:10, 59:16, 59:20, 59:22, 65:19, 70:19, 72:24, 76:25, 77:3, 81:19, 82:13, 83:15, 85:20, 87:8, 87:24, 90:20, 90:21
guns [1] - 54:2
guts [1] - 10:2
guy [1] - 5:6

# H

hammer [1] - 90:8
hand [7] - 9:9, 45:6, 59:17, 60:25, 66:4, 71:16, 86:14
happy [1] - 41:6
hard [1] - 20:12
hate [1] - 41:1
hear [10] - 3:11, 35:9, 35:14, 41:6, 50:22, 54:23, 56:6, 64:11, 68:13, 89:18
heard [10] - 19:17, 35:9, 35:17, 37:11, 39:25, 52:19, 65:20, 66:11, 68:3, 85:21
hearing [1] - 89:21
heart [2] - 44:11, 50:19
held [1] - 85:2
helping [1] - 10:5
helps [1] - 72:13

**herself** [1] - 64:25
**hesitate** [1] - 60:13
**highest** [1] - 22:8
**highly** [1] - 59:24
**himself** [1] - 86:15
**history** [1] - 43:12
**hold** [6] - 35:18, 54:5, 54:6, 62:16, 65:16, 68:17
**holding** [1] - 21:7
**holiday** [1] - 34:10
**home** [2] - 12:14, 19:19
**honest** [7] - 38:9, 40:1, 40:18, 60:7, 85:6, 85:7
**honestly** [4] - 85:2, 86:2, 86:5, 86:6
**Honor** [36] - 3:13, 3:25, 7:3, 7:5, 7:8, 8:8, 8:10, 8:22, 9:5, 14:18, 14:21, 19:23, 20:2, 20:6, 21:16, 24:2, 28:23, 35:1, 35:7, 36:21, 37:19, 38:1, 40:9, 41:14, 45:3, 45:9, 46:25, 49:2, 51:2, 51:11, 51:22, 53:14, 54:10, 54:17, 91:1, 91:10
**Honor's** [1] - 52:2
**HONORABLE** [1] - 1:10
**hope** [1] - 70:4
**hopefully** [1] - 91:4
**hostile** [1] - 4:2
**hostility** [1] - 63:23
**House** [3] - 68:24, 76:3, 79:16
**humanitarian** [2] - 16:13, 31:21
**hundred** [1] - 34:25

## I

**idea** [1] - 33:2
**identifying** [1] - 69:6
**identity** [1] - 72:3
**IGBE** [1] - 40:14
**ignorance** [3] - 75:12, 78:13, 81:12
**ignore** [5] - 57:1, 57:13, 58:3, 62:21, 62:24
**illegal** [4] - 30:12, 30:15, 30:19, 70:3
**imaginary** [1] - 60:14
**imminent** [1] - 80:20
**impair** [1] - 64:2
**impartial** [3] - 60:7,

61:25, 62:3
**impede** [1] - 80:12
**impeded** [2] - 70:13, 71:12
**impeding** [1] - 81:7
**implicated** [1] - 68:12
**implicitly** [1] - 76:6
**implies** [1] - 60:4
**importance** [1] - 64:15
**important** [4] - 22:25, 23:2, 45:18, 60:13
**imposes** [1] - 68:20
**imposing** [1] - 88:14
**impresses** [2] - 63:17, 63:18
**impression** [2] - 26:22, 26:23
**improbability** [1] - 64:19
**improper** [1] - 65:17
**improperly** [1] - 57:21
**improve** [1] - 64:2
**inaccurate** [4] - 53:4, 63:18, 85:4, 86:13
**inadmissible** [1] - 68:11
**inadvertently** [1] - 89:2
**incident** [1] - 64:10
**inclination** [2] - 41:4, 47:13
**inclined** [4] - 20:19, 44:6, 47:9, 48:15
**includes** [3] - 56:14, 75:24, 89:11
**including** [4] - 47:10, 64:2, 68:11, 68:23
**inconsistencies** [1] - 64:7
**inconsistency** [3] - 49:15, 64:13, 64:16
**inconsistent** [11] - 49:3, 49:9, 49:23, 50:1, 50:5, 50:10, 65:22, 65:24, 66:1, 66:8, 84:24
**incorrect** [3] - 12:10, 38:18, 85:5
**independent** [2] - 56:17, 89:13
**indicate** [1] - 84:10
**indicated** [2] - 55:6, 58:2
**indicating** [1] - 58:1
**indicted** [2] - 28:5, 28:13
**indictment** [17] - 48:9, 48:21, 57:6, 59:2, 59:4, 66:24, 67:8, 72:21, 77:1, 77:4,

81:19, 83:16, 84:20, 87:9, 87:20, 87:25, 88:1
**indirectly** [8] - 69:17, 70:7, 71:8, 73:1, 74:3, 74:24, 76:16, 77:2
**individual** [2] - 12:13, 75:7
**individual's** [1] - 68:12
**individuals** [1] - 10:8
**industry** [1] - 22:23
**infer** [3] - 84:6, 84:11
**inference** [1] - 59:5
**inferences** [2] - 58:20, 61:1
**influence** [4] - 45:20, 80:13, 87:25, 88:13
**influenced** [3] - 57:22, 70:14, 71:12
**influencing** [9] - 42:25, 43:10, 43:23, 69:25, 76:1, 79:13, 81:7, 87:1, 87:6
**inform** [1] - 16:4
**information** [5] - 6:10, 28:9, 32:14, 33:2, 34:18
**informed** [1] - 23:6
**innocence** [3] - 59:8, 59:12, 66:6
**innocent** [3] - 59:8, 64:11, 64:16
**inquiry** [1] - 34:5
**instead** [4] - 78:22, 85:12, 86:1, 90:20
**instruct** [3] - 57:9, 57:11, 70:23
**Instruction** [3] - 48:6, 50:20, 53:25
**instruction** [30] - 37:10, 37:18, 38:2, 38:4, 38:8, 38:13, 38:16, 38:23, 39:11, 39:16, 39:21, 40:11, 40:16, 42:21, 43:3, 43:19, 43:25, 44:23, 45:5, 45:10, 45:12, 46:15, 47:2, 50:21, 51:4, 52:7, 80:21, 89:8
**instructions** [28] - 35:13, 36:18, 36:20, 38:8, 40:12, 40:19, 42:13, 47:4, 47:10, 48:11, 49:20, 52:5, 55:2, 55:3, 55:14, 56:4, 56:9, 56:22, 56:23, 56:24, 56:25,

57:2, 57:3, 57:12, 88:6, 88:8, 89:18, 89:24
**INTEGRITY** [1] - 1:15
**intend** [1] - 50:21
**intended** [4] - 26:22, 58:24, 83:13, 86:10
**intends** [1] - 84:12
**intent** [15] - 38:11, 72:8, 75:17, 75:20, 77:16, 78:18, 79:2, 79:5, 80:12, 82:5, 84:3, 84:4, 84:7, 84:10, 86:12
**intentional** [1] - 64:17
**intentionally** [4] - 72:1, 72:8, 74:9, 84:13
**interest** [1] - 63:22
**interests** [1] - 71:17
**Internet** [3] - 56:19, 88:21, 89:16
**interpret** [1] - 12:22
**interpretation** [5] - 19:7, 43:14, 49:24, 50:2, 50:7
**interrupt** [1] - 90:18
**interview** [3] - 3:23, 4:9, 20:6
**introduce** [1] - 9:14
**introduced** [2] - 4:17, 7:1
**investigation** [8] - 4:14, 56:17, 80:13, 80:20, 80:23, 81:3, 81:7, 89:14
**involved** [11] - 10:15, 11:5, 22:7, 26:2, 27:23, 71:15, 71:22, 72:18, 74:11, 76:24, 79:21
**involves** [1] - 86:12
**Iowa** [2] - 11:7, 17:25
**issuance** [1] - 14:10
**issue** [8] - 4:24, 10:13, 13:19, 18:16, 26:24, 40:10, 40:12, 53:6
**issued** [3] - 10:16, 11:18, 11:23
**issues** [4] - 10:7, 22:8, 23:19, 29:25
**itself** [6] - 39:2, 42:21, 61:24, 72:14, 85:25

## J

**JESSE** [1] - 1:6
**Jesse** [6] - 10:18, 12:6, 12:7, 23:11, 24:20, 83:1

John [2] - 12:6, 12:7
**join** [1] - 55:7
**joined** [4] - 72:1, 72:12, 73:15, 74:9
**joins** [1] - 72:8
**Judge** [1] - 40:15
**judge** [1] - 63:6
**JUDGE** [1] - 1:11
**judges** [2] - 39:18, 57:15
**judging** [1] - 63:9
**judgment** [6] - 37:20, 58:22, 63:13, 65:6, 66:9, 87:16
**July** [1] - 71:5
**jurisdiction** [2] - 80:16, 81:4
**Juror** [2] - 40:23, 41:4
**juror** [2] - 87:17
**jurors** [4] - 40:22, 41:18, 41:22, 89:3
**jury** [40] - 3:4, 3:6, 3:7, 3:10, 5:6, 9:14, 13:16, 14:23, 20:5, 20:17, 26:19, 35:13, 35:20, 36:17, 39:12, 40:3, 41:10, 43:16, 44:1, 44:2, 45:12, 47:5, 47:10, 47:15, 48:9, 53:7, 53:19, 54:23, 55:2, 55:3, 55:20, 55:24, 56:4, 56:8, 56:13, 57:14, 61:23, 89:7, 89:10, 90:3
**JURY** [1] - 1:10
**JUSTICE** [2] - 1:14, 1:18
**justified** [1] - 58:20

## K

**keep** [2] - 18:17, 49:6
**keeping** [1] - 23:5
**kind** [9] - 9:20, 13:18, 51:14, 53:5, 56:7, 59:4, 60:11, 73:21, 82:6
**kinds** [1] - 29:24
**knowing** [2] - 72:14, 84:5
**knowingly** [17] - 66:25, 67:13, 72:12, 75:3, 75:11, 75:15, 75:16, 78:9, 78:12, 78:16, 78:17, 78:22, 78:24, 80:9, 81:11, 81:15, 86:15
**knowledge** [10] - 5:22, 13:5, 38:7, 52:3,

60:23, 84:4, 84:7,
84:10, 85:14, 85:24
**known** [2] - 23:13,
25:11

# L

**laboring** [1] - 51:19
**lack** [4] - 51:25, 52:3,
60:5, 85:15
**lacked** [1] - 38:10
**ladies** [4] - 3:9, 35:8,
56:1, 89:17
**laid** [1] - 86:5
**language** [2] - 43:6,
51:6
**last** [6] - 10:22, 18:10,
30:5, 37:9, 52:23,
89:23
**late** [1] - 47:17
**Law** [1] - 9:17
**law** [63] - 9:20, 9:21,
9:22, 10:1, 10:4,
10:6, 12:12, 12:19,
13:5, 13:11, 13:18,
18:2, 18:18, 18:19,
18:23, 18:25, 21:3,
21:21, 22:2, 22:22,
26:23, 29:9, 29:12,
29:19, 29:21, 30:2,
39:18, 39:19, 43:10,
43:13, 43:16, 43:17,
43:19, 43:20, 43:22,
44:1, 44:2, 44:4,
57:9, 57:11, 59:12,
61:12, 61:14, 65:7,
65:13, 67:23, 75:18,
75:19, 75:21, 75:23,
78:19, 78:20, 79:3,
79:4, 79:6, 79:8,
85:15, 86:11, 86:13,
86:15, 88:7
**lawful** [1] - 86:10
**lawfully** [4] - 75:9,
77:8, 86:4
**lawfulness** [2] - 38:9,
85:8
**laws** [2] - 30:5, 52:15
**lawsuit** [1] - 22:16
**lawyer** [16] - 18:10,
18:15, 20:14, 28:22,
29:6, 33:15, 49:5,
49:14, 62:15, 62:16,
85:22, 86:3, 86:6,
86:9, 86:17, 86:21
**lawyer's** [2] - 62:18,
62:21
**lawyers** [6] - 20:23,
22:5, 30:3, 58:23,
59:1, 62:13

**lead** [3] - 4:2, 73:2,
73:4
**Leading** [1] - 18:12
**leading** [3] - 3:25, 4:6,
22:5
**learned** [1] - 33:15
**least** [4] - 23:23,
50:12, 71:4, 72:24
**leave** [1] - 90:7
**leaves** [1] - 55:20
**Lee** [3] - 12:8, 12:15,
12:16
**legal** [6] - 10:25,
13:18, 13:20, 19:2,
24:11, 85:25
**legislative** [1] - 43:12
**length** [2] - 55:3, 55:5
**lengthy** [1] - 55:2
**lesser** [1] - 65:12
**liability** [1] - 52:18
**liar** [1] - 50:6
**life** [1] - 60:14
**light** [1] - 58:20
**likely** [4] - 41:15,
59:23, 66:21, 67:4
**limited** [3] - 49:6,
66:19, 67:11
**line** [2] - 37:13, 52:20
**lines** [1] - 47:16
**listen** [2] - 88:23,
88:24
**litigation** [2] - 9:22,
9:24
**LLP** [1] - 2:3
**loan** [4] - 42:24, 69:23,
75:25, 79:12
**local** [1] - 74:19
**located** [2] - 9:18,
9:19
**long-time** [1] - 23:11
**look** [1] - 14:16
**looked** [2] - 61:4, 61:7
**looking** [3] - 33:18,
40:22, 45:7
**looks** [3] - 51:20,
52:22, 52:25
**lost** [1] - 39:3
**lunch** [2] - 51:19, 55:4

# M

**ma'am** [1] - 19:11
**mail** [25] - 5:15, 5:16,
5:18, 6:19, 7:14,
14:8, 14:12, 15:17,
17:4, 17:6, 31:5,
32:1, 32:23, 32:24,
33:3, 33:18, 34:6,
34:22, 36:23, 37:1,
42:12, 50:14, 50:15,

89:11, 90:9
**mailed** [3] - 31:12,
31:19, 36:24
**mailing** [1] - 56:15
**mails** [2] - 49:25, 50:7
**majority** [1] - 21:24
**man** [1] - 86:14
**manager** [1] - 25:7
**manner** [4] - 4:5,
49:19, 57:8, 63:16
**March** [4] - 7:14, 7:25,
28:19, 29:5
**MARIA** [2] - 2:6, 91:19
**Maria** [2] - 91:25,
91:25
**marked** [2] - 4:16,
7:13
**marking** [1] - 42:5
**mathematical** [1] -
60:17
**matter** [18] - 4:20,
14:7, 17:16, 19:18,
22:19, 23:25, 28:6,
38:24, 39:19, 64:14,
79:22, 80:14, 80:16,
80:19, 80:22, 81:4,
81:8, 88:17
**matters** [7] - 23:22,
23:23, 24:12, 29:23,
60:14, 63:12, 63:21
**McFADDEN** [1] - 1:10
**mean** [5] - 43:21,
43:22, 46:7, 47:9,
90:21
**means** [16] - 44:1,
56:18, 61:13, 63:9,
75:16, 76:2, 76:5,
77:10, 78:17, 79:1,
79:9, 79:12, 79:15,
82:1, 83:22, 89:14
**meant** [2] - 78:24,
88:10
**mechanism** [1] -
10:11
**media** [1] - 88:22
**meet** [3] - 5:22, 55:21,
90:10
**meetings** [1] - 5:19
**member** [7] - 4:19,
72:5, 76:3, 79:16,
82:9, 83:2
**members** [4] - 68:24,
73:8, 73:9, 82:7
**memory** [5] - 32:12,
58:6, 58:7, 63:19,
63:25
**mental** [2] - 38:6,
38:11
**mentioned** [6] - 13:11,
17:24, 42:22, 74:13,

77:17, 79:25
**mere** [3] - 72:10,
76:16, 85:24
**merely** [5] - 59:2,
65:12, 71:16, 72:11,
72:14
**message** [1] - 76:11
**METHERALL** [1] - 2:2
**MICHELLE** [2] - 1:17,
1:20
**middle** [1] - 47:1
**might** [4] - 21:2, 37:2,
62:9, 62:12
**mind** [5] - 17:12,
40:12, 49:9, 84:19,
85:14
**Minneapolis** [1] - 2:8
**Minnesota** [1] - 2:7
**minor** [1] - 72:6
**minutes** [7] - 16:11,
17:15, 54:14, 54:19,
54:20, 55:6, 55:13
**misrecollection** [1] -
64:11
**mistake** [12] - 39:24,
39:25, 40:1, 40:4,
40:18, 51:25, 52:4,
67:1, 67:14, 75:12,
78:13, 81:12, 85:7
**mistaken** [1] - 40:4
**mistakes** [1] - 10:3
**misunderstanding** [3]
- 38:9, 40:1, 85:7
**MN** [1] - 2:8
**modified** [1] - 44:25
**modifies** [1] - 88:8
**modus** [2] - 51:24,
52:4
**moment** [2] - 17:18,
36:16
**momentarily** [1] - 42:7
**money** [11] - 9:25,
30:17, 30:20, 42:24,
49:12, 50:17, 69:12,
69:23, 74:22, 75:25,
79:12
**month** [2] - 7:18, 7:24
**months** [1] - 27:14
**months'** [1] - 12:14
**morning** [1] - 54:19
**Moss** [1] - 40:15
**most** [3] - 22:21,
36:22, 42:9
**motion** [3] - 37:20,
37:24, 42:22
**motive** [1] - 63:19
**motives** [2] - 45:16,
45:18
**move** [6] - 14:4, 14:18,
27:3, 27:6, 30:7,

41:11
**moved** [1] - 28:19
**moving** [2] - 35:10,
40:24
**MR** [60] - 3:13, 3:18,
4:1, 4:6, 4:8, 7:7,
7:12, 8:7, 8:22, 9:1,
9:13, 13:1, 13:10,
13:20, 14:1, 14:6,
14:18, 14:25, 18:7,
18:14, 19:5, 19:14,
19:23, 20:23, 21:5,
24:2, 28:7, 28:23,
34:2, 34:4, 35:1,
35:7, 37:8, 37:19,
37:25, 39:1, 41:9,
42:1, 42:12, 42:16,
43:4, 43:6, 44:16,
44:22, 45:25, 46:2,
46:14, 46:19, 48:1,
48:12, 48:18, 49:17,
51:11, 51:18, 52:21,
53:13, 54:12, 55:7,
90:18, 91:7
**MS** [51] - 3:25, 7:3,
7:5, 7:8, 8:10, 8:12,
8:20, 12:21, 13:8,
14:21, 18:5, 18:12,
19:2, 19:10, 19:12,
20:2, 20:6, 21:10,
21:16, 21:18, 24:5,
26:21, 27:7, 27:12,
28:12, 29:4, 30:7,
30:10, 31:7, 31:10,
33:25, 36:21, 36:25,
37:13, 38:1, 38:20,
40:9, 41:14, 42:5,
45:3, 45:9, 46:25,
47:20, 49:2, 49:10,
51:2, 51:22, 54:10,
54:17, 78:21, 91:10
**mud** [2] - 19:16, 30:2
**multiple** [5] - 23:19,
39:25, 45:16, 45:18,
46:11
**must** [36] - 53:9, 59:3,
60:2, 62:1, 62:2,
62:16, 62:22, 63:4,
65:16, 65:18, 70:16,
70:20, 71:2, 71:24,
72:16, 72:24, 73:3,
73:24, 75:20, 76:15,
76:22, 79:5, 79:19,
80:7, 82:16, 85:19,
86:2, 87:7, 87:16,
87:18, 87:19, 88:9,
88:24, 88:25, 90:20

# N

**name** [11] - 6:21, 9:15,

60:3, 69:7, 69:20, 70:10, 71:10, 74:6, 77:20, 77:25, 78:2
**named** [1] - 6:23
**nation** [2] - 22:5, 22:9
**national** [29] - 29:12, 30:12, 32:7, 33:3, 33:17, 69:16, 69:18, 70:6, 70:7, 71:6, 71:7, 71:8, 74:2, 74:3, 74:4, 74:16, 74:18, 74:21, 74:23, 74:24, 75:7, 75:8, 77:1, 82:14, 82:19, 82:23, 83:3
**natural** [2] - 82:11, 84:12
**naturally** [1] - 80:25
**nature** [4] - 61:23, 62:1, 72:7, 81:9
**navigate** [1] - 30:4
**near** [1] - 87:14
**necessarily** [4] - 62:5, 71:18, 86:1, 88:20
**necessary** [7] - 38:15, 41:15, 59:23, 72:1, 76:19, 83:12, 84:19
**need** [17] - 3:15, 13:24, 30:2, 45:19, 48:5, 51:10, 51:11, 54:14, 56:10, 72:22, 75:22, 76:23, 79:7, 79:20, 81:6, 87:11, 90:2
**needs** [1] - 39:5
**neglected** [1] - 52:6
**never** [1] - 59:11
**New** [1] - 1:15
**newspaper** [1] - 88:21
**next** [7] - 8:25, 12:2, 19:17, 31:18, 41:19, 46:15, 52:14
**night** [4] - 37:9, 52:23, 52:24
**Ninth** [1] - 2:3
**nobody** [2] - 49:23, 53:4
**nonleading** [1] - 4:5
**nonresponsive** [1] - 30:8
**normal** [1] - 35:12
**normally** [1] - 48:13
**Northwest** [3] - 1:18, 1:21, 2:3
**NORTON** [1] - 2:3
**note** [2] - 37:8, 57:2
**notes** [2] - 41:10, 91:21
**nothing** [5] - 8:7, 35:1, 88:4, 88:6, 88:7

**notice** [1] - 28:16
**noticed** [1] - 90:13
**November** [1] - 1:6
**nowhere** [1] - 43:15
**nuance** [1] - 29:24
**nuances** [1] - 30:22
**number** [8] - 7:18, 10:21, 20:14, 41:22, 62:6, 62:10, 62:11, 68:5

**O**

**o'clock** [1] - 90:11
**oar** [1] - 51:19
**oath** [1] - 3:16
**object** [19] - 20:25, 28:23, 37:10, 42:19, 45:23, 46:2, 46:19, 48:17, 62:18, 70:5, 70:9, 70:12, 70:16, 70:18, 71:22, 72:9, 74:15, 77:19, 80:2
**objected** [2] - 27:5, 62:13
**objecting** [2] - 14:20, 62:15
**objection** [21] - 3:25, 7:3, 7:10, 13:8, 14:21, 14:22, 18:5, 18:12, 19:2, 24:2, 27:11, 28:7, 41:9, 41:12, 44:15, 44:25, 48:8, 48:18, 53:23, 62:21
**Objection** [1] - 19:10
**objections** [3] - 50:22, 52:9, 62:16
**objects** [8] - 70:2, 70:17, 70:23, 71:23, 74:14, 77:18, 80:1
**observe** [1] - 63:21
**observed** [1] - 63:11
**obstruct** [1] - 80:13
**obstructed** [2] - 70:13, 71:12
**obstructing** [1] - 81:7
**obstruction** [1] - 81:1
**obtaining** [2] - 25:22, 86:9
**obvious** [1] - 91:4
**obviously** [1] - 90:22
**occasionally** [1] - 24:11
**occasions** [1] - 10:21
**OF** [5] - 1:1, 1:3, 1:14, 1:18, 1:21
**offense** [30] - 59:15, 59:17, 59:18, 59:20, 67:4, 70:21, 74:17,

77:5, 77:6, 77:12, 77:14, 81:21, 82:2, 82:4, 82:8, 82:10, 82:11, 82:22, 83:6, 83:8, 83:10, 83:17, 83:18, 83:24, 84:1, 87:9, 87:12, 87:14, 87:21
**offenses** [13] - 66:9, 66:17, 66:21, 66:22, 66:23, 67:2, 67:4, 67:9, 67:20, 70:22, 84:20, 87:10
**offered** [1] - 62:14
**OFFICE** [1] - 1:20
**office** [19] - 4:20, 4:25, 9:18, 9:19, 43:1, 43:11, 43:24, 68:22, 68:23, 69:25, 76:1, 76:2, 78:7, 79:14, 79:15, 87:2, 87:7
**officer** [1] - 65:13
**officer's** [2] - 65:7, 65:9
**offices** [1] - 68:24
**official** [5] - 15:19, 16:2, 16:5, 16:6, 16:7
**Official** [1] - 2:6
**officials** [2] - 16:9
**often** [2] - 45:16, 45:19
**Ohio** [1] - 22:13
**omissions** [4] - 68:14, 75:14, 78:15, 81:14
**once** [1] - 23:2
**one** [43] - 7:19, 11:13, 12:2, 13:19, 16:15, 17:18, 22:4, 26:13, 27:1, 30:19, 31:23, 35:18, 37:16, 39:22, 41:2, 42:1, 44:24, 45:25, 46:3, 46:11, 46:16, 49:18, 51:14, 51:24, 51:25, 52:5, 53:7, 54:22, 60:1, 61:14, 61:22, 62:10, 66:20, 70:18, 70:20, 72:18, 72:24, 73:7, 73:14, 74:11, 74:12, 87:24, 88:20
**open** [6] - 3:2, 14:3, 21:10, 21:13, 27:9, 55:19
**opened** [2] - 20:12, 21:8
**opening** [2] - 8:3, 21:3
**opens** [1] - 20:11
**operandi** [1] - 51:24, 52:4

**operations** [2] - 70:14, 71:12
**opinion** [4] - 58:3, 85:2, 85:4, 88:5
**opinions** [2] - 13:21, 29:23
**opportunity** [2] - 36:19, 63:21
**opposite** [1] - 62:12
**oral** [1] - 76:9
**order** [4] - 70:19, 72:23, 82:13, 87:17
**orderly** [1] - 57:8
**ordinarily** [1] - 84:4
**organizations** [1] - 23:20
**origin** [1] - 57:22
**original** [3] - 51:6, 83:13, 83:14
**otherwise** [7] - 11:17, 39:4, 54:8, 68:9, 76:8, 76:13, 90:11
**outcome** [1] - 63:23
**outside** [4] - 9:2, 13:16, 20:5, 26:19
**overall** [1] - 39:8
**overly** [1] - 41:18
**overruled** [6] - 13:9, 18:6, 19:13, 24:3, 28:25, 30:9
**overt** [5] - 72:20, 72:21, 72:23, 72:24, 74:12
**own** [4] - 39:20, 43:9, 58:6, 87:4

**P**

**p.m** [9] - 1:7, 3:2, 3:8, 35:21, 55:16, 55:17, 55:25, 90:4, 91:12
**PAC** [13] - 8:3, 8:5, 8:6, 8:14, 8:16, 8:17, 15:10, 16:15, 16:23, 31:16, 31:23, 32:21
**page** [10] - 11:13, 11:14, 31:9, 31:19, 37:7, 41:21, 41:24, 42:2, 45:5, 90:13
**pages** [2] - 12:3, 52:14
**paid** [3] - 8:15, 8:17, 30:3
**panel** [1] - 3:6
**paper** [1] - 44:17
**paperwork** [1] - 10:3
**paragraph** [8] - 44:7, 44:8, 44:13, 46:16, 47:1, 54:1, 78:23, 90:20
**paragraphs** [2] - 54:3,

72:22
**pardon** [12] - 11:18, 11:19, 11:23, 14:7, 14:10, 14:12, 20:8, 20:22, 25:20, 25:22, 25:25, 26:3
**pardoned** [4] - 11:10, 20:16, 26:6, 26:24
**pardons** [2] - 12:7, 20:24
**PARIKH** [48] - 1:17, 3:25, 7:3, 7:5, 7:8, 12:21, 13:8, 14:21, 18:5, 18:12, 19:2, 19:10, 19:12, 20:2, 20:6, 21:10, 21:16, 21:18, 24:5, 26:21, 27:7, 27:12, 28:12, 29:4, 30:7, 30:10, 31:7, 31:10, 33:25, 36:21, 36:25, 37:13, 38:1, 38:20, 40:9, 41:14, 42:5, 45:3, 45:9, 46:25, 47:20, 49:2, 49:10, 51:2, 51:22, 54:10, 78:21, 91:10
**Parikh** [6] - 20:1, 21:14, 45:1, 49:1, 54:9, 91:8
**part** [13] - 23:5, 23:8, 26:23, 26:24, 36:22, 39:24, 46:19, 63:1, 72:6, 72:15, 72:16, 72:17, 83:13
**partial** [1] - 44:8
**participants** [2] - 72:11, 72:14
**participating** [1] - 72:4
**particular** [3] - 29:24, 56:24, 61:15
**parties** [5] - 13:14, 26:17, 41:7, 58:13, 58:14
**partner** [2] - 9:17, 22:2
**partnership** [2] - 73:22, 82:6
**party** [3] - 62:17, 68:17, 75:2
**past** [1] - 89:18
**Paul** [3] - 5:3, 12:8, 25:3
**Paul's** [4] - 4:20, 4:24, 24:20, 24:25
**payment** [1] - 50:13
**payments** [1] - 12:11
**pending** [1] - 80:20
**people** [12] - 9:24, 10:2, 30:2, 45:16,

45:19, 46:16, 63:24, 71:5, 71:16, 72:3, 72:18, 74:11

**per** [4] - 7:18, 7:24, 22:4, 22:7

**percent** [1] - 34:25

**perfectly** [1] - 47:13

**performed** [3] - 77:9, 81:25, 83:20

**period** [3] - 49:12, 69:8, 74:1

**periodic** [1] - 69:5

**permanent** [1] - 75:9

**permissible** [1] - 52:8

**permission** [1] - 4:1

**permit** [1] - 77:24

**permitted** [2] - 58:18, 61:17

**permitting** [1] - 69:20

**person** [37] - 30:19, 42:25, 56:19, 59:3, 60:12, 61:3, 63:17, 66:21, 67:4, 67:7, 69:7, 69:17, 69:19, 69:24, 70:10, 71:10, 72:4, 72:5, 72:6, 73:20, 74:6, 74:22, 75:20, 75:21, 75:22, 75:25, 76:7, 76:12, 77:20, 79:5, 79:7, 79:13, 84:6, 84:12, 85:1, 89:15

**personal** [4] - 13:5, 43:9, 44:3, 87:4

**personality** [1] - 67:23

**personally** [10] - 16:14, 31:22, 32:20, 77:4, 77:5, 81:16, 81:20, 81:21, 83:16, 83:18

**persons** [3] - 64:10, 73:7, 73:12

**perspective** [1] - 18:25

**pertains** [1] - 64:14

**Phan** [5] - 3:14, 3:15, 4:19, 8:13, 8:23

**Philly** [1] - 33:12

**phone** [7] - 17:5, 17:6, 17:9, 17:21, 32:24, 33:19

**photograph** [4] - 45:13, 46:10, 47:6, 87:2

**picture** [1] - 43:8

**pictures** [1] - 68:8

**pivots** [1] - 40:5

**place** [5] - 15:7, 15:20, 16:8, 31:13, 53:7

**Plaintiff** [1] - 1:4

**plan** [6] - 35:16, 48:20, 71:15, 72:7, 83:13, 83:14

**planning** [1] - 20:21

**Platforms** [1] - 22:12

**play** [2] - 62:25, 72:6

**played** [1] - 68:9

**playing** [1] - 47:17

**pleading** [1] - 86:16

**plus** [1] - 51:6

**podium** [1] - 35:23

**point** [10] - 5:18, 7:8, 7:25, 13:25, 20:20, 26:24, 29:1, 39:22, 40:3, 46:12

**points** [1] - 49:4

**political** [19] - 9:21, 10:4, 11:4, 15:5, 18:19, 18:22, 22:8, 23:19, 30:20, 33:4, 68:22, 69:4, 69:14, 70:10, 71:9, 74:5, 75:2, 77:20, 78:7

**portion** [3] - 56:24, 68:6, 68:10

**portions** [4] - 68:7, 68:11, 68:14, 68:15

**position** [3] - 37:17, 38:24, 41:8

**possible** [1] - 88:11

**potentially** [1] - 27:19

**power** [1] - 10:13

**powerful** [1] - 60:2

**practice** [3] - 10:1, 21:24, 48:12

**practiced** [2] - 18:22, 21:21

**precise** [2] - 76:24, 79:21

**prefer** [1] - 44:11

**prejudice** [2] - 57:20, 65:2

**prejudiced** [1] - 64:25

**prepared** [1] - 3:11

**presence** [5] - 13:16, 20:5, 26:19, 72:10, 73:10

**present** [3] - 77:6, 81:21, 83:18

**presented** [4] - 61:20, 62:3, 85:13, 89:1

**President** [6] - 11:18, 68:23, 76:2, 76:3, 79:15, 79:16

**president** [2] - 12:6, 87:3

**presidential** [6] - 24:21, 25:1, 25:3, 30:13, 30:16, 30:21

**press** [7] - 11:22,

11:25, 12:5, 12:18, 12:22, 13:6, 27:3

**presumed** [1] - 59:7

**presumption** [1] - 59:8

**pretty** [1] - 55:2

**previous** [1] - 78:23

**previously** [2] - 37:24, 66:12

**pride** [1] - 34:21

**primarily** [1] - 39:1

**principally** [1] - 42:19

**print** [1] - 37:5

**printed** [1] - 45:4

**printing** [1] - 37:16

**privacy** [1] - 68:12

**private** [1] - 21:24

**pro** [1] - 22:19

**probability** [1] - 64:19

**probable** [1] - 84:12

**probation** [1] - 12:14

**problem** [2] - 17:22, 20:24

**proceed** [3] - 7:11, 9:11, 21:15

**Proceedings** [1] - 91:12

**proceedings** [15] - 3:1, 3:8, 9:4, 13:15, 14:2, 20:4, 21:12, 26:18, 27:8, 35:21, 55:16, 55:18, 55:25, 90:4, 91:22

**process** [1] - 22:17

**produce** [1] - 59:13

**produced** [1] - 91:22

**proffer** [1] - 49:21

**profile** [1] - 22:8

**prohibited** [1] - 29:16

**prohibition** [4] - 16:21, 29:12, 30:23, 31:1

**prohibitions** [1] - 29:20

**prohibits** [3] - 69:15, 69:17, 69:19

**promptly** [1] - 34:11

**proof** [4] - 60:2, 70:18, 84:21, 87:11

**proper** [6] - 62:15, 70:14, 71:12, 80:13, 81:3, 81:8

**properly** [2] - 56:7, 58:10

**proposal** [2] - 7:15, 44:23

**proposed** [3] - 37:9, 44:6, 46:15

**proposing** [1] - 45:10

**prove** [17] - 45:19,

59:12, 59:18, 59:23, 60:16, 60:18, 70:15, 70:16, 71:2, 72:22, 73:3, 73:24, 80:7, 80:24, 81:2, 85:9, 88:9

**proved** [12] - 63:2, 66:24, 67:6, 67:12, 70:20, 73:1, 77:13, 82:3, 84:5, 84:18, 85:11, 85:18

**proven** [4] - 58:19, 59:10, 59:14, 83:25

**proves** [1] - 71:20

**provide** [5] - 6:7, 43:20, 56:21, 76:8, 76:13

**provided** [5] - 33:4, 43:22, 47:23, 79:23, 88:2

**providing** [3] - 32:15, 50:13, 57:5

**proving** [2] - 59:21, 61:13

**prudent** [1] - 41:11

**PUBLIC** [1] - 1:15

**publicity** [1] - 89:2

**published** [1] - 14:23

**pull** [1] - 31:7

**punishment** [2] - 88:11, 88:17

**purchased** [2] - 17:11, 32:25

**purpose** [29] - 18:15, 42:25, 43:10, 43:21, 43:23, 45:12, 45:20, 45:21, 46:6, 46:16, 47:6, 47:7, 66:25, 67:11, 67:14, 67:17, 69:24, 70:18, 72:19, 73:15, 75:18, 76:1, 78:19, 79:3, 79:13, 86:19, 87:1, 87:6

**purposefully** [3] - 75:17, 78:18, 79:2

**purposes** [5] - 45:17, 45:19, 52:8, 66:19, 70:17

**pursuant** [1] - 37:21

**put** [4] - 30:25, 43:6, 43:13, 91:2

## Q

**qualifier** [2] - 16:1, 16:5

**questions** [11] - 6:2, 8:20, 19:23, 29:8, 31:4, 33:25, 57:1, 57:8, 58:25, 61:22,

86:22

**quick** [1] - 54:17

**quicker** [1] - 55:9

**quickly** [2] - 37:3, 48:2

**quite** [1] - 54:16

## R

**race** [1] - 57:22

**radio** [1] - 88:21

**raided** [1] - 19:19

**raise** [1] - 9:9

**raises** [1] - 18:16

**Rand** [2] - 4:24, 12:8

**rather** [3] - 44:10, 62:7, 89:19

**reach** [1] - 61:24

**reached** [4] - 28:1, 34:12, 34:14, 50:9

**reaching** [2] - 61:19, 62:3

**read** [13] - 12:4, 15:16, 16:20, 43:4, 48:3, 51:19, 52:25, 55:13, 56:4, 88:23, 88:24, 90:25, 91:3

**reading** [3] - 43:2, 54:15, 55:1

**reads** [1] - 45:12

**ready** [3] - 35:13, 54:13, 55:22

**real** [1] - 21:6

**realize** [1] - 28:5

**realized** [2] - 28:21, 29:5

**really** [2] - 41:20, 45:17

**reason** [5] - 60:4, 60:5, 60:16, 65:17, 85:18

**reasonable** [30] - 58:20, 59:10, 59:15, 59:19, 59:22, 60:3, 60:10, 60:11, 60:12, 60:19, 61:1, 63:3, 66:24, 67:7, 67:13, 70:18, 71:2, 71:21, 73:25, 77:14, 80:7, 82:3, 82:16, 84:1, 84:18, 85:10, 85:19, 87:13, 88:9

**reasonableness** [1] - 64:18

**reasonably** [3] - 76:10, 83:10, 87:14

**reasons** [9] - 37:21, 37:23, 43:9, 44:3, 46:11, 65:18, 66:5, 68:10, 87:4

**REBECCA** [1] - 1:14

**rebuttal** [2] - 54:22, 54:24
**recalled** [1] - 63:11
**receipt** [1] - 76:18
**receipts** [1] - 69:5
**receive** [5] - 45:13, 46:10, 58:22, 65:6, 87:2
**received** [14] - 7:24, 12:13, 14:24, 15:13, 25:20, 26:3, 42:12, 52:24, 81:10, 84:10, 84:15, 85:21, 85:25, 86:22
**receiving** [5] - 14:8, 14:12, 16:13, 16:21, 31:21
**recent** [1] - 42:9
**recessed** [1] - 55:16
**recognized** [1] - 22:4
**recollection** - 28:8, 63:19, 64:12
**recollections** [1] - 64:4
**recommend** [1] - 76:6
**recommending** [1] - 76:12
**record** [13] - 37:8, 48:3, 51:3, 51:23, 54:9, 70:13, 71:11, 80:3, 80:6, 80:10, 80:25, 81:18, 91:2
**recording** [1] - 88:10
**records** [6] - 66:13, 74:8, 82:16, 82:21, 82:25, 83:5
**recross** [2] - 7:9, 8:9
**RECROSS** [1] - 8:11
**red** [2] - 37:13, 52:20
**red-line** [1] - 37:13
**redactions** [1] - 12:3
**REDIRECT** [1] - 34:3
**redirect** [2] - 8:21, 34:1
**redundant** [5] - 38:19, 39:17, 39:19, 40:11, 40:18
**refer** [3] - 56:23, 68:20
**reference** [2] - 16:1, 58:5
**referenced** [1] - 13:6
**referencing** [1] - 13:3
**referred** [3] - 12:23, 69:2, 72:20
**refers** [1] - 53:11
**reflect** [1] - 51:5
**reflected** [1] - 19:21
**reflection** [1] - 60:13
**refuse** [1] - 57:13
**regard** [1] - 38:1

**regarding** [15] - 4:25, 6:11, 6:15, 7:2, 7:15, 8:3, 16:5, 17:4, 19:7, 33:8, 34:5, 39:21, 42:21, 43:14
**regulation** [1] - 19:8
**reimbursement** [1] - 79:23
**reiterate** [2] - 44:11, 91:5
**reiteration** [1] - 44:9
**rejected** [1] - 40:15
**related** [2] - 22:16, 23:19
**relating** [1] - 67:20
**relation** [3] - 5:3, 48:10, 80:22
**relationship** [1] - 20:16
**relatively** [1] - 17:8
**release** [7] - 11:22, 11:25, 12:5, 12:18, 12:22, 13:6, 27:4
**relevance** [2] - 18:5, 19:12
**relevant** [5] - 20:10, 20:13, 20:17, 34:18, 84:17
**relied** [1] - 38:11
**rely** [1] - 90:22
**relying** [1] - 86:7
**remains** [1] - 59:8
**remember** [8] - 17:9, 29:9, 32:14, 32:17, 41:24, 56:10, 64:3, 89:24
**remind** [4] - 3:16, 88:19, 89:8, 89:23
**reminded** [1] - 40:23
**reminds** [1] - 48:7
**removed** [1] - 68:9
**render** [1] - 13:20
**rendered** [1] - 57:4
**renew** [1] - 37:20
**repeat** [1] - 29:3
**rephrase** [1] - 12:25
**replaces** [2] - 88:6, 88:7
**report** [1] - 86:20
**reportable** [1] - 16:24
**REPORTED** [1] - 2:6
**Reporter** [1] - 2:6
**reporting** [6] - 12:12, 12:19, 13:5, 13:11, 68:20, 69:8
**reports** [4] - 66:14, 69:5, 88:20, 88:25
**represent** [2] - 13:2, 87:16
**representation** [2] -

27:21, 33:10
**Representatives** [3] - 68:25, 76:4, 79:17
**representatives** [1] - 49:4
**represented** [10] - 10:4, 10:8, 10:24, 11:4, 13:2, 23:22, 23:25, 24:7, 49:10, 49:19
**representing** [1] - 49:14
**represents** [1] - 62:17
**Republican** [1] - 22:5
**request** [2] - 4:1, 76:6
**requesting** [2] - 76:11, 76:16
**require** [3] - 59:12, 61:18, 84:20
**required** [5] - 60:16, 69:5, 70:15, 81:2, 84:11
**requirement** [1] - 80:19
**requirements** [1] - 68:21
**requisite** [2] - 38:6, 38:11
**research** [4] - 35:19, 56:18, 89:15, 89:25
**residence** [1] - 75:10
**resigned** [2] - 8:5, 8:16
**respect** [1] - 88:1
**respond** [1] - 16:18
**responded** [1] - 15:13
**response** [3] - 15:16, 15:18, 30:7
**responsibility** [3] - 57:16, 58:4, 62:18
**responsible** [5] - 77:7, 81:23, 82:7, 82:8, 83:19
**rest** [1] - 38:16
**restrictions** [1] - 32:6
**restricts** [1] - 69:12
**rests** [2] - 35:7, 88:15
**result** [1] - 81:1
**results** [1] - 64:16
**reswear** [1] - 3:16
**retain** [1] - 23:2
**retention** [2] - 23:5, 23:8
**retire** [1] - 89:7
**return** [4] - 57:3, 70:19, 87:17, 87:22
**review** [2] - 7:21, 29:23
**reviewed** [2] - 7:23, 11:25

**revisions** [1] - 45:10
**Rhodes** [3] - 36:20, 44:21, 55:21
**RMR** [3] - 2:6, 91:19, 91:25
**RMR-FCRR** [1] - 91:25
**RNC** [5] - 22:12, 39:10, 49:4, 49:5, 50:16
**road** [2] - 47:14, 48:17
**Robert** [1] - 5:6
**role** [1] - 20:25
**Ron** [2] - 24:20, 24:25
**Room** [1] - 2:8
**room** [1] - 89:7
**ROSE** [1] - 2:3
**ROSS** [4] - 1:14, 8:10, 8:12, 8:20
**Ross** [1] - 8:9
**Rule** [3] - 37:21, 42:22, 51:20
**rule** [3] - 57:8, 75:23, 79:8
**ruled** [1] - 62:24
**Rules** [1] - 22:12
**rules** [3] - 15:21, 16:8, 19:16
**ruling** [4] - 21:5, 21:7, 51:20, 52:2
**run** [2] - 18:2, 41:20
**Russian** [12] - 6:4, 6:8, 16:12, 16:21, 17:1, 17:10, 17:13, 31:20, 32:3, 32:7, 32:9, 33:2

## S

**sat** [1] - 71:15
**satisfaction** [1] - 23:9
**saw** [5] - 34:8, 61:4, 61:7, 61:8, 61:9
**scene** [1] - 72:10
**scientific** [1] - 60:17
**screen** [3] - 4:17, 11:15, 14:17
**seat** [3] - 3:10, 36:14, 56:2
**seats** [1] - 41:22
**second** [7] - 31:8, 41:6, 70:9, 71:25, 72:16, 74:9, 77:19
**Secret** [2] - 17:20, 17:22
**SECTION** [1] - 1:15
**see** [15] - 5:9, 5:19, 7:14, 7:18, 11:19, 15:3, 15:8, 15:11, 16:16, 32:24, 64:11, 68:13, 90:1, 90:11,

91:11
**seeing** [1] - 52:21
**seek** [1] - 20:24
**seeking** [3] - 42:11, 86:8, 86:19
**seem** [4] - 12:23, 49:6, 51:7, 53:5
**selecting** [1] - 61:23
**selection** [1] - 22:17
**Senate** [3] - 68:25, 76:4, 79:17
**Senator** [4] - 4:20, 4:24, 5:13, 12:8
**senator** [2] - 5:23, 12:11
**senators** [1] - 5:19
**send** [6] - 37:2, 37:5, 37:13, 37:14, 48:20, 57:2
**sending** [2] - 48:18, 50:13
**sent** [9] - 36:20, 37:9, 42:1, 42:3, 42:6, 44:18, 44:21, 44:24, 52:22
**sentence** [4] - 42:17, 46:22, 53:22, 88:14
**separate** [5] - 38:12, 39:11, 39:15, 87:20, 87:23
**separately** [2] - 38:4, 87:22
**separates** [1] - 39:12
**September** [10] - 14:9, 14:13, 15:2, 15:17, 28:13, 28:17, 31:11, 31:18, 32:1, 71:4
**serve** [2] - 28:21, 29:6
**served** [2] - 20:13, 22:11
**Service** [2] - 17:20, 17:22
**services** [4] - 22:20, 22:22, 23:9, 24:14
**session** [1] - 91:22
**SESSION** [1] - 1:7
**set** [3] - 30:5, 34:8, 56:7
**seven** [1] - 54:13
**several** [1] - 12:3
**sheet** [1] - 44:17
**shifts** [1] - 59:11
**short** [2] - 17:8, 86:8
**shortly** [1] - 34:10
**show** [7] - 4:16, 11:11, 52:4, 66:2, 66:3, 71:18, 72:12
**showed** [1] - 49:3
**showing** [6] - 6:1, 6:14, 7:1, 7:13,

11:14, 15:1
**shown** [3] - 64:24, 71:24, 72:16
**side** [5] - 62:7, 62:10, 62:12, 62:14, 65:1
**sidebar** [3] - 13:16, 20:5, 26:19
**sign** [1] - 36:15
**similar** [4] - 40:17, 66:21, 67:3, 71:18
**similarly** [2] - 50:23, 58:25
**simply** [2] - 67:24, 68:20
**single** [1] - 45:5
**sit** [1] - 90:8
**situation** [1] - 51:5
**six** [2] - 12:13, 27:14
**skip** [1] - 31:8
**sleep** [1] - 61:9
**slightly** [1] - 68:1
**slow** [1] - 55:7
**slowly** [1] - 54:20
**smaller** [1] - 62:10
**snow** [4] - 61:4, 61:6, 61:8, 61:9
**snowed** [1] - 61:11
**sole** [3] - 57:15, 58:4, 63:5
**solely** [12] - 45:24, 46:3, 46:12, 46:14, 46:20, 46:24, 53:22, 57:23, 87:2, 88:16, 88:25
**solicit** [5] - 70:5, 74:2, 76:5, 82:18, 83:3
**solicitation** [5] - 76:5, 76:9, 76:15, 76:16, 76:19
**solicited** [1] - 74:22
**soliciting** [6] - 69:17, 71:6, 74:15, 74:20, 82:13, 82:22
**someone** [10] - 15:7, 15:10, 17:20, 30:15, 30:17, 30:20, 31:13, 31:16, 69:21, 77:24
**sometimes** [4] - 24:14, 24:15, 62:13, 68:6
**soon** [2] - 17:6, 89:4
**sorry** [3] - 12:21, 39:23, 43:2
**sort** [1] - 51:23
**sought** [5] - 20:22, 23:18, 28:6, 34:19, 86:3
**sounds** [6] - 27:15, 28:20, 29:7, 29:13, 29:15, 29:18

**source** [3] - 32:18, 78:4, 79:22
**sources** [1] - 69:12
**South** [1] - 2:8
**specialize** [1] - 9:20
**specific** [5] - 29:20, 32:12, 75:23, 79:8, 86:19
**specifically** [4] - 15:6, 39:4, 67:25, 81:3
**speculate** [2] - 62:22, 65:17
**speculation** [1] - 60:15
**spotty** [1] - 43:13
**staff** [1] - 4:22
**Stand** [1] - 9:6
**stand** [8] - 3:14, 19:20, 34:24, 34:25, 39:20, 40:3, 47:1, 63:16
**stand-alone** [1] - 47:1
**standalone** [1] - 39:6
**standards** [1] - 44:10
**start** [7] - 41:1, 44:7, 44:12, 47:17, 47:21, 89:20, 90:2
**state** [7] - 11:21, 13:18, 38:6, 40:11, 74:19, 84:19, 85:14
**statement** [7] - 12:5, 12:18, 16:1, 50:1, 50:5, 66:8, 73:15
**statements** [16] - 7:22, 7:23, 49:3, 49:9, 58:23, 65:21, 65:23, 65:25, 66:5, 66:14, 73:8, 73:18, 73:21, 81:9, 82:15, 84:8
**States** [24] - 2:7, 4:13, 5:23, 16:13, 31:21, 40:13, 66:13, 68:23, 68:24, 68:25, 69:3, 70:8, 71:9, 74:4, 75:8, 75:9, 75:10, 76:3, 76:4, 79:16, 79:17, 80:18, 81:5, 81:10
**STATES** [4] - 1:1, 1:3, 1:11, 1:20
**states** [2] - 15:2, 15:5
**statute** [8] - 13:21, 13:22, 30:24, 42:22, 43:4, 46:5, 46:17, 76:17
**statutes** [2] - 19:8, 29:22
**stay** [1] - 39:19
**stenographic** [1] - 91:21

**step** [1] - 8:24
**STEPHANIE** [1] - 2:2
**sticks** [1] - 17:12
**still** [2] - 3:16, 35:18
**stipulated** [2] - 58:13, 58:15
**stipulation** [2] - 11:12, 58:16
**STOLARZ** [61] - 2:2, 3:13, 3:18, 4:1, 4:6, 4:8, 7:7, 7:12, 8:7, 8:22, 9:1, 9:13, 13:1, 13:10, 13:20, 14:1, 14:6, 14:18, 14:25, 18:7, 18:14, 19:5, 19:14, 19:23, 20:23, 21:5, 24:2, 28:7, 28:23, 34:2, 34:4, 35:1, 35:7, 37:8, 37:19, 37:25, 39:1, 41:9, 42:1, 42:12, 42:16, 43:4, 43:6, 44:16, 44:22, 45:25, 46:2, 46:14, 46:19, 48:1, 48:12, 48:18, 49:17, 51:11, 51:18, 52:21, 53:13, 54:12, 55:7, 90:18, 91:7
**Stolarz** [33] - 3:12, 8:13, 8:21, 8:25, 14:4, 19:25, 20:11, 26:22, 27:21, 27:23, 27:24, 28:1, 28:2, 34:1, 35:5, 38:22, 41:8, 41:25, 42:8, 45:23, 46:23, 47:12, 47:18, 47:24, 48:8, 49:16, 51:9, 51:16, 52:19, 53:12, 54:11, 55:5, 90:17
**stop** [1] - 11:12
**straightforward** [1] - 30:4
**streamlines** [1] - 48:16
**Street** [4] - 1:18, 1:21, 2:3, 2:8
**stricken** [1] - 62:24
**strike** [2] - 30:7, 44:6
**strong** [1] - 50:15
**stuff** [2] - 10:3, 35:13
**sub** [2] - 41:2, 41:5
**subbing** [1] - 41:13
**subject** [2] - 6:19, 50:7
**subpoenas** [1] - 4:24
**subscription** [1] - 42:24
**substantially** [1] - 86:21

**substantively** [3] - 74:17, 77:23, 80:5
**substitutes** [1] - 41:3
**succeed** [1] - 76:19
**successfully** [2] - 22:15, 27:5
**sufficient** [2] - 45:22, 87:12
**suggest** [1] - 88:5
**suggested** [3] - 52:12, 53:23, 56:5
**Suite** [1] - 2:4
**Sullivan** [1] - 5:9
**sum** [1] - 33:16
**summary** [1] - 73:21
**Sunday** [2] - 52:23, 52:24
**Super** [5] - 16:23, 31:16, 31:23, 32:21
**super** [2] - 15:10, 16:15
**superfluous** [1] - 38:15
**support** [1] - 47:4
**supported** [2] - 12:8, 64:22
**suppose** [1] - 37:19
**surprised** [2] - 32:6, 40:25
**surrounding** [2] - 64:1, 84:7
**sustain** [1] - 27:10
**sustained** [4] - 12:24, 18:13, 19:4, 62:20
**sworn** [2] - 9:7, 58:11
**SWORN** [1] - 9:10
**sympathy** [1] - 57:21

## T

**tag** [1] - 34:9
**talks** [1] - 54:2
**Tate** [5] - 12:6, 12:7, 12:10, 13:2, 25:7
**team** [1] - 34:9
**technically** [1] - 51:2
**telegram** [1] - 21:8
**television** [4] - 6:4, 6:8, 6:11, 88:21
**tempted** [1] - 88:23
**ten** [1] - 16:11
**tending** [2] - 66:2, 66:3
**Tenth** [1] - 1:16
**term** [6] - 43:12, 69:22, 75:24, 76:5, 79:9, 79:11
**termination** [1] - 73:19
**testified** [9] - 6:3,

25:19, 32:5, 33:22, 61:5, 63:5, 63:10, 63:12, 63:22
**testifies** [1] - 49:7
**testify** [7] - 36:2, 36:5, 36:11, 49:23, 65:15, 65:19
**testifying** [3] - 49:18, 62:6, 63:16
**testimony** [26] - 3:21, 6:5, 6:15, 6:16, 13:25, 20:18, 32:10, 51:3, 58:11, 58:13, 60:24, 61:6, 61:10, 62:9, 62:11, 63:4, 64:7, 64:8, 64:9, 64:20, 65:2, 65:5, 65:7, 65:10, 65:12, 66:9
**text** [1] - 89:12
**texting** [1] - 56:15
**Thanksgiving** [1] - 41:20
**THE** [109] - 1:1, 1:10, 1:14, 1:21, 2:2, 3:3, 3:6, 3:9, 3:15, 4:3, 4:7, 7:4, 7:6, 7:10, 8:9, 8:21, 8:23, 9:5, 9:6, 9:8, 9:11, 12:24, 13:9, 13:14, 13:17, 13:24, 14:4, 14:22, 18:6, 18:13, 19:4, 19:11, 19:13, 19:25, 20:3, 20:19, 21:2, 21:14, 24:3, 24:4, 26:17, 26:20, 27:3, 27:10, 28:8, 28:25, 29:3, 30:9, 34:1, 35:3, 35:8, 35:22, 35:24, 35:25, 36:3, 36:4, 36:6, 36:7, 36:9, 36:10, 36:12, 36:13, 36:23, 37:4, 37:12, 37:15, 37:23, 38:18, 38:21, 40:20, 41:12, 41:17, 42:3, 42:8, 42:15, 43:2, 43:5, 44:5, 44:20, 45:1, 45:7, 45:23, 46:1, 46:7, 46:18, 46:21, 47:9, 47:21, 48:2, 48:15, 48:20, 49:8, 49:16, 50:11, 51:9, 51:13, 52:10, 53:1, 53:17, 54:11, 54:13, 55:10, 55:20, 56:1, 78:24, 90:5, 91:3, 91:8, 91:11
**then-candidate-for-president** [1] - 87:3

**theory** [23] - 37:9, 41:24, 42:11, 42:17, 42:18, 43:7, 43:8, 43:18, 43:25, 44:7, 44:12, 45:5, 45:11, 46:4, 46:5, 46:24, 47:12, 47:18, 53:20, 82:16, 86:24

**thereafter** [2] - 34:10, 34:11

**therefore** [2] - 39:10, 43:16

**thereof** [1] - 85:15

**they've** [2] - 46:4, 50:9

**thinking** [2] - 21:3, 84:6

**thinks** [2] - 27:4, 91:1

**third** [5] - 44:13, 70:12, 72:18, 74:11, 80:2

**Thomas** [1] - 5:9

**Thompson** [1] - 5:6

**thorough** [1] - 7:21

**thoughtful** [1] - 60:12

**three** [13] - 9:21, 23:22, 23:23, 26:3, 26:8, 26:11, 26:15, 26:25, 70:2, 73:24, 74:14, 77:18, 80:1

**throughout** [2] - 59:9, 59:11

**Thursday** [1] - 42:13

**ticket** [20] - 15:6, 15:10, 15:21, 15:23, 16:7, 16:12, 16:22, 17:10, 31:12, 31:15, 31:20, 31:22, 32:2, 32:7, 32:20, 32:25, 33:9, 33:17, 49:15

**tickets** [5] - 6:15, 6:22, 15:5, 16:14, 32:19

**timed** [1] - 54:18

**timing** [2] - 14:11, 54:18

**title** [1] - 52:7

**today** [8] - 3:22, 19:18, 24:7, 33:23, 51:15, 55:2, 68:2, 91:9

**together** [6] - 38:25, 69:10, 71:15, 71:17, 76:21, 79:18

**tomorrow** [6] - 55:4, 55:23, 56:6, 89:20, 90:12, 91:11

**tonight** [1] - 90:10

**took** [2] - 43:6, 51:18

**top** [1] - 5:18

**topic** [1] - 32:15

**total** [1] - 33:16

**tour** [1] - 4:25

**toward** [1] - 63:23

**transaction** [1] - 64:10

**transcript** [2] - 91:20, 91:22

**transfer** [2] - 76:7, 76:13

**transferable** [1] - 15:6

**translated** [2] - 51:1, 51:4

**translation** [1] - 51:7

**treat** [1] - 4:1

**TREVOR** [1] - 1:10

**trial** [16] - 27:19, 36:2, 43:14, 57:7, 57:17, 58:10, 58:14, 59:9, 59:11, 62:20, 65:1, 67:17, 68:5, 84:15, 89:2, 89:9

**TRIAL** [1] - 1:10

**trouble** [1] - 18:17

**true** [16] - 8:15, 29:20, 30:11, 31:2, 32:15, 50:16, 59:24, 64:21, 70:11, 71:10, 74:6, 77:21, 78:4, 79:22, 91:20, 91:21

**Trump** [8] - 12:6, 22:11, 22:15, 22:16, 25:20, 45:14, 49:11, 87:3

**truth** [3] - 59:24, 63:20, 65:4

**truthful** [1] - 63:17

**truthfully** [1] - 63:10

**try** [5] - 10:5, 12:25, 27:5, 44:10, 90:8

**trying** [4] - 16:4, 30:3, 42:6, 46:7

**turn** [1] - 66:3

**turned** [2] - 42:17, 46:4

**turns** [1] - 85:4

**tweak** [2] - 36:19, 53:17

**two** [13] - 12:14, 17:7, 26:6, 27:1, 51:23, 52:7, 54:3, 60:20, 64:9, 69:19, 71:5, 73:6

**types** [2] - 9:21, 60:20

### U

**U.S** [6] - 1:14, 1:18, 2:3, 5:13, 6:11, 30:21

**U.S.C** [1] - 42:23

**unanimous** [1] - 87:19

**unclear** [8] - 12:12, 12:19, 13:11, 13:23,

19:1, 21:4, 26:23, 27:4

**uncommon** [2] - 20:24, 64:12

**unconditional** [2] - 11:19, 36:2

**under** [11] - 3:16, 29:23, 40:20, 43:10, 43:16, 43:17, 44:4, 64:5, 69:4, 69:22, 82:16

**underlying** [1] - 13:3

**understood** [2] - 27:7, 76:10

**undisputed** [1] - 58:16

**unexpected** [1] - 90:7

**unimportant** [1] - 64:15

**UNITED** [4] - 1:1, 1:3, 1:11, 1:20

**united** [1] - 2:7

**United** [21] - 4:13, 5:23, 40:13, 66:13, 68:23, 68:24, 68:25, 69:3, 70:8, 71:9, 74:4, 75:8, 75:10, 76:3, 76:4, 79:16, 79:17, 80:18, 81:5, 81:10

**unknowingly** [1] - 72:13

**unlawful** [11] - 70:2, 70:5, 70:9, 70:12, 72:7, 72:9, 74:14, 77:18, 80:1, 85:3, 86:12

**unless** [3] - 22:19, 50:21, 59:9

**unnecessary** [1] - 38:2

**unreasonableness** [1] - 64:19

**unrelated** [1] - 66:5

**up** [14] - 20:21, 31:7, 31:25, 32:23, 42:5, 44:13, 45:6, 48:10, 52:24, 65:22, 66:15, 80:9, 81:17, 84:14

**ups** [1] - 3:21

### V

**vague** [1] - 28:8

**validity** [1] - 13:21

**value** [6] - 42:25, 69:9, 69:24, 74:23, 76:8, 76:14

**variety** [1] - 68:10

**various** [6] - 20:14, 44:10, 49:4, 50:17,

87:9, 90:9

**Vasilenko** [10] - 3:24, 4:10, 4:12, 5:22, 6:3, 6:11, 39:9, 49:12, 49:24, 87:2

**Vasilenko's** [1] - 87:4

**verbatim** [1] - 56:11

**verdict** [18] - 57:4, 58:3, 61:19, 61:25, 62:2, 62:4, 70:19, 87:16, 87:17, 87:18, 87:25, 88:2, 88:5, 88:10, 88:16, 90:6, 90:8

**verdicts** [1] - 87:23

**version** [7] - 37:14, 45:4, 47:1, 51:17, 90:15, 91:6

**versions** [1] - 51:24, 90:9

**versus** [2] - 40:13, 49:5

**via** [2] - 56:19, 89:15

**Vice** [2] - 76:2, 79:15

**Victory** [1] - 49:11

**video** [2] - 68:8, 68:9

**view** [1] - 38:14

**violate** [2] - 15:22, 86:15

**violated** [1] - 12:12

**violating** [2] - 75:23, 79:8

**violation** [1] - 76:17

**violations** [3] - 26:12, 26:16, 27:1

**Virginia** [1] - 9:19

**voluntarily** [4] - 36:10, 72:7, 78:18, 79:2

**voluntary** [1] - 75:17

**volunteer** [1] - 8:4

**vs** [1] - 1:5

### W

**Warrington** [15] - 9:1, 9:3, 9:15, 20:7, 21:19, 26:2, 27:13, 29:8, 29:11, 30:11, 31:4, 31:11, 35:3, 40:8, 85:22

**WARRINGTON** [1] - 9:10

**Washington** [6] - 1:6, 1:16, 1:19, 1:22, 2:4, 5:23

**WASSERMAN** [2] - 1:20, 54:17

**watch** [2] - 88:24

**Wead** [2] - 39:9, 40:7

**Wead's** [1] - 5:12

**week** [1] - 41:19

**weigh** [1] - 63:4

**weighing** [1] - 64:13

**weight** [8] - 57:18, 58:22, 61:15, 61:17, 62:5, 65:6, 65:12, 66:9

**Weinbeck** [2] - 91:25, 91:25

**WEINBECK** [2] - 2:6, 91:19

**welcome** [2] - 3:9, 56:1

**well-established** [1] - 13:12

**whatnot** [1] - 54:2

**white** [2] - 9:22, 9:25

**whole** [5] - 29:21, 29:22, 45:4, 56:25, 57:12

**willful** [1] - 86:12

**willfully** [23] - 39:21, 40:2, 67:1, 67:14, 75:3, 75:22, 77:15, 78:9, 78:22, 78:25, 79:1, 79:7, 81:24, 82:4, 83:19, 84:2, 84:21, 84:25, 85:8, 85:12, 85:19, 85:24, 86:14

**willfulness** [5] - 38:7, 51:25, 52:3, 53:14, 53:15

**window** [2] - 61:4, 61:8

**wish** [3] - 52:19, 56:23, 89:8

**withdraw** [3] - 11:3, 28:19, 34:19

**withdrawal** [1] - 34:6

**withdrawn** [1] - 28:7

**withdrew** [4] - 27:16, 27:18, 27:23, 28:2

**witness** [34] - 4:2, 8:8, 8:25, 19:24, 24:10, 27:19, 27:25, 28:11, 34:15, 60:22, 62:23, 63:7, 63:8, 63:10, 63:11, 63:12, 63:14, 63:15, 63:16, 63:17, 63:18, 63:19, 63:20, 63:22, 64:5, 64:8, 64:20, 64:21, 64:24, 65:3, 65:4, 65:5, 65:11, 65:12

**WITNESS** [5] - 9:5, 9:10, 24:4, 28:8, 29:3

**witness's** [5] - 60:24, 63:9, 63:16, 63:25,

64:3
**witnesses** [9] - 57:19,
58:12, 62:6, 62:9,
62:10, 62:11, 63:5,
63:6, 64:8
**witnessing** [1] - 64:10
**woke** [1] - 61:9
**wondered** [1] - 55:1
**wondering** [1] - 54:21
**word** [7] - 39:15,
39:25, 45:25, 75:16,
78:17, 79:1
**words** [6] - 68:8,
75:14, 78:15, 81:6,
81:14, 87:18
**worry** [1] - 50:5
**write** [2] - 12:21, 56:11
**writing** [1] - 90:21
**written** [2] - 46:8, 76:9
**wrote** [1] - 15:18

## Y

**year** [6] - 34:10, 40:15,
75:6, 76:22, 78:11,
79:19
**years** [7] - 10:22,
12:14, 18:21, 18:22,
20:14, 23:13, 30:6
**yesterday** [2] - 42:1,
54:18
**York** [1] - 1:15
**yourself** [4] - 9:14,
33:12, 34:21, 86:2